# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DISTRICT
AT CLEVELAND**

**ASHLAND UNIVERSITY,**

 *Plaintiff,*

*v.*

                **Case No.** <u>1:23-cv-185</u>0

**MIGUEL CARDONA,** *in His Official Capacity
as the Secretary of the United States Department
of Education*,

 *Defendant.*

<u>**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**</u>

   Comes now the plaintiff, Ashland University ("AU" or "University"), by counsel, and moves this Court to grant a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, enjoining the Secretary of the United States Department of Education ("Department" or "Secretary") from attempting to collect $6,131,790.46 from AU.   In addition to the arguments set forth in this "Memorandum of Law," AU relies upon the Verified Complaint.

## INTRODUCTION

   As a result of an arbitrary and capricious decision, the Secretary seeks to impose more than a $6 million sanction against AU. By not correctly applying the provisions of the Higher Education Act and the requirements imposed in the Secretary's own regulations, the Secretary has impermissibly redefined AU's curriculum, simply to support the imposition of a draconian multi-million dollar fine.

   AU finds itself threatened with irreparable harm if the Secretary is permitted to immediately enforce the $6 million penalty that was unilaterally assessed against AU.  If a

preliminary injunction is not ordered, Ohio may lose an important non-profit institution of higher learning, which will severely damage the local economy and adversely affect students, particularly incarcerated students who will lose a proven tool that has placed many lives on a more productive and more successful trajectory.

## DISCUSSION

Four factors are balanced to determine whether a preliminary injunction should be granted; namely,

**(1)** **whether the movant is likely to succeed on the merits;**

**(2)** **whether the movant is likely to suffer irreparable harm in the absence of preliminary relief;**

**(3)** **whether the balance of equities tips in the movant's favor; and**

**(4)** **whether issuance of an injunction is in the public interest**.

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is "often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 137 S.Ct. 2080, 2087 (2017) (per curiam).

At this precarious point in time, AU is simply asking this Court to "preserve the relative positions" of the parties by preventing the Secretary from undertaking efforts to extract a $6 million fine from AU before the "merits" of the Secretary's penalty determination can be evaluated by the Court. See *Doster v. Kendall*, 54 F.4th 398, 441 (6th Cir. 2022) ("As a matter of historical practice, preliminary injunctions have typically sought merely to preserve the 'status quo' by

17297024v2

stopping a defendant's threatened conduct from causing (irreparable) harm until the court has a meaningful chance to resolve the case on the merits"). A preliminary injunction prohibiting the Secretary from pulling $6 million out of AU's coffers is supported by the four factor balancing test set out below.

> The charm of balancing tests for some, and the curse for others, is that they ineffably permit the balancing to occur in all manner of ways. It's a balance of four factors, not a mandate that all four factors exist. While the absence of one factor—say harm to a moving party—may weigh heavily in the balance, it does not dictate the balance.

*National Credit Union Administrative Board v. Jurcevic*, 867 F.3d 616, 622 (6th Cir. 2017).

## I.    AU IS LIKELY TO SUCCEED ON THE MERITS

To satisfy this first factor, "[i]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007). That is most certainly the case here.

Generally speaking, incarcerated students at AU (the "SCP students") received Federal Pell Grants during the two academic years covering the period from 2019-20 through 2021-22. The SCP students used the Pell Grants, university dollars and other aid to pay for tuition, books and supplies. The SCP students completed classes during the academic years that are in question. The Secretary now seeks to claw back over $6 million from AU, despite the fact that the SCP students already received the full benefit of the 2019-20 through 2020-21 courses that AU provided, paid for in part by the Pell Grants.

3

The Secretary's overreach in demanding $6 million from AU is a based upon a fundamental misinterpretation of what a "program" is.  Rather than allowing this issue to be addressed through the litigation process, the Secretary has made it clear that he seeks to immediately confiscate more than $6 million from a fiscally-challenged AU whether or not the Secretary's fine is valid.

The Administrative Procedure Act (APA) directs a court to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right" or "in excess of statutory jurisdiction [or] authority." 5 U.S.C. § 706(2)(A), (B), (C).  The Secretary claims AU miscalculated the Pell Grants for SCP students.  Specifically, the Secretary alleges that the "SCP Experiment" was an eligible program at AU pursuant to 34 C.F.R. § 668.8.  That is plainly untrue.  AU offers and its students enroll in academic programs like Applied Communications, Interdisciplinary Studies, and Business Administrations, all of which are "eligible programs" as defined in 34 C.F.R. § 668.8.  The "SCP Experiment" is not an eligible program.  Nowhere does AU identify or suggest that the "SCP Experiment" is such a program.  The Secretary cannot unilaterally proclaim the "SCP Experiment" is a program at AU, that its instructional time was less than 30 weeks, and that AU therefore wrongfully calculated too much Pell Grant funding for those students.

Contrary to the Secretary's assertion, all relevant SCP students were enrolled in one of five "eligible programs" at AU that employed standard terms of 30 weeks or more instructional time. The Secretary has wrongfully attempted to manipulate AU's curriculum by redefining what academic "programs" AU offered to its students.  The SCP Experiment, which was the vehicle created by the Secretary to allow for incarcerated students to receive federal Pell Grants, is not an eligible program.  Furthermore, no AU student is enrolled in the SCP Experiment.

Consequently, the Secretary's erroneous conclusion that the "SCP Experiment" was an eligible program as defined in 34 C.F.R. § 688.8 was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law.  The Secretary's application of a new and different definition of "eligible program" plainly violates 5 U.S.C. § 706 (the Administrative Procedure Act) because, as AU was advised on September 20, 2023, the Secretary's findings and multi-million-dollar penalty are now a final agency decision.  This Court is authorized to set aside that final agency decision.

AU has persuasively shown a likelihood of success on the merits.  Nonetheless, the party moving for a preliminary injunction may "show less likelihood of success on the merits if the other facts indicated that the Court should issue a preliminary injunction." *In re DeLorean Motor Co.*, 755 F. 2d 1223, 1229 (6th Cir. 1985). As demonstrated below, the other factors do warrant issuance of a preliminary injunction.

## II.     AU IS LIKELY TO SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF

Undersigned counsel inquired if the Secretary would "demand payment of the assessment once" a final agency decision occurred; namely, will the Secretary be looking for $6 million from AU prior to resolution of this dispute in federal court.  Counsel for the Secretary answered in the affirmative and said that "[o]nce the decision is final the Department will seek a recovery of [the $6,131,790.46 penalty] plus interest."  It is therefore abundantly clear that the Secretary will promptly take steps to seize $6 million from AU.

AU is a relatively small private university.  Setting aside the Secretary's multi-million dollar fine, AU is already confronted by staggering financial challenges.  Enrollment at AU has not recovered to pre-COVID levels.[1]  In this year alone, 20 employees have lost their jobs through

---

[1] Affidavit of Marc Pasteris, ¶¶ 6-7, attached hereto as Exhibit A1.

a reduction in workforce at AU because of budgetary concerns.[2]  AU experienced a budget deficit of nearly $3 million in 2022-23.[3]  A similar shortfall is expected in 2023-24.[4]  Undoubtedly like most small schools providing education to historically under-served students, AU operates more or less hand to mouth.  So, the Secretary's anticipated attempt to bleed AU of $6 million will do irreparable harm to AU's ability to educate its students.  If the Secretary is allowed to push forward to collect this baseless fine, it could be the death knoll for AU.

AU will likely be unable to remain in operation for very long if it does not receive the preliminary injunction to which it is entitled. See *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F. 2d 1373, 1382 (6th Cir. 1995) ("the impending loss or financial ruin of [plaintiff's] business constitutes irreparable injury"). *Commonwealth v. Biden*, 57 F.4th 545, 555 (6th Cir. 2023) (loss of federal funding deemed irreparable injury); *Eastern Gateway Community College v. Cardona*, 2022 WL 12930195 (S.D. Ohio 2022) (withholding Pell funds caused irreparable injury to the college); *Camelot Banquet Rooms, Inc. v. United States Small Business Administration*, 458 F.Supp.3d 1044, 1063 (E.D.Wisc. 2020) ("Based on these facts, I am satisfied that the…plaintiff has demonstrated irreparable harm based on the likelihood that it will go out of business without a PPP loan"); *ABC Charters, Inc. v. Bronson*, 591 F.Supp.2d 1272, 1307 (S.D.Fla 2008) (irreparable harm shown because "travel agencies will be forced to close their businesses as they cannot afford the excessive bond under the conditions set by the law"); *See also Nexus Gas Transmission, LLC v. City of Green, Ohio*, 757 Fed.Appx. 489, 493 (6th Cir. 2018).  Irreparable harm has been demonstrated by AU in this case.

---

[2] Pasteris Aff., ¶ 9.
[3] Pasteris Aff., ¶ 10.
[4] Pasteris Aff., ¶ 11.

17297024v2

### III.     THE BALANCE OF EQUITIES TIPS IN AU'S FAVOR

Not every university offers educational opportunities to incarcerated individuals.  If the Secretary is allowed to demand $6 million from AU immediately, and AU is forced to shutter its doors, incarcerated students will be further thwarted in their ability to be educated.  Importantly, rather than saddle AU students with the harsh burden of the Secretary's incorrect assessment by ratcheting up tuition, AU has instead kept the cost to attend AU affordable to financially-challenged students.  Whether or not the Secretary sees it, AU recognizes that opportunities must remain for incarcerated individuals to receive a college education.

Notably, the Secretary claims entitlement to interest on the $6 million penalty.  If that is in fact true, and the Secretary prevails in this litigation, he will be in no worse of a position if he waits and receives the penalty amount plus interest at the end of this litigation, as opposed to collecting $6 million right now.  Conversely, if AU is disgorged of $6 million right now, and ultimately prevails in this case three years or three months from now, AU as an institution may not be in existence.  *See Southeast Arkansas Hospice, Inv. v. Dept. of Health and Human Services*, 2010 W.L. 3829420 (E.D.Ark. 2010) ("it is apparent that the gravity of this harm [to the plaintiff] outweighs any injury that the granting of a preliminary injunction would inflict upon DHHS").

The balance of equities convincingly favors AU.  *See Arthritis and Osteoporosis Clinic of East Texas*, *P.A. v. Azar*, 450 F.Supp.3d 740 (E.D. Texas 2020) (preliminary injunction was granted barring federal governmental agency's recoupment of $4 million in alleged overpayments until the Court determined what, if anything, was actually owed).

### IV.     ISSUANCE OF AN INJUNCTION IS IN THE PUBLIC INTEREST

The devastating impact on current students if the Secretary immediately withdraws $6 million from AU and AU closes the school conclusively tips the "public interest" analysis in AU's

7

favor.  *See Washington v. DeVos*, 466 F.Supp.3d 1151, 1171 (E.D.Wash. 2020) ("failure to grant injunctive relief would have a significant impact on the public interest because" of students not getting emergency financial aid grants); *Washington v. DeVos*, 481 F.Supp.3d 1184 (W.D.Wash. 2020).  In addition, the repercussions if the Secretary collects $6 million from AU are not limited to the school, its current and future students, and its alumni.  Rather, the greater AU community will be impacted.

AU currently employs over 2,500 people.[5]  If the Secretary forces the closure of AU that will cause serious repercussions in Ashland, Ohio, which only has a population of about 19,500 people.  A best estimate of tax revenue generated by AU employees approximates $8 million annually.[6]  Loss of AU as an economic engine would be devastating.  The greater AU community should not be made to withstand this body blow.

If a preliminary injunction is not granted, and AU is forced to close its doors, the Ohio residents near AU will be severely and adversely impacted.  *See Signal Hill Service, Inc. v. Macquarie Bank Limited*, 2011 WL 13220305, page 21 (C.D.Cal. 2011) ("The effect on the health of the local economy is a proper consideration in the public interest analysis").

WHEREFORE, AU requests that this honorable Court enter a preliminary injunction prohibiting the Secretary from undertaking efforts to extract $6,131,790.46 from AU and to further provide the relief set forth in the "Motion for Preliminary Injunction."

Respectfully submitted this 25th day of September, 2023.

---

[5] Pasteris Aff., ¶ 8.
[6] Pasteris Aff., ¶ 12.

8

17297024v2

**ASHLAND UNIVERSITY,**
**By Counsel,**

*/s/J. Kevin West*

J. Kevin West, Esq.
Huntington Center
41 South High Street, Suite 220
Columbus, OH 53215
Telephone:  (614) 458-9889
Facsimile:  (614) 221-0952
kevin.west@steptoe-johnson.com

James H. Newberry, Jr., Esq. (pro hac vice
admission pending)
Kalynn G. Walls, Esq. (pro hac vice
admission pending)
700 North Hurstbourne Parkway, Suite 115
Louisville, KY 40222
Telephone:  (502) 423-2000
Facsimile:  (502) 423-2001
kalynn.walls@steptoe-johnson.com
jim.newberry@steptoe-johnson.com

Jeffrey K. Phillips, Esq. (pro hac vice
admission pending)
100 West Main Street, Suite 400
Lexington, KY 40507
Telephone:  (859) 219-8210
Facsimile:  (859) 219-8201
jeff.phillips@steptoe-johnson.com

**STEPTOE & JOHNSON PLLC**
*Of Counsel*

9

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DISTRICT
AT CLEVELAND**

**ASHLAND UNIVERSITY,**

      *Plaintiff,*

*v.*

**MIGUEL CARDONA,** *in His Official Capacity
as the Secretary of the United States Department
of Education,*

      *Defendant.*

**Case No.** 1:23-cv-1850

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on the **25th** day of September, 2023, I served the foregoing "Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction" upon the parties, by depositing a true copy thereof in the United States mail, postage prepaid, in an envelope addressed as follows:

> Raziya Brumfield, Esq.
> Office of the General Counsel
> U.S. Department of Education
> 400 Maryland Avenue, SW
> Room 6E214
> Washington, DC 20202
> raziya.brumfield@ed.gov

> Donna Mangold, Esq.
> Office of the General Counsel
> U.S. Department of Education
> 400 Maryland Avenue, SW
> Room 6E214
> Washington, DC 20202
> donna.mangold@ed.gov

> */s/ J. Kevin West*
> J. Kevin West
> *Counsel for Plaintiff*
> *Ashland University*

17297024v2

# EXHIBIT A1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DISTRICT**
**AT CLEVELAND**

**ASHLAND UNIVERSITY,**

     *Plaintiff,*

*v.*

                                           **Case No.** 1:23-cv-1850

**MIGUEL CARDONA,** *in His Official Capacity*
*as the Secretary of the United States Department*
*of Education,*

     *Defendant.*

---

## AFFIDAVIT OF MARC P. PASTERIS

---

I, Marc P. Pasteris, after having been duly sworn, state as follows:

    1.     I am more than 18 years old and am of sound mind.

    2.     I am currently employed as Vice President and Chief Financial Officer of Ashland University.

    3.     I am a certified public accountant.

    4.     I received my masters degree in business administration from the Olin Business School at Washington University in St. Louis, Missouri.

    5.     I have been employed at Ashland University since February 2018.

    6.     Enrollment of non-incarcerated students at Ashland University in the fall of 2019 was approximately 4,800 students.

    7.     In the fall of 2022, Ashland University had approximately 3,900 non-incarcerated students.

17371204v1

8.      For calendar year 2022, Ashland University employed approximately 2,500 people, including student workers.

9.      Because of budgetary concerns, there have been 20 employees who have lost their jobs through a reduction in workforce at Ashland University this year.

10.     Ashland University experienced a budget deficit of nearly $3 million for the 2022-23 fiscal year.

11.     Ashland University does not presently have the ability, nor does it anticipate being able, to pay $6 million to the United States Department of Education.

12.     My best estimate is that the tax revenue generated by Ashland University employees is approximately $8 million annually.

13.     Attached as Exhibit A1(a) is the notice that counsel for Ashland University received concerning the Final Agency Decision of the U.S. Department of Education.

And further the Affiant sayeth naught.

Marc P. Pasteris

STATE OF OHIO:         )
                              )
COUNTY OF ASHLAND:  )

Subscribed, sworn, and acknowledged before me, a Notary Public, in and for the County and State aforesaid by Marc P. Pasteris on this 22nd day of September, 2023.

Michelle R. Neville
Notary Public

My commission expires: _04/18/2028_

MICHELLE R NEVILLE
Notary Public
State of Ohio
My Comm. Expires
April 18, 2028

[Notarial Seal]

17371204v1



**U.S. DEPARTMENT OF EDUCATION**
**400 MARYLAND AVENUE, SW**
**WASHINGTON, DC 20202**

OFFICE OF HEARINGS
AND APPEALS

September 20, 2023

Kalynn Walls, Esq.
Jim Newbery, Esq.
Steptoe & Johnson PLLC
700 Hurstbourne Parkway, Suite 115
Louisville, KY 40222
kalynn.walls@steptoe-johnson.com
jim.newberry@steptoe-johnson.com

Raziya Brumfield, Esq.
Office of the General Counsel
U.S. Department of Education
400 Maryland Avenue, S.W., Room 6E214
Washington, D.C. 20202
raziya.brumfield@ed.gov

Re: Ashland University, Docket No. 22-58-SP, PRCN: 2021-4-05-30426

Dear Counsel:

Pursuant to 34 C.F.R. § 668.119, an Initial Decision that is not timely appealed shall become the final agency decision thirty (30) days after receipt of the Initial Decision.

On July 10, 2023, counsel for the Department and Respondent received the Initial Decision via automatic email notification from the Office of Hearings and Appeals Electronic Filing System (OES).

As of the date of this notice, no appeal in this matter has been received from either party. By operation of regulation, the Initial Decision as previously issued became the Final Agency Decision on August 9, 2023.

Sincerely,

Rodger A. Drew, Jr.
Director

www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

EXHIBIT # A1(a)
