# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DISTRICT
# AT CLEVELAND

**ASHLAND UNIVERSITY,**

    *Plaintiff,*

v.

**MIGUEL CARDONA,** *in His Official Capacity as the Secretary of the United States Department of Education,*

    *Defendant.*

Case No. 1:23-cv-1850

## VERIFIED COMPLAINT

1. Ashland University ("AU" or "the University") seeks declaratory and injunctive relief, primarily to compel defendant Miguel Cardona, the Secretary of the United States Department of Education ("Department" or "Secretary") to comply with the law governing AU's participation in a federal student aid program established under Title IV of the Higher Education Act of 1965 ("HEA"), Pub. L. No. 89-329, 79 Stat. 1219.

2. The Secretary seeks to impose more than a $6 million penalty against AU based upon arbitrary and capricious actions which amount to an abuse of discretion and which were not in accordance with law. Failing to correctly apply the provisions of the HEA or requirements imposed in the Secretary's own regulations, the Secretary has impermissibly redefined AU's curriculum in an attempt to support the imposition of this unwarranted and unsupported fine.

3. As a result of the Secretary's misconduct, AU finds itself financially hamstrung and improperly burdened in accomplishing its goal of educating American citizens. Without the sought-after relief, AU's ability to teach its students will be significantly diminished and these

students will be adversely affected, particularly incarcerated students who will lose a proven tool that has placed many lives on a more productive and more successful trajectory.

## PARTIES

4. Ashland University, located in Ashland, Ohio, was founded in 1878.

5. AU is licensed by the Ohio Department of Higher Education.

6. AU is fully accredited by the Higher Learning Commission.

7. Rooted in faith and tradition with an accent on the individual, AU promotes values and respect toward each person and their spirituality.

8. The University's mission statement makes clear that AU "provides a transformative learning experience."

9. AU's core values promote character development, including self-discipline, responsibility, and good citizenship.

10. AU's mission, vision and core values made the University's entry into educating incarcerated individuals a logical step, hence it is missional.

11. For more than half a century, AU has offered higher education opportunities to individuals who are incarcerated. Throughout this Verified Complaint, AU students who are incarcerated, imprisoned or jailed while receiving educational instruction from AU will be referred to as "incarcerated students," or "Second Chance Pell students," or "SCP students." All other AU students will be called "traditional students" or "non-SCP students."

12. AU is our country's longest serving provider of corrections education, dedicated to the mission of teaching incarcerated individuals since 1964.

13. A 2014 Department of Justice/RAND Corporation study found that incarcerated individuals who participated in educational programs, like AU's, while incarcerated are 43% less

likely to return to prison within three years of their release than their peers who did not participate in such programs.

14. In 2022, AU was named a "Best College" by U.S. News & World Report.

15. Also, in 2022, U.S. News & World Report ranked AU's online learning options as being in the top half of our nation's schools that made similar offerings.

16. AU has five separate colleges; namely, (1) Ashland Theological Seminary; (2) College of Arts & Sciences; (3) College of Business & Economics; (4) College of Education; and (5) College of Nursing & Health Sciences.

17. Each of the Colleges has eligible academic programs specific to that College.

18. AU offers undergraduate academic programs that lead to the following degrees: Associate degrees in Art, Criminal Justice and General Studies; Bachelor of Arts; Bachelor of Fine Arts; Bachelor of Music; Bachelor of Science; Bachelor of Science in Business Administration; Bachelor of Science in Nursing; and Bachelor of Social Work. AU also offers graduate and doctoral degrees.

19. Ashland University offers over 60 majors.

20. There are 139 academic programs for these majors.

21. AU's Ashland Theological Seminary has one program.

22. AU's College of Arts & Sciences has 68 programs.

23. AU's College of Business & Economics has 32 programs.

24. AU's College of Education has 27 programs.

25. AU's College of Nursing & Health Sciences has 11 programs.

26. The AU student body encompasses approximately 7,500 undergraduate and graduate students each year. Essentially all of them receive financial aid—including Federal Pell Grants.

27. AU has educated approximately 3,000 incarcerated students on an annual basis for the past three years.

28. AU currently provides academic education for incarcerated students in 13 states and the District of Columbia.

29. AU incarcerated students have earned associate degrees and bachelor degrees.

30. Four of AU's incarcerated students were recognized as valedictorians of their classes which included both traditional and incarcerated students.

31. AU's incarcerated students receive the same amount of class time as AU's traditional students.

32. AU's incarcerated students receive the same course content as AU's traditional students.

33. AU's incarcerated students receive the same course learning objectives as AU's traditional students.

34. AU's incarcerated students receive the same transcript entries as AU's traditional students.

35. At all relevant times, AU was an institution of higher education as defined in the HEA and its implementing regulations. *See* 20 U.S.C. §§ 1001–02; 34 C.F.R. § 600.4(a).

36. At all relevant times, AU was authorized by the Ohio Department of Education, the official coordinator of Ohio's academic system, to provide postsecondary education programs. *See* 34 C.F.R. § 600.9.

37. At all relevant times, AU was fully accredited by the Higher Learning Commission, a nationally recognized accrediting agency. *See* 20 U.S.C. § 1001; 34 C.F.R. § 600.2.

38. At all relevant times, AU was eligible and certified to participate in the Pell Grant program. *See* 34 C.F.R. § 690.7.

39. The Department of Education is an agency of the United States of America and headquartered at 400 Maryland Avenue SW, Washington, DC, 20202. *See* 5 U.S.C. §§ 551(1) and 701(b)(1).

40. Miguel Cardona is the Secretary of the United States Department of Education and is sued in his official capacity.

41. Miguel Cardona is the agency head of the United States Department of Education and is responsible for implementing the challenged regulatory action.

### JURISDICTION AND VENUE

42. This is an appeal of a final agency action rendered by the United States Department of Education.

43. This civil action arises under Title IV of the Higher Education Act, *see* 20 U.S.C. §§ 1070 *et seq.*, the Administrative Procedures Act, *see* 5 U.S.C. §§ 701 *et seq.*, and the Declaratory Judgment Act, *see* 28 U.S.C § 2201.

44. This Court has jurisdiction over the subject matter of this civil action and over the United State Department of Education. Venue is proper in this Court because AU resides in the Northern District of Ohio, Eastern Division, and a substantial part of the events or omissions giving rise to the claim occurred there. *See* 5 U.S.C. §§ 702–03; 28 U.S.C. §§ 1331, 1361, and 1391(e).

45. This Court has the authority to grant an injunction, a declaratory judgment and to "set aside" the Secretary's agency action in this matter pursuant to 28 U.S.C. §§ 2201, 2202 and 5 U.S.C. §§ 705, 706(2).

### FACTS

46. AU delivers its academic programs to its students through multiple modalities.

47. AU provides instruction for its academic programs in person to students on campus, online to students throughout the country and online to SCP students who are incarcerated.

48. Despite the alternative delivery methods of academic instruction, the content is the same, the student learning objectives are the same, the amount of class time is the same, the resulting transcript entries are the same, and the degrees earned by students are the same, regardless of the manner in which the content was delivered.

49. AU's SCP students are, and during the relevant time were, required to receive the same number of credit hours and instruction time in their accelerated format as traditional students, equaling 1,500 minutes of out-of-classroom work by the student, or 150 to 180 minutes of independent or direct work per week for 15 weeks.

50. Before 1992, AU participated in Federal student aid programs including disbursing Pell Grant awards to incarcerated students. However, in 1992, Pell Grant funding became unavailable to incarcerated students.

51. In 2015, the Department instituted the Second Chance Pell—Pell for Incarcerated Students Experiment ("SCP" or "SCP Experiment") under the Secretary's Experimental Sites Initiative (ESI), which provides a limited waiver of the statutory prohibition on incarcerated students receiving Pell Grants.

52. The SCP Experiment is neither an academic program of AU or an eligible program as defined in 34 C.F.R. § 668.8.

53. The Secretary expressly said the SCP Experiment was "designed to facilitate efforts by institutions to test certain innovative practices aimed at improving student outcomes and the delivery of services," focused on "students who are incarcerated." See *Fed. Reg.*, 45, 964 (Aug. 3, 2015).

54. The Secretary stated that "post-secondary education and training for incarcerated individuals is correlated with several positive post-release outcomes, including increased

educational attainment levels, reduced recidivism rates, and improved post-release employment opportunities and earnings." See *Fed. Reg.*, 45, 964 (Aug. 3, 2015).

55. The Secretary desired to "test whether participation in high-quality educational opportunities increases after access to financial aid [specifically Pell Grants] for incarcerated adults is expanded." See *Fed. Reg.*, 45, 964 (Aug. 3, 2015).

56. On June 28, 2016, the Department invited AU to participate in the SCP Experiment based on, among other things, information submitted by AU in the application process.

57. In August 2016, AU and the Department executed a Program Participation Agreement ("PPA") Amendment, which set out the exemptions and requirements for participating in the SCP Experiment, including the requirement "that the program be credit-bearing and lead to a certificate or degree awarded by the Institution."

58. On August 18, 2016, the Department notified AU that it could begin implementation of the SCP Experiment for the 2016-2017 award year.

59. Since 2016, over 1,500 incarcerated SCP students have earned undergraduate degrees from AU. Several SCP students have later earned graduate degrees.

60. As of February 2022, AU had approximately 2,200 SCP students pursuing degrees in five academic programs of study.

61. At all relevant times, all five academic programs of study by SCP students at AU were "eligible" programs as defined in 34 C.F.R. § 668.8.

62. All five of the subject programs met the requirements set out in 34 C.F.R. § 668.8 to be an "eligible program" as they are each an "educational program" which is legally authorized as required by 34 CFR § 600.2, at least two (2) academic years in length, and lead to either a bachelor or associate degree.

63. Further, all five programs are, and during the relevant time were, offered through in-person courses and through online distance learning courses and have been evaluated by the High Learning Commission through the normal accreditation process.

64. Every SCP student at AU was enrolled in one of the five educational programs, each of which was an established academic program of at least thirty (30) weeks, comprised of two fifteen (15) week semesters approved by the Ohio Department of Higher Education ("ODHE") and according to the Department's regulation and guidance regarding academic years.

65. All of AU's programs are, and during the relevant time, were approved by ODHE.

66. To be approved by ODHE, any institution's academic program must undergo significant scrutiny as set forth in Guidelines and Procedures for Academic Program Review ("GPAPR"), including institutional and program standards specified in the guidelines.

67. In particular, the GPAPR requires Ohio institutions to have academic policies consistent with ODHE's definition of "academic year" requiring thirty (30) weeks of instruction exclusive of compressed terms.

68. Thus, pursuant to the standards of 34 C.F.R. § 668.8, all five of the AU educational programs available to SCP students were "eligible programs" fulfilling the first prong set out in 34 C.F.R. § 690.63(a)(1) in calculating Pell awards.

69. The SCP students are, and during the relevant time, were enrolled in the same academic program as "traditional" AU students which meets the thirty (30) week requirement, though it is taught in a manner that accelerates the course delivery to SCP students through the GPAPR's "compressed terms."

70. As a result, all five of the subject academic programs satisfy the requirements of 34 C.F.R. § 690.63(a)(1) as programs with at least thirty (30) weeks of instructional time, even though a section or version of each course is taught in a compressed term as contemplated by the GPAPR.

17128961v6                                    8

71. The course delivery for SCP students at AU is asynchronous, distance education, with an accelerated schedule of class instruction.

72. Due to their incarceration, SCP students have an alternative modality of instruction than non-SCP students in the same academic program and courses. In its Notice of the SCP Experiment, the Secretary recognized that the "delivery of services" to incarcerated students would be different than to traditional students. See *Fed. Reg.* 45, 964 (Aug. 3, 2015).

73. AU does not characterize or distinguish modality of instruction to be the creation of a separate academic program.

74. Unlike AU's academic programs, the SCP Experiment is not an "eligible program" in that it does not meet the definition of or requirements for an "eligible program" set forth in 34 C.F.R. § 668.8.

75. Since the SCP Experiment is not an "eligible program," the SCP Experiment cannot be the basis upon which the calculations required by 34 C.F.R. § 690.63 can be made.

76. No AU students are enrolled in a program called the SCP Experiment.

77. From September 13, 2021, through September 24, 2021, the Department's Office of Federal Student Aid ("FSA") Chicago/Denver School Participation Division conducted a focused program review at AU. The focus of the program review was to determine AU's compliance with certain regulations pertaining to its administration of the Federal Student Aid programs under Title IV of the Higher Education Act of 1965 (HEA), as amended, 20 U.S.C. § 1070 et seq.

78. On January 3, 2022, FSA issued a Program Review Report (PRR).

79. In the PRR, FSA made 10 findings, two of which are the subject of this litigation, Finding 1 and Finding 2.

80. In Finding 1 of the PRR, titled "Improper Pell Packaging," FSA concluded that AU's SCP students "have the same academic program content as other AU students but have a different structure to complete the academic program" that provided less than 30 weeks of instruction because SCP students' semesters are 12-week semesters within a 24-week Academic Calendar. FSA concluded that AU had incorrectly calculated Pell Grant funds to SCP students based on its use of 30 weeks of instruction in its calculations. Finding 2 of the PRR, titled "Return of Title IV (R2T4) Calculation Errors," did not include any monetary liabilities, but nevertheless asserted a finding of noncompliance based upon the same theory employed by FSA in Finding 1.

81. On September 16, 2022, the Secretary, by and through FSA, issued a Final Program Review Determination ("FPRD") and assessed AU a monetary penalty based upon the University's so-called non-compliance alleged in Finding 1 of the January 2022 PRR.

82. FSA said that AU used an incorrect formula for Pell Grant award packaging during Award Years 2019-2020 and 2020-2021 for SCP students and therefore over awarded Pell Grant funds to SCP students. FSA calculated AU's liabilities to be $6,131,790.46, inclusive of principal and cost of funds.

83. AU timely appealed FSA's analysis, findings and penalty in a proceeding entitled *In the Matter of Ashland University, United States Department of Education Office of Hearings and Appeals*, Docket No. 22-58-SP.

84. In her *Initial Decision*, the Secretary's Chief Administrative Law Judge ("ALJ"), Elizabeth Figueroa, acknowledged that studies completed by SCP (incarcerated) students and traditional students at AU all fell within the same associate or bachelor's degree programs that have been approved by the Ohio Department of Education. See *Initial Decision*, page 15.

85. In her *Initial Decision*, Chief ALJ Figueroa said FSA conceded that SCP students receive the same academic content as other AU students, but the incarcerated students are simply taught via a different structure to complete the academic program. See *Initial Decision*, page 15.

86. In her *Initial Decision* at page 9, Chief ALJ Figueroa said:

> "In reviewing the issues in this matter, no previous decisions issued by the Secretary that address the issues concerning calculation of Pell Grant awards raised herein were located."

87. To the contrary, the issue of FSA improperly seeking to construe the existence of a separate or distinct program based on a different method of delivery for traditional students versus students who were confined by the state, but nevertheless enrolled in the same courses and in the same academic programs was squarely addressed by the Secretary in Docket No. 07-38-SP, *In the Matter of South Florida Community College, United States Department of Education Office of Hearings and Appeals*.

88. In her *Initial Decision* at page 15, Chief ALJ Figueroa, without citing to any evidence in the record, said:

> "Record evidence establishes that the SCP Experiment was determined to be an eligible program for Title IV, HEA program purposes."

89. The record did not establish that the SCP Experiment was an eligible program.

90. To the contrary, as noted in paragraphs 51, 52, 53, 54, 56, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, and 74 of this Verified Complaint, the SCP Experiment does not satisfy the definition of "eligible program" set forth in 34 C.F.R. § 668.8.

91. It is axiomatic that the SCP Experiment cannot be the eligible program in which SCP students are enrolled, as 34 CFR § 668.8(a)(1-2) requires that a program "eligible" for Pell Grant awards must first be an "educational program" as defined at 34 CFR § 668.2(a)(9) (incorporating the definition set out at 34 CFR § 600.2). An educational program must be a "legally

17128961v6                                11

authorized postsecondary program of organized instruction or study" that, as applicable here, "[l]eads to an academic, professional, or vocational degree, or certificate, or other recognized educational credential..." Thus, in addition to satisfying the other eligibility requirements, AU's eligible programs could only be those educational programs legally authorized by the Ohio Department of Higher Education.

92. Moreover, the erroneous conclusion that AU could have had an eligible program which was not an educational program authorized by the Ohio Department of Higher Education is in violation of the rights of AU and the Ohio Department of Higher Education, as a contravention of the limitations placed by Congress on the Department's authority in 20 U.S.C.A. § 3403, which explicitly prohibit the Secretary from exercising "any direction, supervision, or control" over an educational institution's "program of instruction" or over an accrediting agency or association. *See* 20 U.S.C.A. § 3403(b).

93. Nonetheless, on July 10, 2023, Chief ALJ Figueroa concluded that AU had "not satisfied its burden of proving that it complied with [Pell Grant] program requirements;" thus, AU was ordered to pay the Secretary "the total amount of $6,131,790.46." See *Initial Decision in Docket No. 22-58-SP*, page 20.

94. The conclusion by Chief ALJ Figueroa noted in the immediately preceding paragraph hinged on the sentence quoted in paragraph 88 of this Verified Complaint, a sentence that is not supported by the evidence, is contrary to law, and which caused the Secretary's final decision to be arbitrary, capricious and an abuse of discretion.

95. The SCP students at issue in this litigation (those who attended AU in 2019-2020 and/or 2020-2021) all used every dollar of their Pell Grant for education at AU.

96. AU contributes institutional aid to supplement federal aid awards, including during the relevant timeframe, so that all SCP students' financial obligations are fully covered every academic year.

97. AU also assists its students in maximizing their federal student aid and AU tries to fully utilize the funds allocated to AU so its student body receives the greatest possible educational opportunity from the Pell program.

98. None of the SCP students at issue in this litigation failed to get additional Pell Grant funds because of the actions of AU.

99. On July 10, 2023, Chief ALJ Figueroa issued a ruling that said her "initial decision automatically becomes the Secretary's final decision 30 days after it is issued and received by both parties unless within that 30-day period either party appeals the decision to the Secretary." See *Initial Decision,* page 20.

100. More than 30 days have elapsed since the *Initial Decision* was issued and since the parties received the *Initial Decision.*

101. No party has appealed the *Initial Decision* to the Secretary.

102. On September 20, 2023, the Department issued its Notice of Finality, advising the parties that effective August 9, 2023, a final agency action has been rendered by the Secretary, and accordingly, this matter is subject to judicial review. *See* 5 U.S.C § 704.

103. On July 22, 2023, undersigned counsel advised the Secretary's attorney that the *Initial Decision* would not be appealed to the Secretary; instead, this federal court Complaint would be filed. Undersigned counsel inquired if the Secretary would "demand payment of the assessment once" the *Initial Decision* was deemed final.

104. On July 26, 2023, counsel for the Secretary said that "[o]nce the decision is final the Department will seek a recovery of [the $6,131,790.46 penalty] plus interest."

## COUNT I—VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C § 706(2)

105. AU repeats and realleges each and every allegation contained in paragraphs 1 through 104 of this Verified Complaint as if fully set forth herein.

106. The Administrative Procedure Act (APA) directs a court to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right" or "in excess of statutory jurisdiction [or] authority." 5 U.S.C. § 706(2)(A), (B), (C).

107. The Secretary claims AU miscalculated the Pell Grants for SCP students under 34 C.F.R. § 690.63.

108. The Secretary claims that the SCP students were enrolled in "eligible programs" that used standard terms with less than 30 weeks of instructional time. *See* 34 C.F.R. § 690.63 (a)(2).

109. Contrary to the Secretary's assertion, all relevant SCP students were enrolled in one of five "eligible programs" at AU that employed standard terms of 30 weeks or more instructional time.

110. The Secretary has wrongfully attempted to manipulate AU's curriculum by redefining the programs offered at AU to support the Secretary's conclusion that the SCP Experiment was an "eligible program" in which AU's incarcerated students were enrolled.

111. The Secretary's erroneous conclusion that the SCP Experiment was an eligible program as defined in 34 C.F.R. § 688.8 was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law.

112. As a result of the Secretary's erroneous interpretation of "eligible program" as described above, the Secretary's conclusion that AU miscalculated Pell Grant awards to SCP

17128961v6      14

students must be overturned because it is not in accordance with law (that is, relevant HEA statutory and regulatory provisions); it is arbitrary and capricious; it is not supported by substantial evidence; and it represents an unprecedented determination by the Secretary.

113. The Secretary's application of a new and different definition of "eligible program" is contrary to AU's constitutional right in violation of 5 U.S.C. § 706(2)(B). See *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 60 n. 12 (1984). The Secretary's conclusion effectively subjects AU "to a trap brought about by an interpretation of a regulation hidden in the bosom of the agency." See *Director, Office of Workers Compensation Programs v. Mangifest*, 826 F.2d 1318 1325 (3rd Cir. 1987).

## COUNT II-DECLARATORY JUDGMENT

114. AU realleges and incorporates by reference all of the allegations contained in paragraph 1 through 113 of this Verified Complaint as if fully set forth herein.

115. AU requests the Court to **DECLARE** and **ADJUDGE** that the following acts or omissions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; without observance of procedure required by law; unsupported by substantial evidence; and unwarranted by the facts, *see* 5 U.S.C. § 706; 28 U.S.C. §§ 2201–02; U.S. Const. Am. V:

    a. the Secretary's decision to redefine "programs" at AU;

    b. the Secretary's decision that the SCP Experiment was an eligible program;

    c. the Secretary's decision to impose any fine upon AU;

    d. the Secretary's decision to calculate a fine, penalty, or assessment issued to AU that is not based on law, fact, or logic; and

e.  the Secretary's decision to impose interest and costs upon the fine, penalty, or assessment made against AU.

## COUNT III-INJUNCTIVE RELIEF

116. AU realleges and reincorporates by reference all of the allegations contained in paragraph 1 through paragraph 115 of this Verified Complaint as if fully set forth herein.

117. In addition to the losses described above, AU has suffered a decline in enrollment since the Secretary announced its program review findings and sought to impose more than $6 million in assessments against AU.

118. AU will suffer irreparable harm if the Court does not grant preliminary and permanent injunctive relief.

119. The consequences of enforcement of the Secretary's unlawful *Initial Decision* — to AU, to AU's students and their families, to AU's employees, and to AU's many communities— will be tremendous and devastating.

120. Accordingly, and for all of the reasons stated herein, AU requests the Court to retroactively and prospectively preliminarily and permanently **ENJOIN** the Secretary from initiating any act to collect its $6,131,790.46 assessment from AU until, if ever, there is a judicial decree imposing such an assessment against AU.

WHEREFORE, Ashland University prays that this Court:

A.  Enjoin the Secretary of the United States Department of Education from denying AU's right's as described in Count I;

B.  Issue the declarations described in Count II;

C.  Issue the preliminary and permanent injunctive relief described in Count III;

D.  Award attorneys' fees and costs pursuant to the Equal Access to Justice Act at 28 U.S.C. § 2412;

E. Empanel a jury trial on all issues so triable; and

F. Such other relief as the Court might deem appropriate.

Dated this 22nd day of September 2023.

|  |  |
|---|---|
|  | **ASHLAND UNIVERSITY,**<br>**By Counsel,**<br><br>/s/ *J. Kevin West*<br>J. Kevin West, Esq.<br>Huntington Center<br>41 South High Street, Suite 220<br>Columbus, OH 53215<br>Telephone: (614) 458-9889<br>Facsimile: (614) 221-0952<br>kevin.west@steptoe-johnson.com<br><br>James H. Newberry, Esq. (pro hac vice admission pending)<br>Kalyn G. Walls, Esq. (pro hac vice admission pending)<br>700 North Hurstbourne Parkway, Suite 115<br>Louisville, KY 40222<br>Telephone: (502) 423-2000<br>Facsimile: (502) 423-2001<br>jim.newberry@steptoe-johnson.com<br>kalynn.walls@steptoe-johnson.com |
| **STEPTOE & JOHNSON PLLC**<br>*Of Counsel* |  |
|  | Jeffrey K. Phillips, Esq. (pro hac vice admission pending)<br>100 West Main Street, Suite 400<br>Lexington, KY 40507<br>Telephone: (859) 219-8210<br>Facsimile: (859) 219-8201<br>jeff.phillips@steptoe-johnson.com |

17128961v6                                      18

# **VERIFICATION**

STATE OF OHIO

COUNTY OF ASHLAND

I, Carlos A. Campo, President of Ashland University, having been duly sworn, state that I have reviewed the foregoing "Verified Complaint" and that all of the information contained therein is true and correct, unless it is expressly stated to be based on information and belief, only in which case I believe it to be true and correct.

_____
CARLOS A. CAMPO

Sworn to and subscribed before me this ___22___ day of September, 2023.

_____
Notary Public

My commission expires: _04/18/2028_

[NOTARIAL SEAL]

MICHELLE R NEVILLE
Notary Public
State of Ohio
My Comm. Expires
April 18, 2028

17128961v6

19