## MANIFEST LIST

**RE:**  Ashland University's Final Program Review Determination
**OPE ID:** 00301200
**PRCN:**   2021-4-05-30426

Enclosed please find one (1) original and four (4) copies of the following:

- **Ashland University's Request for Review**
  1. Appendix I - Ashland University's Final Program Review Determination, dated September 16, 2022
       i. Appendix A: Student Sample to the Program Review
      ii. Appendix B: Program Review Report (PRR), dated January 3, 2022
     iii. Appendix C: Response to PRR, dated March 11, 2022
      iv. Appendix D1: File Review Spreadsheet (Original) – Finding 1 (2019-20)
       v. Appendix D2: File Review Spreadsheet (Original) – Finding 1 (2020-21)
          Appendix D3: File Review Spreadsheet (Corrected) – Finding 1 (2019-20)
      vi. Appendix D4: File Review Spreadsheet (Corrected) – Finding 1 (2020-21)
     vii. Appendix E1: Pell Cost of Funds – Finding 1 (2019-20)
    viii. Appendix E2: Pell Cost of Funds – Finding 1 (2020-21)
      ix. Appendix F1: File Review Spreadsheet (Original) – Finding 2 (2019-20)
       x. Appendix F2: File Review Spreadsheet (Original) – Finding 2 (2020-21)
      xi. Appendix F3: File Review Spreadsheet (Corrected) – Finding 2 (2019-20)
     xii. Appendix F4: File Review Spreadsheet (Corrected) – Finding 2 (2020-21)
    xiii. Enclosure 1: Course Syllabi Examples
     xiv. Enclosure 2: Instructor Checklist Examples
      xv. Enclosure 3: Documents for Student 1
  2. Appendix II – Ashland University's Program Review Report, dated January 3, 2022
  3. Appendix III – Ashland's Response to the Program Review Report, dated March 11, 2022

**GOVERNMENT EXHIBIT**

**C**

EDU000005



# STEPTOE & JOHNSON PLLC
## ATTORNEYS AT LAW

700 N. Hurstbourne Parkway

Suite 115

Louisville, KY 40222

(502) 423-2000    (502) 423-2001 Fax

www.steptoe-johnson.com

Writer's Contact Information
Jim.newberry@steptoe-johnson.com
(502)423-2052

October 24, 2022



AAASG
RECEIVED
10/26/22
SDC

Attn. Susan Crim, Director
Administrative Actions and Appeals Service Group
U.S. Department of Education
Federal Student Aid/Partner Enforcement and Consumer Protection
830 First Street, NC UCP3, Room 84F2
Washington, DC 20002-8019

|   |   |
|---|---|
| RE: | Request for Review - Ashland University Final Program Review Determination |
| OPE ID: | 00301200 |
| PRCN: | 2021-4-05-30426 |

Dear Director Crim:

Our firm represents Ashland University ("Ashland") in connection with the U.S. Department of Education's ("Department") Final Program Review Determination dated September 16, 2022 ("FPRD") issued by the Department's Office of Federal Student Aid ("FSA"). On behalf of Ashland, pursuant to 34 C.F.R. Part 668, Subpart H, we request review of FSA's errors in Findings 1 and 2 of the FPRD ("Review Request"). Ashland accepts Findings 3, 4, 6, and 7 of the FPRD, and as such, it does not seek a review of those four findings.

Please be advised that on October 5, 2022, Ashland initiated a request for a settlement conference with FSA ("Settlement Conference") to attempt to resolve this matter. Those settlement discussions are underway, but Ashland does not anticipate that those negotiations will be completed prior to the deadline imposed by 34 C.F.R. §668.113(b) for requesting a review in this matter. Thus, Ashland is submitting this Review Request contemporaneously with the ongoing settlement discussions both to rectify the FSA's erroneous conclusions and to preserve Ashland's right to administrative review of Findings 1 and 2 while the settlement discussions continue.

As required under 34 C.F.R. §668.113(c), please find the FPRD attached as Appendix 1. For ease of reference, copies of FSA's Program Review Report dated January 3, 2022 without the appendix or enclosures ("PRR") and Ashland's March 11, 2022 Response to the PRR without exhibits ("Response") are attached as Appendices 2 and 3, respectively, and are incorporated herein by reference. Further, as required under 34 C.F.R. §668.113(c)(1) and (2), Ashland submits the following identification of issues and facts in dispute and its position, together with the pertinent facts and reasons supporting that position.

West Virginia • Ohio • Kentucky • Pennsylvania • Texas • Colorado


TERRALEX

EDU000006

Director Susan Crim
October 24, 2022
Page 2

## Identification of Issues and Facts in Dispute

Pursuant to 34 CFR 668.113(c)(1), Ashland submits for review the legal issues set forth in detail below. In this instance, Ashland does not presently dispute any of the underlying facts.[1] Instead, this Review Request specifically targets the unsupportable manner in which FSA has applied the applicable statutes and regulations to those undisputed facts to reach the conclusions set forth in Findings 1 and 2.

In summary, Ashland requests review of two erroneous legal conclusions or positions taken by FSA.

- First, FSA erroneously concluded that Ashland's Second Chance Pell ("SCP") students were not enrolled in established, 30-week academic programs, comprised of two 15-week semesters, such that Ashland was entitled to utilize the so-called "Formula 1" packaging process.[2] Instead, FSA concluded that Ashland should have utilized either "Formula 2"[3] or "Formula 3".[4] The FSA review team reached the correct factual conclusion when it noted in the PRR, "The review team concluded that the Ashland students considered 'Pell for Students Who Are Incarcerated' experiment ("Second Chance Pell") under the Experimental Site Initiative (ESI) have the same academic program content as other Ashland students but have a different structure to complete the academic program."[5] In short, this sentence reveals that FSA understood the critical distinction between "structure" and "academic program." However, as detailed below, FSA failed to recognize that distinction and to correctly apply 34 C.F.R. §690.63 to that factual conclusion.

- Second, FSA disregarded the regulatory definition of "academic engagement" and erroneously concluded that Ashland's non-traditional method of delivering its eligible programs to SCP students did not consist of 15 weeks of academic engagement necessary to satisfy the requirement of a 15-week semester as a part of a 30-week academic program.

When 34 C.F.R. §668.690.63 is appropriately applied, neither of FSA's erroneous conclusions is supportable as required by 34 C.F.R. §668.118(b). As a result, Ashland was entitled to use Formula 1, despite FSA's erroneous conclusion that only Formula 2 applied. Given the liabilities assessed in Finding 2 are dependent upon FSA's flawed analysis in Finding 1, Ashland seeks review of the issues as applied in both Findings 1 and 2.

---

[1] While Ashland does not presently dispute any of the underlying facts, Ashland reserves the right to raise factual disputes which may become apparent during the settlement discussions with FSA or in FSA filings subsequent to the submission of this Request.

[2] "Formula 1" is described in 34 C.F.R. §690.63(a)(1).

[3] "Formula 2" is described in 34 C.F.R. §690.63(c).

[4] "Formula 3" is described in 34 C.F.R. §690.63(d). FSA concluded in Footnote 3 on p. 12 of the FPRD that Formula 2 was more applicable.

[5] PRR, p. 6.

EDU000007

Director Susan Crim
October 24, 2022
Page 3

### Ashland's Position and Supporting Facts and Reasons

Pursuant to 34 C.F.R. §668.113(c)(2), Ashland states its position and its supporting facts and reasons in opposition to the two erroneous conclusions by the FSA as described above.  As noted, Ashland does not presently dispute any of the facts established in its Response or the FPRD.  To the contrary, the facts which have been established in its Response and the FPRD support Ashland's position on both issues.

**1.      All of Ashland's SCP Students Were Enrolled in Eligible Programs with 30-Week Academic Years.**

Ashland properly packaged Federal Pell Grant ("Pell") awards to SCP students inasmuch as they were enrolled in five academic programs at Ashland, all of which were "eligible programs" as defined by 34 C.F.R. §668.8, and all of which were approved as 30-week programs.[6]  Ashland, in accordance with the regulations promulgated by the Department, applied the correct formula applicable to the academic program in which the SCP student was enrolled – Formula 1 – and made Pell awards in accordance that formula.   FSA, however, erroneously concluded that SCP students were enrolled in some separate program which simply does not exist.

That erroneous conclusion appears to have been based on FSA's belief that Ashland's use of a shortened time for content delivery somehow created a new program. FSA's salient, albeit erroneous, conclusion was stated as follows:

> Thus, the programs offered to SCP students are structured using standard terms with less than 30 weeks of instructional time. As previously stated, either Formula 2 or 3 must be used when awarding Pell Grant funds to students enrolled in programs that use standard terms with less than 30 weeks of instructional time. Consequently, Formula 1 cannot be used when awarding Pell Grant funds to SCP students. Ashland is therefore liable for the Pell Grant overpayments discussed in the PRR.[7]

The only program which Ashland could have offered to SCP students was one of its existing, eligible programs, all of which are 30-week programs for reasons detailed in its Response.  There was no separate program offered to SCP students; however, there was an existing, eligible 30-week program which was offered to SCP students using a modality that delivered the same content over a shorter period of time.  This critical distinction was lost in FSA's unsupported conclusion as asserted in the FPRD, even though that distinction was detailed in Ashland's Response.

Despite Ashland's Response outlining its compliance with the regulations and proper expenditures of Pell awards, FSA issued the FPRD without addressing the legal arguments set forth by Ashland.  Instead, FSA selectively listed in the FPRD a number of "facts" which FSA used as the "basis" for its determination that Formula 2 applied.[8]  However., FSA failed to address and follow the

---

[6] See Response, pp. 5-14.

[7] FPRD, p 11.

[8] *See,* FPRD, pp. 9-11.  Although not germane to this Review Request, Ashland disagrees with FSA's assertion on page 11 that ". . . these students did not have access to course materials for the entire 12-week semester; so had to start later in the 12-week semester or had periods of time when they were unable to access course material and had to catch up, other

EDU000008

Director Susan Crim
October 24, 2022
Page 4

Department's regulations which are dispositive.  In fact, rather than address the controlling regulations as to why Formula 2 should apply, FSA cites the start and end dates in course syllabi, Ashland's Return of Title IV Funds ("R2T4") calculations, and other Ashland documents as being dispositive of the duration of the course.  However, those documents cannot alter the provisions of the Code of Federal Regulations, and the Department's regulations, not Ashland's documents, determine whether a separate program ever existed for the SCP students and the duration of the program.

To date, FSA has failed to reconcile its position with the Department's regulations.  For the reasons detailed in Ashland's Response, FSA's application of the Department's regulations in the FPRD was erroneous and must be rectified in this administrative review.

### 2. Even if FSA's Conclusion That Ashland's SCP Students Were Enrolled in a Separate Program Is Correct, That Program Qualifies under the Department's Regulations as a 30-Week Program.

While Ashland strongly objects to the FSA's conclusion that its SCP students were enrolled in a separate program, even if that conclusion was correct, Ashland is still entitled to use Formula 1 to compute Pell awards for the SCP students.  FSA's conclusion that Ashland's programs for SCP students did not meet the requirement of a 30-week academic year with two 15-week semesters was wrong.

For reasons specified on pages 12-14 of its Response, FSA failed to correctly apply the regulatory definitions of a "week of instructional time"[9] and "academic engagement."[10]  Had FSA correctly applied those definitions, it would be evident that Ashland's SCP students were enrolled in 30-week programs which consisted of two 15-week semesters.  There is no dispute that those programs consisted of:

- One week prior to the commencement of coursework ("Week 1") during which SCP students interact with their instructors about the course syllabus, technology resources and materials necessary to facilitate the delivery of course content, and other academic matters necessary to initiate the course;
- Twelve weeks of asynchronous coursework through distance education ("Weeks 2-13")
- One week after the end of coursework ("Week 14") during which SCP students submit final assignments and instructors interact with SCP students regarding any unfinished assignments; and
- At least one week ("Week 15") during which students with incomplete grades complete coursework and otherwise interact with their instructors.

Had FSA correctly applied the definitions of "week of instructional time" and "academic engagement" as specified in the regulations as opposed to applying FSA's own definition of what

---

students opted to drop when the tablet/course materials became inoperable."  However, whether that statement is true or false, the experience of some specific student or students is irrelevant to whether the program was a 30-week program.
[9] 34 C.F.R. §668.3(b)(2).
[10] 34 C.F.R. §600.2.

EDU000009

Director Susan Crim
October 24, 2022
Page 5

those terms mean, FSA would have concluded that Ashland's program was a 15-week semester/30-week academic year program eligible for Formula 1 calculations.[11]

## Conclusion

Ashland properly packaged Pell awards for its SCP students in accordance with Formula 1. While we recognize that FSA may have utilized its interpretation of the regulations for many years, its position insofar as Ashland is concerned is undeniably at odds with the language set forth in the applicable regulations. All SCP students at Ashland are enrolled in the same "eligible program" as all other students in that program at Ashland, with the same intended learning outcomes, whether they are SCP students or not. Ashland has not created a separate "program" to enroll SCP students, and there is no evidence to the contrary. Further, if one concludes that its SCP students are enrolled in a separate program, that program meets the definition of a 30-week program eligible for Formula 1 calculations. As such, Ashland does not owe any portion of the $6,133,058.19 liability assessment specified in Finding 1 or any portion of the R2T4 returns assessed in Finding 2, and the Department should reverse those findings for the reasons set forth in Ashland's Response and this Review Request, as well as the reasons which will be subsequently submitted in Ashland's brief in accordance with 34 C.F.R. §668.114.

We appreciate your attention to this Review Request, and we look forward to receiving the hearing official's notification of the briefing schedule.

Respectfully submitted,

Jim Newberry
Kalynn Walls
STEPTOE & JOHNSON PLLC
700 Hurstbourne Parkway, Suite 115
Louisville, KY 40222
(502) 423-2000
jim.newberry@steptoe-johnson.com
kalynn.walls@steptoe-johnson.com

Susan Llewellyn Deniker
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330
(304) 933-8154
susan.deniker@steptoe-johnson.com

By: _____
Counsel for Ashland University

---

[11] Moreover, FSA acknowledged in the FPRD that an ambiguity existed during the review years which it has since tried to rectify. In note 2 on page 10 of the FPRD, FSA cites post-review revisions to the FSA Handbook wherein FSA claims it has "clarified" this issue. In actuality, the FSA has used the FSA Handbook to modify the regulatory definition of "week of instructional time" without following the requirements of the Administrative Procedures Act.

EDU000010

Director Susan Crim
October 24, 2022
Page 6


Cc:    Dr. Carlos Campo, President
       Ashland University

       Mr. Marc Pasteris, CFO
       Ashland University

EDU000011

Director Susan Crim
October 24, 2022
Page 7

## APPENDIX I

## FINAL PROGRAM REVIEW DETERMINATION

## SEPTEMBER 16, 2022

EDU000012

Prepared for

**Ashland University**



OPE ID: 00301200
PRCN: 2021-4-05-30426

Prepared by
U.S. Department of Education
Federal Student Aid
School Participation Division – Chicago/Denver

# Final Program Review Determination
September 16, 2022

School Participation Division - Chicago/Denver
230 South Dearborn, Room 3922, Chicago, IL 60604
StudentAid.gov

*P.L28.04.19.2022*

EDU000013

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 1

## Table of Contents

|     |                                                              | Page |
| --- | ------------------------------------------------------------ | ---- |
| A.  | Institutional Information                                    | 3    |
| B.  | Scope of Review                                              | 4    |
| C.  | Final Determinations                                         | 5    |

Resolved Findings/Findings without Liabilities — 5
Finding 5: Admission Policy Not Followed
Finding 8: Ineligible Student
Finding 9: Failure to Update Application
Finding 10: FSEOG Selection Policy Inadequate

| Findings with Required Actions and/or Established Liabilities | 7  |
| ------------------------------------------------------------ | -- |
| Finding 1: Improper Pell Packaging                           | 7  |
| Finding 2: Return of Title IV (R2T4) Calculation Errors      | 13 |
| Finding 3: Inaccurate NSLDS Enrollment Reporting             | 14 |
| Finding 4: Improper Pell for Crossover Payment Periods       | 16 |
| Finding 6: Attendance/Enrollment Status Not Verified         | 19 |
| Finding 7: Federal Pell Grant Overpayment                    | 21 |

| D.  | Summary of Liabilities    | 22 |
| --- | ------------------------- | -- |
| E.  | Payment Instructions      | 23 |
| F.  | Appendices and Enclosures | 26 |

Appendix A: Student Sample to the Program Review
Appendix B: Program Review Report (PRR), dated January 3, 2022
Appendix C: Response to PRR, dated March 11, 2022
Appendix D1: File Review Spreadsheet (Original) – Finding 1 (2019-20)
Appendix D2: File Review Spreadsheet (Original) – Finding 1 (2020-21)
Appendix D3: File Review Spreadsheet (Corrected) – Finding 1 (2019-20)
Appendix D4: File Review Spreadsheet (Corrected) – Finding 1 (2020-21)
Appendix E1: Pell Cost of Funds – Finding 1 (2019-20)
Appendix E2: Pell Cost of Funds – Finding 1 (2020-21)
Appendix F1: File Review Spreadsheet (Original) – Finding 2 (2019-20)
Appendix F2: File Review Spreadsheet (Original) – Finding 2 (2020-21)
Appendix F3: File Review Spreadsheet (Corrected) – Finding 2 (2019-20)
Appendix F4: File Review Spreadsheet (Corrected) – Finding 2 (2020-21)
Appendix G1: Pell Cost of Funds – Finding 6
Appendix G2: Pell Cost of Funds – Finding 6 (Duplicate Removed)

*P.L28.04.19.2022*

EDU000014

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 2

Appendix H1: Pell Cost of Funds – Finding 7
Appendix H2: Pell Cost of Funds – Finding 7 (Duplicate Removed)
Appendix H3: Pell Cost of Funds – Finding 7 (Interest Only)

Enclosure 1: Course Syllabi Examples
Enclosure 2: Instructor Checklist Examples
Enclosure 3: Documents for Student 1

*P.L28.04.19.2022*

EDU000015

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 3

## A.  Institutional Information

Ashland University
401 College Avenue
Ashland, OH 44805-3799

Type: Private, Nonprofit

Highest Level of Offering: Master's Degree or Doctoral Degree

Accrediting Agency: North Central Association of Colleges and Schools (The Higher Learning Commission)

Current Student Enrollment: 12,817 (2020-21 award year)
(source: Institution)

Percentage of Students Receiving Title IV: 60.93% (2020-21 award year)
(source: Institution)

Title IV Participation:
(source: PCNet)

| | 2019-20 |
|---|---|
| Federal Pell Grant (Pell) | $19,893,154.00 |
| William D. Ford Federal Direct Loan Program (DL) – Subsidized | $6,677,882.00 |
| DL – Unsubsidized | $17,311,662.00 |
| DL – PLUS | $4,208,035.00 |
| Federal Supplemental Educational Opportunity Grant (FSEOG) | $335,745.00 |
| Federal Work-Study (FWS) | $520,847.00 |
| Federal Perkins Loan (Perkins) | $0.00 |

| | |
|---|---|
| Default Rate – DL: | 2017: 4.0% |
| (source: FSA Data Center) | 2016: 3.7% |
| | 2015: 4.3% |

*P.L28.04.19.2022*

EDU000016

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 4

## B. Scope of Review

The U.S. Department of Education (the Department) conducted a program review at Ashland University (Ashland) from September 13, 2021 through September 24, 2021. The review was conducted by Mark Kreutzer and Leslie Orofino.

The focus of the review was to determine Ashland's compliance with specific regulations as they pertain to the institution's administration of the Federal Student Aid (FSA) programs under Title IV of the Higher Education Act of 1965 (HEA), as amended, U.S.C. §§ 1070 et seq. (Title IV programs). The review was focused on an examination of Ashland's compliance with Section 487A(b) of the HEA.

The Department identified a sample of 32 files for review from the 2019-20 and 2020-21 award years. The Department randomly selected the files from a statistical sample of the "Pell for Students Who Are Incarcerated" experiment ("Second Chance Pell") students for each award year. Appendix A lists the names and Social Security Numbers of the students whose files were examined during the program review.

The Department issued its Program Review Report (PRR) on January 3, 2022 (see Appendix B). Ashland submitted its written response to the PRR on March 11, 2022 (see Appendix C). The Department reviewed the response and considered it complete.

**Disclaimer:**

Although the review was thorough, it cannot be assumed to be all-inclusive. The absence of statements in the report concerning Ashland's specific practices and procedures must not be construed as acceptance, approval, or endorsement of those specific practices and procedures. Furthermore, it does not relieve Ashland of its obligation to comply with all of the statutory or regulatory provisions governing the Title IV, HEA programs.

*P.L28.04.19.2022*

EDU000017

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 5

## C. Final Determinations

### Resolved Findings/Findings without Liabilities

**Findings 5, 8, 9,** and **10.**

Ashland has taken the corrective actions necessary to resolve **findings 5, 8, 9,** and **10** of the PRR (see Appendices B and C). Therefore, these findings may be considered closed.

### Finding 5: Admission Policy Not Followed

The PRR (see Appendix B) cited Ashland for not having the required mechanism in its Second Chance Pell admission policies and procedures to give priority to those students that are likely to be released within five years of enrollment pursuant to the Department's guidance at 80 Fed. Reg. 45964-45966 (August 3, 2015). In response to the PRR (see Appendix C), Ashland concurred with the finding and confirms it revised its enrollment procedures to give priority to students who are within five years of release from prison. Consequently, no further action was required, and this finding is considered resolved with no liabilities assessed.

### Finding 8: Ineligible Student

The PRR (see Appendix B) cited Ashland for not retaining a copy of a high school diploma or GED for **student 24**, in accordance with its provisional admission policy. In response to the PRR (see Appendix C), Ashland stated it partially concurred with the finding and provided the GED for **student 24**. Ashland stated that it agreed that it failed to maintain a readily available copy of the student's GED and the document was not received prior to disbursement of Title IV funds.

Although the documentation provided by Ashland in response to this finding confirms that the student had earned a GED and was eligible for Title IV funds, the institution is reminded that it must follow its internal policies and procedures, including collecting and maintaining proof of secondary school completion (high school diploma, GED, etc.) and that it is required to confirm a student's eligibility for Title IV funds *at the time of disbursement. See* 34 C.F.R. § 668.32(e). Nevertheless, this finding may be considered resolved for the purposes of this program review with no liabilities assessed.

*P.L28.04.19.2022*

EDU000018

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 6

### Finding 9: Failure to Update Application

The PRR (see Appendix B) cited Ashland for untimely reporting of a new Third-Party Servicer (CampusLogic) via the electronic application system pursuant to the Department's regulations at 34 C.F.R. § 600.21. Ashland updated its electronic application during the program review and concurred with the finding in its response to the PRR (see Appendix C); therefore, no additional corrective actions were required. This finding is considered resolved with no liabilities assessed.

### Finding 10: FSEOG Selection Policy Inadequate

The PRR (see Appendix B) cited Ashland for inaccurately stating in its Title IV packaging policy that students must live on-campus to receive Federal Supplemental Educational Opportunity Grant (FSEOG) funds. *See* 34 C.F.R. § 676.10. This type of condition is prohibited and therefore cannot be included as part of the FSEOG selection process. Ashland staff indicated that this was a misprint in its Title IV packaging policy, corrected the error during the program review, and concurred with this finding in its response to the PRR (see Appendix C). Consequently, no further action was required, and this finding is considered resolved with no liabilities assessed.

*P.L28.04.19.2022*

EDU000019

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 7

## Findings with Required Actions and/or Established Liabilities

The PRR findings with liabilities requiring further action are summarized below. At the conclusion of each finding is a summary of Ashland's response to the finding, and the Department's final determination for that finding. A copy of the PRR issued on January 3, 2022, is attached as Appendix B.

### Finding 1: Improper Pell Packaging

**Summary of Noncompliance:**

For programs using standard terms with less than 30 weeks of instructional time, a student's Federal Pell Grant for a payment period is calculated under 34 C.F.R. 690.63(c) or (d) if the student is enrolled in an eligible program that:

- Measures progress in credit hours;
- Is offered in semesters, trimesters, or quarters;
- Requires the student to enroll in at least 12 credit hours in each term in the award year to qualify as a full-time student; and
- Is not offered with overlapping terms.

In addition, the institution offering the program: –

- Provides the program using an academic calendar that includes two semesters or trimesters in the fall through the following spring, or three quarters in the fall, winter, and spring; and
- Does not provide at least 30 weeks of instructional time in the terms specified in 34 C.F.R. § 690.63 (a)(2)(ii)(A).

*See* 34 C.F.R. § 690.63(a)(2).

For programs using standard terms with less than 30 weeks of instructional time, the Federal Pell Grant for a payment period, (*i.e.,* an academic term), for a student in a program using standard terms with less than 30 weeks of instructional time in two semesters or trimesters or in three quarters is calculated by:

- Determining his or her enrollment status for the term;
- Based upon that enrollment status, determining his or her annual award from the Payment Schedule for full-time students or the Disbursement Schedule for three-quarter-time, half-time, or less-than-half-time students;
- Multiplying his or her annual award by the following fraction as applicable:
  - In a program using semesters or trimesters:

*P.L28.04.19.2022*

EDU000020

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 8

$$\frac{\text{The number of weeks of instructional time offered in the program in the fall and spring semesters or trimesters}}{\text{The number of weeks in the program's academic year}}$$

    o   In a program using quarters:

$$\frac{\text{The number of weeks of instructional time offered in the program in the fall, winter, and spring quarters}}{\text{The number of weeks in the program's academic year}}$$

- Dividing the amount by two for programs using semesters or trimesters or three for programs using quarters; or dividing the student's annual award by the number of terms over which the institution chooses to distribute the student's annual award if an institution chooses to distribute all of the student's annual award section over more than two terms for programs using semesters or trimesters or more than three quarters for programs using quarters and the number of weeks of instructional time in the terms, including the additional term or terms, equals the weeks of instructional time in the program's academic year definition.

*See* 34 C.F.R §690.63(c).

Pursuant to HEA section 487A(b), 20 U.S.C. 1094a(b), Ashland is approved to participate in the "Pell For Students Who Are Incarcerated" experiment (also known as "Second Chance Pell") under the Experiment Sites Initiative (ESI). *See* 80 Fed. Reg. 45064-66 (August 3, 2015). While participating in this experiment, Ashland is exempt from certain statutory and regulatory provisions, including Section 401(b)(6) of the HEA and 34 C.F.R. § 668.32(c)(2)(ii).

During the review, Ashland staff informed the review team that each term/semester is defined as the total number of weeks of instructional time from the first day of class through the last day of class/exams. The review team also confirmed that the Second Chance Pell (SCP) students under the ESI at Ashland were considered to have the same academic program content as other Ashland students. However, for SCP students, the length of each semester is shorter than the semester for other Ashland students which results in an academic year that is less than 30 weeks. An interview with Ashland's financial aid personnel on September 13, 2021, confirmed that although Ashland's academic calendar indicates that a student has the option of taking a 12-week course/courses within a 16-week semester, Ashland staff confirmed that SCP students do not have the option of taking a 16-week course/courses within a semester. Consequently,

*P.L28.04.19.2022*

EDU000021

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 9

the 12-week course/courses within a semester is/are the only option for SCP students and therefore the academic year for SCP students is only 24 weeks of instructional time.

Because SCP students at Ashland are enrolled in academic programs with fall through spring semesters that provide less than 30 weeks of instructional time in an academic year, the institution was required to employ either Pell formula 2 or 3 for award packaging (described in the regulatory citations above).[1] For **students 1-32**, Ashland incorrectly used Pell formula 1 for award packaging, which resulted in Pell Grant overawards.

**Directives from PRR:**

Due to the systematic nature of this finding (100% error rate), Ashland was required to complete a file review of all SCP students from the 2019-20 and 2020-21 award years. To this regard, Ashland was mandated to provide student-level information, as specified in the PRR.

Ashland was also directed to review and revise its Pell Grant packaging policies and procedures, including those for the current award year (specifically, if it changes its SCP academic programs to be eligible for Pell formula 1). Ashland was instructed to submit the file review data along with a copy of its revised policies and procedures and any training offered to staff with its response to the PRR. Finally, Ashland was advised that it would be liable for any Pell Grant overawards as a result of this finding and payment instructions would be provided in the FPRD.

**Analysis of Liability Determination:**

In its response to the PRR (see Appendix C), Ashland stated that it did not concur with this finding; however, as instructed in the PRR, the institution completed the required file review for each award year. The Department reviewed and tested the file review data (see Appendices D1 and D2) in conjunction with the student sample of the PRR (see Appendix A). The Department's analysis revealed that Ashland did not use the correct number of weeks when it completed the file review. Specifically, the revised Pell Grant packaging was based on a 14-week semester/28-week academic year definition rather than the 12-week semester/24-week academic year definition, as instructed in the PRR. Therefore, the Department corrected this error by recalculating the Pell Grants under the 12-week semester/24-week academic year definition (see Appendices D3 and D4).

---

[1] To utilize Pell formula 1 the program must have at least 30 weeks of instructional time in fall through spring terms/in 2 semesters or 3 quarters. Please see Volume 3, Chapter 3 of the 2020-2021 FSA Handbook (available at: https://fsapartners.ed.gov/sites/default/files/2021-03/2021FSAHbkVol3Ch3.pdf) for additional details on Pell formulas.

*P.L28.04.19.2022*

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 10

Ashland's response to this finding asserts that the SCP students are enrolled in eligible academic programs that use 15-week semesters and a 30-week academic year; therefore, Ashland believes it is subject to packaging using Pell Formula 1. Ashland further claims that its response supports this argument based on the following: the academic program content is the same as the academic content provided for its traditional students; the program is offered in an accelerated format; SCP students only have this schedule option (accelerated format) for their academic programs; the institution's state licensing agency, the Ohio Department of Higher Education (ODHE) approved the programs for 30 weeks in an academic year; and SCP students have academic activities before and after the scheduled 12 weeks of each course in their program.

As detailed below, the Department maintains its original conclusion that Ashland incorrectly employed Pell Formula 1 when packaging and disbursing Pell Grants for its SCP students. During the review, the Department obtained multiple documents and interviewed Ashland staff to assess its compliance with administering the SCP initiative. The assessment included determining whether Ashland was using the correct formula when calculating Pell Grant awards. One of the first steps in this assessment was determining the number of weeks of instructional time in the programs offered to SCP students.

The number of weeks of instructional time determines the length of a term/semester and does not include periods of orientation, counseling, homework, vacation, or other activity not related to class preparation or examination. *See* Volume 3 of the 2019-2020 and 2020-2021 Federal Student Aid Handbook and 34 C.F.R. § 668.3(b). [2] If the number of weeks of instructional time in the institution's standard terms is less than 30 weeks, then an institution must use either Pell formula 2 or 3. Ashland staff confirmed in an email dated September 22, 2021, that SCP students may not take a 16-week course and explained that although "acceleration" (e.g. taking a 12-week course within a 16-week semester) is an option for traditional students that are not incarcerated, this accelerated format (12-week semester) is the only option for SCP students. In addition, the programs available to SCP students are offered using asynchronous coursework with published start and end dates for each week of instructional time.

During its analysis, the Department also found that the syllabus for each course specifies the "Course Schedule and Assignments" which is divided into homework, test readings, and assignments that must be completed each week. Each syllabus also identifies the start

---

[2] The 2021-2022 FSA Handbook (available at: https://fsapartners.ed.gov/knowledge-center/fsa-handbook/pdf/2021-2022) clarified this to state that instructional time does not include scheduled breaks, activities not included in the definition of "academic engagement," or periods of orientation and counseling. Additionally, this FSA Handbook further defined a week of instructional time for programs offered using asynchronous coursework as any period of seven consecutive days in which the school both makes coursework material available and expects enrolled students to perform educational activities demonstrating academic engagement during the week.

*P.L28.04.19.2022*

EDU000023

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 11

date and end date for each of the 12 weeks of instructional time. For example, the first week for the Summer 2021 semester starts on June 1st and ends on June 4th; the 12th week of the semester starts on August 16th and ends on August 20th. Thus, according to Ashland's syllabus, this 12-week semester starts on June 1st and ends on August 20th. Enclosure 1 contains copies of course syllabi obtained during the review. Likewise, the "Ashland University Correctional Education Instructor Best Practices Checklist" identifies the start and end dates of the applicable 12-week semester and is sectioned into 12 separate weeks; the start date of each week is also specified in each weekly section. Enclosure 2 contains copies of these checklists that were obtained during the review.

Although documentation in student files and staff interviews revealed that there was some academic engagement outside the 12-week semester, this occurred on a case-by-case basis to accommodate unexpected circumstances for individual students, including but not limited to inoperable tablets or technical difficulties with downloading course materials or uploading assignments. Consequently, these students did not have access to course materials for the entire 12-week semester; some had to start later in the 12-week semester or had periods of time when they were unable to access course material and had to catch up, other students opted to drop when the tablet/course materials became inoperable. While students in these circumstances may have needed additional time outside of the scheduled 12-week semester to accommodate their situation, there was no evidence of regular and substantive interaction being scheduled or available for all SCP students outside the 12-week semesters.

Further evidence of the 12-week semesters/24-week academic year of instructional time was found during the Department's review of Ashland's Return of Title IV Funds (R2T4) calculations for SCP students that withdrew from their program. Step 2 of the Department's R2T4 worksheet for credit-hour programs requires institutions to enter the start date and scheduled end date of the semester/payment period. For SCP students that withdrew from their program, Ashland used start dates and scheduled end dates that it had published in various documents for the applicable 12-week semester from which the student withdrew. For example, the start date and scheduled end date that Ashland used in Step 2 of the R2T4 worksheet for student 1 was 9/21/2020 and 12/11/2020, the published 12-week time span for this semester (See Enclosure 3).

Thus, the programs offered to SCP students are structured using standard terms with less than 30 weeks of instructional time. As previously stated, either Formula 2 or 3 must be used when awarding Pell Grant funds to students enrolled in programs that use standard terms with less than 30 weeks of instructional time. Consequently, Formula 1 cannot be used when awarding Pell Grant funds to SCP students. Ashland is therefore liable for the Pell Grant overpayments discussed in the PRR.

*P.L28.04.19.2022*

EDU000024

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 12

The liabilities[3] from this finding are addressed below:

| | |
|---|---|
| Federal Pell Grant – Principal - 2019-20 AY | **$2,746,983.60** |
| Federal Pell Grant – COF[4] - 2019-20 AY | **$   93,171.72** |
| | |
| Federal Pell Grant – Principal - 2020-21 AY | **$3,268,881.39** |
| Federal Pell Grant – COF - 2020-21 AY | **$   22,753.75** |
| | |
| **TOTAL:** | **$6,131,790.46** |

Detailed information about this liability determination can be found in Appendices E1 and E2.

Payment instructions for these liabilities are discussed in Part E of this FPRD.

Finally, since the errors in the Pell packaging described in this finding were the result of Ashland employing the incorrect Pell Formula and were in no way the fault of the effected students, the Department highly encourages Ashland to take full fiscal responsibility for this oversight as opposed to placing the monetary burden to the students in which it serves. Furthermore, Ashland is mandated to complete all requirements described in the required actions and additional instructions in this FPRD, including adjustments to student-level disbursement data in the Common Origination and Disbursement (COD) system, so the Pell Lifetime Eligibility Used (LEU) data is accurate and said students may have an opportunity to utilize these Pell funds for future educational expenses (see Part E. Payment Instructions for additional information on this process).

---

[3] While Pell Formula 3 may be used, since Ashland utilizes standard terms, Formula 2 is more applicable. Further, Ashland noted that it may adjust its SCP academic program schedule, which may lend itself to Formula 2 rather than Formula 3.

[4] Cost of Funds (COF) is the cost the Department incurs as a result of ineligible disbursements or late or unmade returns. The federal government incurs a cost when it makes funds available for an institution because those funds are borrowed from the U.S. Treasury and the Department is charged for those funds. The Department uses the Current Value of Funds Rate (CVFR) to calculate the COF for ineligible Title IV disbursements. The Department (as well as the federal government) uses the CVFR to calculate charges on overdue federal government receivables. The CVFR can be found at the U.S. Treasury website at the following link: https://fiscal.treasury.gov/reports-statements/cvfr/.The disbursement dates utilized in the COF calculations are the end of the applicable award years (June 30, 2020 and June 30, 2021, respectively). The return paid date utilized in the COF calculations is the date of the PRR response (March 11, 2022).

*P.L28.04.19.2022*

EDU000025

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 13

**Finding 2: Return of Title IV (R2T4) Calculation Errors**

**Summary of Noncompliance:**

When a recipient of Title IV grant or loan assistance withdraws from an institution during a payment period or period of enrollment in which the recipient began attendance, the institution must determine the amount of Title IV grant or loan assistance that the student earned as of the student's withdrawal date. 34 C.F.R. § 668.22(a)(1).

The amount of Title IV grant or loan assistance that is earned by the student is calculated by determining the percentage of Title IV grant or loan assistance that has been earned by the student. The percentage of Title IV grant or loan assistance that has been earned by the student is equal to the percentage of the payment period or period of enrollment that the student completed as of the student's withdrawal date. 34 C.F.R. § 668.22(e)(1)(i), (2).

The PRR described two types of errors detected during the program review. Firstly, for **student 1**, Ashland utilized the incorrect amount of Pell Grant in Step 1 of the R2T4 calculation (the institution used the full time Pell amount when the student was only eligible for the three-quarter time Pell amount). The liability for this error has been established in **Finding 6: Attendance/Enrollment Status Not Verified** (below).

Secondly and more significantly, for **students 1, 2, 8, 10, 19, 20, 22, 27,** and **30**, in accordance with **Finding 1: Improper Pell Packaging**, any student that was subject to the R2T4 calculation during the 2019-20 and 2020-21 award years had an inaccurate calculation, as the incorrect Pell formula (Pell formula 1 rather than Pell formulas 2 or 3) was employed at the time of packaging. Therefore, as the Pell amount utilized in the R2T4 calculation was incorrect, the result of the entire R2T4 calculation was impacted.

**Directives from PRR:**

Due to the systematic nature of this finding (100% error rate), Ashland was directed to complete a full file review for all SCP students subject to an R2T4 calculation from the 2019-20 and 2020-21 award years. To this regard, Ashland was mandated to provide student-level information, as specified in the PRR.

Ashland was also directed to review its policies and procedures to ensure they are sufficient to prevent a recurrence of this finding and was instructed to submit the file review along with a copy of its revised policies and procedures, and any trainings offered to staff with its response to the PRR.

*P.L28.04.19.2022*

EDU000026

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 14

**Analysis of Final Determination:**

In its response to the PRR (see Appendix C), Ashland stated that it did not concur with this finding; however, as instructed in the PRR, the institution revised its enrollment reporting policies and procedures, and provided documentation to this regard, which the Department considers sufficient. Also, as mandated by the PRR, the institution completed the full file review (see Appendices F1 and F2); however, as previously stated, the Department's analysis revealed that Ashland did not use the correct number of weeks when it completed the file review (also see **Finding 1: Improper Pell Packaging**). Specifically, the revised R2T4 calculations were based on a 14-week semester/28-week academic year definition rather than the 12-week semester/24 week academic year definition, as instructed in the PRR. As a result, the Department corrected this error by revising the R2T4 calculation results under the 12-week semester/24-week academic year definition (see Appendices F3 and F4).

The examination of the (corrected) file review data showed that the amended R2T4 calculations resulted in over returns of Federal Pell Grant to the Department; therefore, there are no liabilities for this finding. Nevertheless, Ashland must adhere to its revised R2T4 policies to make certain all R2T4 calculations are correct in the future. Moreover, Ashland's auditor must attest that the corrective actions have been comprehensively followed in its next annual compliance audit.

**Finding 3: Inaccurate National Student Loan Data System (NSLDS) Enrollment Reporting**

**Summary of Noncompliance:**

An institution shall, upon receipt of an Enrollment Reporting roster file from the Secretary, complete and return that report within 30 days of receipt. Unless the institution expects to submit its next enrollment report to the Secretary within the next 60 days, the institution must notify the Secretary or the lender within 30 days if: the institution discovers that a federal loan has been made to or on behalf of a student who enrolled at that school, but who has ceased to be enrolled on at least a half-time basis; the institution discovers that a federal loan has been made to or on behalf of a student who has been accepted for enrollment at that school, but who failed to enroll on at least a halftime basis for the period for which the loan was intended; or the institution discovers that a student who is enrolled has changed his or her permanent address. *See* 34 C.F.R. § 685.309(b).

*P.L28.04.19.2022*

EDU000027

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 15

The Department detected reporting errors (inaccurate enrollment status, inaccurate effective date, and/or untimely reporting) to the National Student Loan Data System (NSLDS®) for **all the students in the program review sample (1-32).**[5]

**Directives from PRR:**

Due to the systematic nature of this finding (100% error rate), Ashland was required to complete a full file review of all NSLDS enrollment reporting errors for the 2019-20 and 2020-21 award years. To this regard, Ashland was mandated to provide student-level information, as specified in the PRR.

Ashland was also directed to review its policies and procedures to ensure they are sufficient to prevent a recurrence of this finding and was instructed to submit the file review along with a copy of its revised policies and procedures, and any trainings offered to staff with its response to the PRR.

**Analysis of Final Determination:**

In its response to the PRR (see Appendix C), Ashland stated that it did not concur with this finding. As instructed in the PRR, the institution completed the full file review; however, it has not made the applicable updates/corrections to NSLDS. The Department still requires Ashland to complete all required update/corrections to NSLDS as instructed in the PRR and identified in the full file review. Ashland must take this action and provide documentation[6] to corroborate completion (e.g., enrollment reporting screens from NSLDS) to Mark Kreutzer at Mark.Kreutzer@ed.gov **within 45 days of the receipt of this FPRD.**

The institution also revised its enrollment reporting policies and procedures and provided documentation to this regard. The revised policies and procedures were considered sufficient.

Ashland is again reminded of the importance of accurate and timely enrollment reporting to NSLDS. There are no liabilities assessed as a result of this finding.

---

[5] Student-level information concerning this finding were provided in Enclosure 3: NSLDS Enrollment Reporting Finding Summary to the PRR.
[6] As this documentation will contain student-level Personally Identifiable Information (PII), the data must be protected in accordance with Departmental standards, as addressed in the FPRD Cover Letter.

*P.L28.04.19.2022*

EDU000028

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 16

### Finding 4: Improper Pell for Crossover Payment Periods

**Summary of Noncompliance:**

If a student enrolls in a payment period that is scheduled to occur in two award years, the entire payment period must be considered to occur within one award year; the institution must determine for each Federal Pell Grant recipient the award year in which the payment period will be placed; if an institution places the payment period in the first award year, it must pay a student with funds from the first award year; and if an institution places the payment period in the second award year, it must pay a student with funds from the second award year. An institution may not make a payment which will result in the student receiving more than one and one-half of his or her Scheduled Federal Pell Grant for an award year. 34 C.F.R. § 690.64(a), (b).

During the review, Ashland staff explained to the review team that rather than identifying the summer term as a header or trailer for its Second Chance Pell student population, the institution's policy is to award Pell funds from the award year that is most beneficial to the student. However, the review team found five instances (for **students 18, 25, 26, 27, and 29**) during the 2020-21 award year wherein Ashland violated this awarding policy.

Specifically for these five students, during the 2020-21 award year, Pell was disbursed for the summer 2021 term on May 22, 2021, and was then reversed on July 22, 2021. On that same date (July 22, 2021), 2021-22 award year Pell was disbursed for these students (which was a greater amount due to an increase in the maximum Pell amount for the 2021-22 award year, in comparison to the 2020-21 award year). Nonetheless, on July 28, 2021 Ashland reversed the 2021-22 award year Pell disbursement and subsequently re-drew the originally disbursed 2020-21 award year Pell funds for these students. This action violates Ashland's summer term Pell awarding policy of selecting the most beneficial award year for Pell funding for Second Chance Pell students.

Moreover, in communications from the Department in summer 2021, Ashland was notified that its 2021-22 award year Second Chance Pell experiential program allocation were being reduced due to exceeding the 2020-21 award year allocation. Ashland was advised that the Department would permit final 2020-21 award year disbursements for the Second Chance Pell experiential program (which resulted in an increase of $2,855,500.00 in 2020-21 award year allocations) but was advised that it would need to provide assurances that it will not disburse Pell funds to students under the experiment in excess of the allocation granted to Ashland for future award years (such as the 2021-22 award year).

As evident when examining the timeline of correspondence from the Department concerning an increase in final 2020-21 award year allocations for the Second Chance Pell experiment and reductions in future award year allocations compared to the dates

*P.L28.04.19.2022*

EDU000029

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 17

wherein changes in summer 2021 term Pell disbursements where reversed from 2020-21 award year to 2021-22 award year and *back to* 2020-21 award year Pell disbursements for the five students described above, it was concluded that Ashland violated its previously described summer Pell Grant awarding policies so it retained Pell disbursements that exceeded the experimental program allocations/circumvented future award year allocation restrictions established by the Department.

As indicated in the PRR, the Department considers this practice a violation of Ashland's responsibility as a fiduciary of Title IV funds.

**Directives from PRR:**

In response to the PRR, Ashland was required to avow that is has closely reviewed this finding, taken any applicable corrective actions, and fully understands the seriousness of this violation, including that future recurrences of this nature could result in fine actions and/or suspension or termination from this and future experimental programs as well as all Title IV, HEA programs.

While the PRR explained that no liabilities would be assessed as a result of Ashland's violation of its internal summer Pell awarding policies and procedures for the five Second Chance Pell program students discussed above (nor other Pell awards for this student population), Ashland must adhere to its internal Pell packaging policies in the future, so this noncompliance does not recur.

**Analysis of Final Determination:**

In its response to the PRR (see Appendix C) Ashland stated that it did not concur with this finding. The institution stated that it never drew Second Chance Pell Grant allocations in excess of its authorization through G5. Nonetheless, in accordance with the instructions in the PRR, Ashland's President does avow that on behalf of the institution, the finding has been closely reviewed, applicable corrective actions have been taken, and that Ashland fully understands the seriousness of this violation, including that future recurrences of this nature could result in fine actions and/or suspension or termination from this and future experimental programs as well as all Title IV, HEA programs.

The Department determined that, although Ashland may not have exceeded the allocations through G5 draws, the funds are considered disbursed once posted to the student account ledger and entered into the COD system

To further summarize and illustrate the seriousness of this matter, below is a brief timeline of its correspondence with the Department regarding this issue:

*P.L28.04.19.2022*

EDU000030

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 18

- On June 9, 2021, the Department's ESI Team notified Ashland that according to the latest template uploaded by the institution, the institution has disbursed $16,296,851.94 in Pell funds during the 2020-21 award year; however, its allocation for 2020-21 was only $14,000,000.00. According to COD, the institution had reported $2,296,851.94 in Pell disbursements that were in excess of its allocation. The Department instructed Ashland to check its records and provide an explanation as to why the institution exceeded its allocation.
- On June 14, 2021, Ashland responded to the Department's request for an explanation. The response indicated that even though the funds were marked as disbursed in COD, the institution had only drawn down funding form G5 within the allocated amount. In addition, the letter asks the Department to increase its 2020-21 allocation by $2,855,500.00 to a total of $16,855,500.00.
- On July 7, 2021, the Department responded to Ashland's request for additional funding for 2020-21 and reminded the institution that it must not disburse Pell funds in excess of the amount allocated to the institution each award year. Because COD indicates that Ashland disbursed Pell in excess of its allocation, the Department requested that it provide an explanation of how this error occurred as well as a plan that provides assurances the institution will not disburse Pell funds to students under the experiment in excess of the allocation granted to Ashland in the future.
- On July 14, 2021, the institution provided a response to the Department again indicating that although the funds are marked as disbursed, Ashland had only drawn down funding from G5 within its allocated amount. The response also indicated that *"summer is a challenging crossover payment period and that if no additional funds are awarded for 20-21, disbursements for eligible students will be repackaged and allocated to the 21-22 award year for the students that best benefit from a summer award as a header in the 21-22 award year instead of as a trailer in the 20-21 award year under the allowable crossover period regulations."*
- On July 27, 2021, the Department acknowledged Ashland's response and notified the institution that it has granted its request to increase the 2020-21 allocation by $2,855,500.00. The new allocation was increased to $16,855,500.00 for the 2020-21 award year. The Department reminded Ashland that it requested a plan that provides assurances that it will not disburse Pell funds to students under the experiment in excess of the allocation granted to the institution for future award years; however, Ashland's response did not include a plan. Finally, the Department indicated that Ashland's response was insufficient, and it would be in contact with additional information regarding the institution's 2021-22 award year Second Chace Pell Grant allocation.
- On July 30, 2021, the Department issued Ashland its 2021-22 award year Second Chace Pell Grant allocation letter. The letter provided a cap in the amount of $11,144,500.00 with the following statement included in the letter: *"Because your institution has exceeded the amount of its allocation for the 2020-2021 award year, the Department has reduced the amount of your 2021-2022 allocation by the amount exceeded during 2020-2021."*

*P.L28.04.19.2022*

EDU000031

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 19

To sum, the Department considers a disbursement of Title IV funds to be made once it is posted into the student's account ledger. See 34 C.F.R. § 668.164(a). In addition, if the disbursement is recorded, but the funds are not actually delivered directly to the students, the Department incurs interest costs associated with the Treasury borrowing for the days between the COD disbursement record and the delivery to the student's account. Therefore, it is concluded that Ashland did exceed its 2020-21 award year allocation of Second Change Pell Experimental Program funds, even though the funds were not drawn through the G5 system.

In order to fully resolve this finding, as mandated by the July 7, 2021 correspondence from the Department's ESI team, Ashland is required to develop a plan that provides assurances that it will not disburse Pell funds to students under the experiment in excess of the allocation granted to Ashland in the future. This plan must be provided to the ESI team as well as Mark Kreutzer at Mark.Kreutzer@ed.gov within 45 days of the receipt of this FPRD.

While no liabilities are assessed for this finding, Ashland is again reminded of the requirement to adhere to its internal Pell packaging policies and overall fiduciary responsibilities concerning Title IV funds in the future, so this noncompliance does not recur.

## Finding 6: Attendance/Enrollment Status Not Verified

**Summary of Noncompliance:**

If a student does not begin attendance in a payment period, the institution must return all Title IV program funds that were credited to the student's account at the institution or disbursed directly to the student for that payment period for Federal Perkins Loan, FSEOG, TEACH Grant, and Federal Pell Grant program funds. For Direct Loan funds, the institution must return all funds that were credited to the student's account at the institution for that payment period and the amount of payments made directly by or on behalf of the student to the institution for that payment period up to the total amount of the loan funds disbursed. 34 C.F.R. § 668.21(a)(1).

The institution must return those funds for which it is responsible as soon as possible, but no later than 30 days after the date that the institution becomes aware that the student will not or has not begun attendance. 34 C.F.R. § 668.21(b).

The Secretary considers that a student has not begun attendance in a payment period or period of enrollment if the institution is unable to document the student's attendance at any class during the payment period or period of enrollment. 34 C.F.R. § 668.21(c).

*P.L28.04.19.2022*

EDU000032

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 20

The Department cited two instances of noncompliance (**student 1** and **student 10**) in the PRR (see Appendix B) where Ashland failed to return Pell funds for students whose enrollment status decreased because they failed to begin attendance in one or more classes.

**Directives from PRR:**

Ashland was advised that it may submit any documentation concerning the corroboration of attendance for the two students cited in the PRR. Should this documentation be insufficient, Ashland would be liable for the Pell Grant overpayment for **student 1** and **student 10**.

Furthermore, Ashland was required to review and, if necessary, revise its Pell Grant packaging policies and procedures to ensure that funds are only disbursed after the institution corroborates attendance in all courses and this noncompliance is resolved.

**Analysis of Liability Determination:**

In its response to the PRR (see Appendix C), Ashland stated that it concurred with this finding. As instructed in the PRR, Ashland provided revised Pell Grant packaging policy and procedures, to ensure that funds are only disbursed after corroboration of attendance in all enrolled courses. These policy and procedure revisions were reviewed by the Department and confirmed to be sufficient.

The following liabilities are assessed for this finding:

| | |
|---|---|
| Federal Pell Grant – Principal | **$1,152.00** |
| Federal Pell Grant– COF | **$    16.16** |
| **TOTAL** | **$1,168.16** |

Payment instructions for these liabilities are discussed in Part E of this FPRD. Liabilities of **$62.45** (principal and COF) were established for **student #10** in **Finding 1 Improper Pell Packaging**; therefore, these amounts are included in the students' liabilities for this finding. However, these duplicated amounts have been removed in the Summary of Liabilities table in Part D of this FPRD.

Detailed information about this liability determination can be found in Appendix G1 and G2.

Payment instructions for these liabilities are discussed in Part E of this FPRD.

*P.L28.04.19.2022*

EDU000033

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 21

### Finding 7: Federal Pell Grant Overpayment

**Summary of Noncompliance:**

The amount of a student's Pell Grant for an academic year is based upon the payment and disbursement schedules published by the Secretary for each award year. 34 C.F.R. § 690.62.

The Department cited two instances of noncompliance (**student 13** and **student 23**) in the PRR (see Appendix B). For **student 23**, the Department confirmed that Ashland had already returned the amount of the overpayment on June 10, 2021.

**Directives from PRR:**

Ashland was advised that it may submit any documentation concerning the Pell Grant overpayments for the two students cited in the PRR. Should this documentation be insufficient, Ashland would be liable for the Pell Grant overpayment for **student 13** and the associated COF as well as the COF associated with the overpayment it had already returned on behalf of **student 23**. Furthermore, Ashland was required to review and, if necessary, revise its Pell Grant packaging policies and procedures to ensure this noncompliance is resolved.

**Analysis of Liability Determination:**

In its response to the PRR (see Appendix C), Ashland stated that it concurred with this finding. As instructed in the PRR, Ashland asserts that it conducted a review of its Pell Grant packaging policies to ensure there is no future noncompliance.

The following liabilities are assessed for this finding:

| | |
|---|---|
| Federal Pell Grant – Principal | $774.00 |
| Federal Pell Grant– COF | $ 27.99 |
| **TOTAL** | **$801.99** |

Detailed information about this liability determination can be found in Appendices H1, H2, and H3.

Payment instructions for these liabilities are discussed in Part E of this FPRD. Liabilities of **$640.41** (principal and COF) were established for **student #13** in **Finding 1 Improper Pell Packaging**; therefore, these amounts are included in the students' liabilities for this finding. However, these duplicated amounts have been removed in the Summary of Liabilities table in Part D of this FPRD.

*P.L28.04.19.2022*

EDU000034

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 22

### D.  Summary of Liabilities

The total amount calculated as liabilities from the findings in the program review determination is as follows. The liability amount in the first chart below reflects duplicated liabilities because some students are included in more than one finding. This information is provided so that the institution understands the liabilities associated with each finding. Duplicate liabilities have been removed in the second chart. The payment instructions in Part E have been adjusted to reflect the unduplicated liabilities.

| Liabilities – Duplicates Included | Pell - Principal | Pell – COF | Total |
|---|---|---|---|
| Finding 1 | $6,015,864.99 | $115,925.47 | $6,131,790.46 |
| Finding 6 | $1,152.00 | $16.16 | $1,168.16 |
| Finding 7 | $774.00 | $27.99 | $801.99 |
| TOTAL | $6,017,790.99 | $115,969.62 | $6,133,760.61 |

The above contains duplicate liabilities. The table below reflects adjustments made to remove all duplicate liabilities as described in the final determinations for **Finding 1: Improper Pell Packaging, Finding 6: Attendance/Enrollment Status Not Verified,** and **Finding 7: Federal Pell Grant Overpayment.** Appendices E1, E2, G2 and H2 contain a detailed accounting of the determination of unduplicated liability for each finding.

| Liabilities – Duplicates Removed | Pell - Principal | Pell – COF | Total |
|---|---|---|---|
| Finding 1 | $6,015,864.99 | $115,925.47 | $6,131,790.46 |
| Finding 6 | $1,091.60 | $14.11 | $1,105.71 |
| Finding 7 | $154.60 | $6.98 | $161.58 |
| TOTAL | $6,017,111.19 | $115,946.56 | $6,133,057.75 |
| Payable to: | | | |
| Department via FEDWIRE (rounded, where applicable) | $6,017,111.19 | $115,947.00 | **$6,133,058.19** |

*P.L28.04.19.2022*

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 23

## E. Payment Instructions

Ashland owes **$6,133,058.19** to the Department as a result of the liabilities established in this program review. This liability must be paid to the Department's Office of Finance and Operations (OFO) Accounts Receivable and Bank Management Division via an electronic transfer of funds through the Treasury Financial Communications System, which is known as FEDWIRE. The Department is unable to accept any other method of payment of these liabilities. Ashland must make this transfer within **45 days of the date of this letter**. The FEDWIRE payment must be made via the Federal Reserve Bank in New York. If Ashland's bank does not maintain an account at the Federal Reserve Bank, it must use the services of a correspondent bank when making the payments through FEDWIRE. Instructions for completing the electronic fund transfer message format are included on the enclosed FEDWIRE form.

Refunds of cash made via G5 will not be accepted as payment of this liability. Instead, prior to submitting any payments, the institution must first make any required disbursement adjustments in the COD system as required by the applicable findings and Instructions by Title IV, HEA Program (below). <u>Upon receipt of payment the Department will apply the funds to the appropriate accounts and/or G5 award</u> (if applicable). If any discrepancies are identified when completing disbursement adjustments, please contact the reviewer.

### <u>Terms of Payment for Liabilities Paid Directly to the Department</u>

As a result of this final determination, the Department has created a receivable for this liability and payment must be received by the Department within **45 days of the date of this letter**. If payment is not received within the 45-day period, interest will accrue in monthly increments from the date of this determination, on the amounts owed to the Department, at the current value of funds rate in effect as established by the Treasury Department, until the date of receipt of the payment. In addition, if this debt is not paid within 90 days, penalties of 6% per year will accrue from the date of this notice until the receipt of payment. If an appeal is not filed or payment is not made by the end of the 45-day appeal period, the Department will refer the debt to Centralized Receivables Service (CRS) for servicing and collection. Continued failure to pay the liability after notification from CRS may result in costs exceeding 32% on the amount due. If the liability is appealed, interest will continue to accrue while the appeal is pending.

If there are any questions regarding interest accruals or payment credits, contact the Department's Accounts Receivables & Bank Management Division at (202) 245-8080 and ask to speak to Ashland's account representative.

If the institution has any questions regarding payment of this debt or wishes to request a payment plan within the 45-day appeal period, those inquiries should be sent by email to

*P.L28.04.19.2022*

EDU000036

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 24

OCFOAccountsReceivable@ed.gov. Once the debt is referred to CRS, Ashland will receive notification and any further inquiries should be directed to that entity at 855-549-2683. Interest charges and other conditions may apply to any payment plan.

If within 45 days of the date of this letter, Ashland has neither made payment in accordance with these instructions nor entered into an arrangement to repay the liability under terms satisfactory to the Department, the Department intends to collect the amount due and payable by administrative offset against payments due Ashland from the Federal Government. **Ashland may object to the collection by offset only by challenging the existence or amount of the debt.** To challenge the debt, Ashland must **timely appeal** this determination under the procedures described in the "Appeal Procedures" section of the cover letter. The Department will use those procedures to consider any objection to offset. **No separate appeal opportunity will be provided**. If a timely appeal is filed, the Department will defer offset until completion of the appeal, unless the Department determines that offset is necessary as provided at 34 C.F.R. § 30.28. This debt may also be referred to the Department of the Treasury for further action as authorized by the Debt Collection Improvement Act of 1996.

### Instructions by Title IV Program

**Pell Grant Liabilities – Closed Award Year:**

Findings: 1, 6, and 7
Appendices: E1, E2, G2, H2, and H3

Ashland must pay the following Title IV program liabilities to the Department:

| Pell Grant Liabilities – Closed Award Year | | | | |
|---|---|---|---|---|
| **Finding** | **Award Year (AY)** | **Amount (Principal)** | **Amount (COF)** | **Amount (Total)** |
| Finding 1 | **2019-20** | $2,746,983.60 | $93,171.72 | $2,840,155.32 |
| Finding 6 | **2019-20** | $241.60 | $8.19 | $249.79 |
| Finding 7 | **2019-20** | $154.60 | $5.24 | $159.84 |
| | **2019-20 AY Total** | $2,747,379.80 | $93,185.15 | $2,840,564.95 |
| Finding 1 | **2020-21** | $3,268,881.39 | $22,753.75 | $3,291,635.14 |
| Finding 6 | **2020-21** | $850.00 | $5.92 | $855.92 |
| Finding 7 | **2020-21** | $0.00 | $1.74 | $1.74 |
| | **2020-21 AY Total** | $3,269,731.39 | $22,761.41 | $3,292,492.80 |
| | **TOTAL (rounded, where applicable)** | $6,017,111.19 | $115,947.00 | **$6,133,058.19** |

*P.L28.04.19.2022*

EDU000037

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 25

Adjustments in the COD system **must be made within 45 days of the date of this letter.** The disbursement record for each student identified in the appendices listed above must be adjusted in COD based on the recalculated amount identified in these appendices. A copy of the adjustment to each student's COD record must be sent to Mark Kreutzer at Mark.Kreutzer@ed.gov **within 45 days of the date of this letter.** Ashland must also include a spreadsheet that summarizes the disbursement adjustments by program and award year completed in COD (see COD Adjustment Worksheet enclosure).

Adjustments in COD must be completed **prior to remitting payment to the Department.** Payment cannot be accepted via G5. Once the Department receives payment, the Department will apply the principal payment to the applicable G5 award to offset the balance created in COD by the downward adjustments to the disbursements. The COF will be applied to the general program account.

*P.L28.04.19.2022*

EDU000038

Ashland University
OPE ID: 00301200
PRCN: 2021-4-05-30426

Page 26

## F. Appendices and Enclosures

The following appendices contain PII and have been uploaded in the COD Document Center found at the COD web site: https//cod.ed.gov (documents containing PII may be uploaded and submitted securely to this site):

- Appendix A: Student Sample to the Program Review
- Appendix D1: File Review Spreadsheet (Original) – Finding 1 (2019-20)
- Appendix D2: File Review Spreadsheet (Original) – Finding 1 (2020-21)
- Appendix D3: File Review Spreadsheet (Corrected) – Finding 1 (2019-20)
- Appendix D4: File Review Spreadsheet (Corrected) – Finding 1 (2020-21)
- Appendix E1: Pell Cost of Funds – Finding 1 (2019-20)
- Appendix E2: Pell Cost of Funds – Finding 1 (2020-21)
- Appendix F1: File Review Spreadsheet – Finding 2 (2019-20)
- Appendix F2: File Review Spreadsheet – Finding 2 (2020-21)
- Appendix F3: File Review Spreadsheet (Corrected) – Finding 2 (2019-20)
- Appendix F4: File Review Spreadsheet (Corrected) – Finding 2 (2020-21)

The following appendices are included with this report:

- Appendix B: Program Review Report (PRR), dated January 3, 2022
- Appendix C: Response to PRR, dated March 11, 2022
- Appendix G2: Pell Cost of Funds – Finding 6
- Appendix G2: Pell Cost of Funds – Finding 6
- Appendix H1: Pell Cost of Funds – Finding 7
- Appendix H2: Pell Cost of Funds – Finding 7 (Duplicate Removed)
- Appendix H3: Pell Cost of Funds – Finding 7 (Interest Only)

The following enclosures are included with this report:

- Enclosure 1: Course Syllabi Examples
- Enclosure 2: Instructor Checklist Examples
- Enclosure 3: Documents for Student 1
- FEDWIRE Form
- COD Adjustment Worksheet
- Protection of Personally Identifiable Information

*P.L28.04.19.2022*

EDU000039

Appendices Not Included

EDU000040