GOVERNMENT
EXHIBIT

W

**UNITED STATES DEPARTMENT OF EDUCATION**
**OFFICE OF HEARINGS AND APPEALS**

| | | |
|---|---|---|
| *In the Matter of* | ) | **Docket No. 22-58-SP** |
| | ) | |
| **Ashland University,** | ) | **Federal Student Aid** |
| | ) | **Proceeding** |
| **Respondent.** | ) | |
| | ) | **PRCN: 2021-4-05-30426** |

---

**RESPONDENT ASHLAND UNIVERSITY'S BRIEF IN SUPPORT OF APPEAL**

---

**INTRODUCTION**

Respondent Ashland University ("Ashland") submits this Brief in Support of its Appeal, pursuant to 34 C.F.R. Part 668, Subpart H and the Order Governing Proceeding Dated November 21, 2022.  Ashland incorporates by reference its initial Request for Review filed October 24, 2022.

Ashland is licensed by the Ohio Department of Higher Education ("ODHE"), fully accredited by the Higher Learning Commission, and is proudly the nation's longest serving provider of corrections education, dedicated to this mission since 1964.[1] There are approximately 6,300 students pursuing undergraduate degrees in over 70 academic programs at Ashland.[2] Alongside "traditional students" in those academic programs, there are approximately 2,200 students in the "Pell for Students Who Are Incarcerated" experiment ("Second Chance Pell" or

---

[1] Respondent's Exhibit 1 – Carlos Campo Declaration, at R1, p. 2, ¶5; *see also* Attachment A - ODHE Certificate of Authorization, at R1, p. 4.   Please note, Respondent's Exhibits 1-6 are declarations which were referenced in and attached to Respondent's Response to the PRR (Respondent's Exhibit 7) and were submitted to FSA containing the various attachments referenced therein. In an effort reduce duplicative and unnecessary documents in the record, Respondent has only included the corresponding attachments which Respondent is citing to in this Brief. However, should the Chief Administrative Law Judge determine all attachments to each declaration should part of the record, Respondent shall supplement those Exhibits accordingly.

[2] Respondent's academic programs are available online. *See* https://www.ashland.edu/academic-programs (last viewed 01/18/2023).  For the  number of enrolled full-time students as of Fall 2021, *see* https://www.usnews.com/best-colleges/ashland-university-3012#:~:text=Ashland%20University%20has%20a%20total,of%20students%20live%20off%20campus (last viewed 01/18/2023).

EDU000918

"SCP") under the Experimental Site Initiative ("ESI") pursuing degrees in five (5) areas of study.[3] Approximately 1,008 SCP students have graduated from Ashland with a grade point average of (GPA) 3.00 or higher, and four (4) SCP students have graduated as valedictorians in their class, outperforming their traditional classmates.[4]

On January 3, 2022, Ashland received a Program Review Report ("PRR") issued by Federal Student Aid ("FSA"), an Office of the United States Department of Education ("Department"), in connection to a program review of award years 2019-2020 and 2020-2021, wherein FSA mistakenly alleged liabilities against Ashland for allocation of financial aid to SCP students. Without addressing in full Ashland's Response to the PRR on March 11, 2022, FSA issued a Final Program Review Determination ("FPRD") on September 16, 2022, based upon the same misguided application of the statutes, regulations, and guidance, resulting in liabilities against Ashland in excess of six million dollars.

The findings in the PRR and the subsequent FPRD at issue in this appeal are based on the same underlying error by FSA with respect to the SCP students at Ashland and the respective academic programs in which they are enrolled.   FSA has arbitrarily concluded that Ashland erred in applying Federal Pell Grant "Formula 1" to calculate financial aid awards to SCP students by unilaterally determining there is some "other" eligible academic program in which SCP students are enrolled.  This conclusion is in error as all Ashland SCP students are enrolled in the *same* academic program as "traditional" Ashland students, all of which provide more than thirty (30) weeks of instruction with the minimum semester of fifteen (15) weeks, and FSA requires Ashland to apply the same financial aid formula for all students in the same program.[5]

---

[3] Respondent's Exhibit 2 – Todd Marshall Declaration, at R2, p. 4, ¶16.
[4] Respondent's Exhibit 3 – Amiel Jarstfer Declaration, at R3, p. 4, ¶17.
[5] Respondent's Exhibit 4 - Stephen Howell Declaration, at R4, p. 3, ¶10, and Attachment A - FSA Handbook at R4, pp. 7-9.

EDU000919

Moreover, while the courses within the respective academic programs are delivered to SCP students in a different modality than for traditional students by virtue of their incarceration, SCP students nevertheless have fifteen (15) weeks of instruction, despite FSA applying, *ex post facto,* a regulatory standard which did not exist during the review periods in question. [6] FSA applied the definition of "academic engagement" as set out in 34 C.F.R. §600.2 (2021) which did not exist in the regulations until July 2021, after the last award year subject to FSA's review.[7] Nevertheless, Ashland maintains that even applying the inapplicable standard, SCP students received fifteen (15) weeks of engaged academic instruction.

As such, pursuant to 34 C.F.R. §668.113(c)(1)(2021), Ashland seeks review of the liabilities assessed with respect to Findings 1 and 2 of the FPRD as Ashland appropriately packaged and disbursed Pell awards in accordance with the Department's regulations and guidance. FSA has failed to establish in either the PRR or the FPRD how Ashland's application of the underlying regulations concerning the calculation of Federal Pell Grant ("Pell") awards and the Department's guidance were in any way incorrect. Instead, without explanation or authority, FSA has proffered its own arbitrary and capricious conclusions which, in effect, establish a fictitious "program" at Ashland which does not exist. Additionally, FSA has failed to address the stark inconsistencies between FSA's misguided Findings in the FPRD and the applicable statutes at issue or FSA's own guidance and factual conclusions during the program review. Ashland submits this Brief in Support of Appeal with respect to the erroneous legal conclusions and

---

[6] *See* n.2 of the FPRD. Though FSA has issued new guidance in the 2021-2022 FSA Handbook, this new guidance cited by FSA in the FPRD was "clarified" following the program review years at issue herein. For the award years subject to review, "academic engagement" was not a defined term in the regulations, nevertheless, FSA has applied this term *ex post facto* to Ashland.

[7] The Department published the final rule 85 FR 54742, amending 34 C.F.R §600.2. in September 2020, to take effect July 1, 2021, after the last award year subject to the program review by FSA herein.

EDU000920

positions taken by FSA in the FPRD and, accordingly, seeks reversal of the corresponding liabilities assessed in Findings 1 and 2.

## FINDINGS AT ISSUE

I.  FSA erred in establishing liability against Ashland in Findings 1 and 2 of the FPRD by erroneously concluding that Ashland's Second Chance Pell ("SCP") students were not enrolled in established academic programs with the requisite thirty (30) weeks of instruction comprised of two fifteen (15) week semesters, such that Ashland was entitled to utilize the Federal Pell Grant "Formula 1" packaging process.[8]

II.  FSA erred in establishing liability against Ashland in Findings 1 and 2 of the FPRD by disregarding the regulatory definition of "academic engagement" and erroneously concluding that Ashland's non-traditional method of delivering its eligible programs to SCP students did not consist of fifteen (15) weeks of academic engagement necessary to satisfy the requirement of a fifteen (15) week semester as a part of a thirty (30) week academic program.

## ARGUMENT

**I – Subject Pell Grants Were Properly Packaged as All of Ashland's SCP Students Were Enrolled in Eligible Programs with the Requisite Thirty-Week Academic Years**

Adhering to 34 C.F.R. §690.63(a)(1) (2021), Ashland properly packaged Federal Pell Grant ("Pell") awards to SCP students according to the "eligible program" in which they were enrolled.[9] Ashland awarded Pell using Formula 1 in accordance with 34 C.F.R. §690.63(a)(1) (2021), which required Ashland to undertake a two-step analysis. First, Ashland must determine whether the student is enrolled in an eligible program. Second, Ashland must determine whether there are (i)

---

[8] "Formula 1" is described in 34 C.F.R. §690.63(b) (2021).
[9] "Eligible Program" is defined in 34 C.F.R. §668.8 (2021).

EDU000921

at least thirty (30) weeks of instructional time or (ii) less than thirty (30) weeks of instructional time in the eligible program in which the student is enrolled.  As outlined herein, Ashland correctly determined SCP students were enrolled in an "eligible program" and that the subject eligible program contained at least thirty (30) weeks of instructional time. As a result, Ashland appropriately applied Formula 1 and properly packaged the Pell awards at issue.

First, during the review period, there were five (5) academic programs in which SCP students were permitted to enroll, along with any "traditional" students at Ashland wishing to enroll in that same program.[10]  All five (5) of the subject programs met the requirements set out in 34 C.F.R. §668.8 (2021) to be an "eligible program" as they are at least two (2) academic years in length and lead to either a bachelor's or associate degree.[11]  Further, all five (5) programs are offered through online distance learning courses and have been evaluated by the Higher Learning Commission through the normal accreditation process.[12]  Thus, pursuant to the standards of 34 C.F.R. §668.8 (2021), all five (5) of the Ashland academic programs available to SCP students were "eligible programs" fulfilling the first prong set out in 34 C.F.R. §690.63(a)(1) (2021) in calculating Pell awards.

Second, every SCP student at Ashland was enrolled in an established academic program with at least thirty (30) weeks, comprised of two (2) fifteen (15) week semesters approved by ODHE and according to the Department's regulations and guidance regarding academic years. Accordingly, Ashland properly packaged Pell awards using the so-called "Formula 1" packaging

---

[10] Respondent's Exhibit 3 – Amiel Jarstfer Declaration at R3, pp. 3-4, ¶12 and ¶16. The five (5) academic degree programs subject to the review were:  Bachelor of Arts programs in Applied Communications, Interdisciplinary Studies, and Business Administration, and Associate of Arts programs in General Studies and Business Cognate. SCP students may also enroll in Multidisciplinary Studies, but no SCP students are currently enrolled in that program. Nonetheless, all of the analysis applicable to the other five programs is equally applicable to the Multidisciplinary Studies program.
[11] Respondent's Exhibit 3 - Amiel Jarstfer Declaration at R3, p. 3, ¶12.
[12] Respondent's Exhibit 3 - Amiel Jarstfer Declaration at R3, p. 3, ¶12.

EDU000922

process.[13]  All of Ashland's programs are approved by ODHE.[14]  To be approved by ODHE, any institution's academic program must undergo significant scrutiny as set forth in Guidelines and Procedures for Academic Program Review ("GPAPR"), including institutional and program standards specified in the guidelines.[15]  Specifically the GPAPR requires Ohio institutions have academic policies consistent with ODHE's definition of "academic year" requiring thirty (30)weeks of instruction, exclusive of compressed terms.[16]  The SCP students are enrolled in the same academic program as "traditional" Ashland students which meets the thirty (30)week requirement, though it is taught in a manner that accelerates the course delivery to SCP students through the GPAPR's "compressed terms."[17]  As a result, all five of the subject academic programs satisfy the requirements of 34 C.F.R. §690.63(a)(1) (2021) as programs with at least thirty (30) weeks of instructional time, even though a part of each program is taught in a compressed term as contemplated by the GPAPR.

---

[13] "Formula 1" is described in 34 C.F.R. §690.63(b).

[14] The full list of Ashland's academic programs are available at: https://highered.ohio.gov/educators/academic-programs-policies/academic-program-approval/program-approval-status/private-institutions (last visited 01/18/2023).

[15] The guidelines and governing statutes and regulations are available at: https://highered.ohio.gov/wps/wcm/connect/gov/8caf213a-ff90-4b5f-b2d8-ae8c75b0672f/Academic-Program-Review-Guidelines_070516.pdf?MOD=AJPERES&CONVERT_TO=url&CACHEID=ROOTWORKSPACE.Z18_K9I401S01H7F40QBNJU3SO1F56-8caf213a-ff90-4b5f-b2d8-ae8c75b0672f-ok7XiQU (last visited 01/18/2023). *See also,* Respondent's Exhibit 3 - Amiel Jarstfer Declaration at R3, p. 3, ¶11, and Attachment A - GPAPR, at R3, pp. 16-27.

[16] Respondent's Exhibit 3 - Amiel Jarstfer Declaration at R3, p.3, ¶11.  *See also,* Ohio Administrative Code §3333-1-02(b)(18) which defines "Academic Year" as follows: "Academic Year Length - The academic year shall be at least 30 weeks in length counting periods of time (terms) that begin on the first day of classes and end on the last day of classes or examinations. The 30 week requirement shall be measured exclusive of compressed terms (e.g., summer term)."

[17] Respondent's Exhibit 3 – Amiel Jarstfer Declaration at R3, p.4, ¶14, and Attachment B - Email from Matt Exline to Dr. Amiel Jarstfer dated February 10, 2022, at R3, p. 89, wherein an ODHE staff member likened the phrase "compressed term" to ODHE's concept of "accelerated delivery."  The ODHE staff member has advised Ashland that ODHE considers an accelerated program delivery model to include "courses that do not meet during the institution's regular academic term as well as courses that meet during the regular academic term but are offered in a substantially different manner than a fixed number of meeting times per week for all the weeks of the term."  This definition furthers the notion that a compressed term or an accelerated delivery model is not a separate program.  It is merely a means by which one or more courses in one of Ashland's eligible academic programs is delivered.

EDU000923

This analysis and conclusion is also consistent with the Department's definition of an "academic year", as well as the Department's guidance on an eligible program's academic year, despite the conclusion reach in the FPRD. The Department erroneously stated in the FPRD that the delivery of the academic program to SCP students resulted in an "academic year" equaling twenty-four (24) weeks, however, this determination is inconsistent with the statutory definition of an academic year and the Department's guidance in defining an academic year.[18]  First, 34 C.F.R. §668.3 (2020) defines an academic year by "the program of study."  The program of study for each SCP student is the approved academic program for all Ashland students which meets the thirty (30) week requirement.  Second, FSA guidance at the time of the review stated in relevant part that "every eligible program must have a defined academic year. . .  A school *may* treat two versions of the same academic program (day and night, for example) as separate programs and define different academic years for each version."[19]  Ashland, however, did not elect to create a separate program and each SCP student was enrolled in the same academic program with the same academic year as every other Ashland student – an academic program with an academic year of more than thirty (30) weeks.[20]

However, FSA erroneously concluded that Ashland should have utilized either "Formula 2" or "Formula 3".[21]  This determination in the FPRD is in contrast to the conclusion the FSA review team reached in the PRR where the team stated, "[t]he review team concluded that the Ashland students considered 'Pell for Students Who Are Incarcerated' experiment ("Second Chance Pell") under the Experimental Site Initiative (ESI) have **the same academic program content as other**

---

[18] FPRD, pp 8-9.

[19] Respondent's Exhibit 4 - Stephen Howell Declaration at R4, p. 3, ¶10, and Attachment A - FSA Handbook at R4, pp. 7-9 (emphasis added).

[20] Respondent's Exhibit 4 - Stephen Howell Declaration at R4, p. 3, ¶10.

[21] "Formula 2" is described in 34 C.F.R. §690.63(c) (2021); "Formula 3" is described in 34 C.F.R. §690.63(d) (2021).  FSA concluded in Footnote 3 on p. 12 of the FPRD that Formula 2 was more applicable.

EDU000924

**Ashland students** but have a different structure to complete **the** academic program."[22]  FSA apparently recognized that Ashland did not elect to create separate versions of the same academic program in the PRR, but failed to utilize **the** program's defined academic year in the FPRD.

The liability assessed in Findings 1 and 2 of the FPRD by FSA is at odds with FSA's recognition that Ashland's SCP students were enrolled in the same academic program with simply an alternate delivery structure for the incarcerated students.  SCP students received the same content, the same student learning objectives, the same amount of class time, the same resulting transcript entries, and the same degrees earned by all other Ashland students, regardless of the manner in which the content was delivered.[23]  Nevertheless, FSA disregarded its own factual conclusion and, without explanation, failed to follow 34 C.F.R. §690.63(a)(1) (2021), which provides that Formula 1 should be applied to the five (5) approved "eligible" academic programs with more than thirty (30) weeks of instruction available to SCP students.  Ashland, in accordance with the regulations promulgated by the Department, applied the correct formula applicable to the academic program in which the SCP students were enrolled – Formula 1 – and made Pell awards in according to that formula.

In reaching its conclusions in Findings 1 and 2, FSA erroneously concluded that SCP students were enrolled in some separate program which simply does not exist, and which FSA may not create.[24]  This erroneous conclusion appears to have been based on FSA's belief that Ashland's use of a shortened time for content delivery somehow created a new program. [25]  There was no separate program offered to SCP students, nor was Ashland required to establish one.  Further, guidance from the Department *required* that Ashland, for financial aid award purposes, use the

---

[22] PRR, p. 6. (emphasis added).
[23] Respondent's Exhibit 3 – Amiel Jarstfer Declaration at R3, pp. 4-5, ¶19.
[24] FPRD, p. 9.
[25] FPRD, p 11.

EDU000925

same academic year definition for all students in the same academic program - "[a]lthough a school may have different academic years for different programs, it must use the same academic year definition for all FSA awards for students enrolled in a particular program, and for all other FSA program purposes."[26]  Ashland complied with that requirement.  Ashland has maintained one "version" of each academic program with one academic calendar. Thus, Ashland was obligated to follow the directive from the Department applying the same formula to all enrolled students, and therefore, Ashland properly applied Formula 1 and disbursed Pell awards appropriately.

Rather than address these issues raised by Ashland in its Response to the PRR, FSA issued the FPRD without reconciling the inconsistencies with the dispositive regulations of the Department and its own guidance.[27]  Moreover, since Ashland's Request for Review was submitted, FSA has still failed to explain its position with the Department's regulations despite Ashland's requests in informal settlement discussions to do so.  For the reasons set forth herein, FSA's application of the Department's regulations in the FPRD were erroneous, and Ashland requests the liabilities assessed in Findings 1 and 2 be reversed, as Ashland properly applied Formula 1 and appropriately disbursed Pell awards according to 34 C.F.R. §690.63(a)(1) (2021) and 34 C.F.R. §690.63(b) (2021).

## II – Ashland's Academic Programs Involving SCP Students Meet the Fifteen Week Semester Requirement for a Thirty Week Academic Program

In addition to the foregoing, **even if** it is determined that the SCP students were **enrolled in a "separate" program**, Ashland is still entitled to use Formula 1 to compute Pell awards for the SCP students because the programs in which SCP students were enrolled met the required

---

[26] Respondent's Exhibit 4 - Stephen Howell Declaration at R4, p. 3, ¶10, and Attachment A - FSA Handbook, at R4, pp. 7-9 (emphasis added).
[27] Respondent's Exhibit 7 – Ashland's Response to the PRR, dated March 11, 2022, at R7, pp. 6-15.

EDU000926

thirty (30) week academic year, with two (2) fifteen (15) week semesters.  FSA failed to correctly apply the definition of a "week of instructional time" and "academic engagement" in attempting to establish a number of weeks for the SCP program it unilaterally created.[28]  FSA erroneously concluded that the SCP students were not enrolled in thirty (30) week programs which consisted of two (2) fifteen (15) week semesters and instead mistakenly determined that SCP students received only twelve (12) weeks of academic engagement using a regulatory analysis which was not in effect or have applied at the time in question.[29]

During the award years subject to FSA's review, Ashland was required by 34 C.F.R. §690.63(g)(3) (2012) to define each program's "academic year" using credit hours and weeks of instructions, according to 34 C.F.R. §668.3 (2006) and as amended in 34 C.F.R. §668.3 (2020), neither version including the term "academic engagement" as it was not yet defined in 34 C.F.R. §600.2.[30]  Moreover, FSA guidance published in the 2019 "FSA Handbook" provided that for distance education, a week of instructional time was subject to the directive in "Q8" of the "Dear Colleague Letter" published December 18, 2014. That guidance stated in relevant part that "there is no requirement that the institution be able to document academic engagement for each student for every week of instructional time" so long as instruction materials and faculty support were available to support engagement.[31]  FSA nevertheless established liability completely disregarding the applicable regulations and its own guidance.  In any event, as outlined in the Request for

---

[28] A "week of instructional time" is defined in 34 C.F.R. §668.3(b)(2) (2020), though as amended in 2006 and again in 2020 in effect during the subject award years, it did not include the term "academic engagement" with respect to weeks of instruction, as "academic engagement" was first defined in 34 C.F.R. §600.2 by amendment in July of 2021.

[29] FPRD pp. 10-11.

[30] The Department published the final rule 85 FR 54742 in September 2020, amending 34 C.F.R §600.2 to include the term "academic engagement" to take effect July 1, 2021, after the last award year subject to the program review by FSA herein.

[31] See Respondent's Exhibit 8, FSA Handbook 2019 at R8, p 1, (emphasis added) stating that "Q8" of the directive was applicable to distance education with respect to weeks of instruction; See also Respondent's Exhibit 9, "Dear Colleague Letter" dated December 18, 2014, GEN-14-23, pp.5-6 (emphasis added).

EDU000927

Review and in Ashland's Response to the PRR, the structure of the course delivery to SCP students included three (3) additional weeks of academic engagement as defined in 34 C.F.R. §600.2 (2021), outside of the twelve (12) weeks identified by FSA in the FPRD.[32]

During the first additional week of academic engagement ("Week 1"), instructors interact with the SCP students about the course syllabus, available resource materials, technology issues necessary to facilitate the delivery of course content, and any other academic matters necessary to initiate the course.[33]  As noted above, the FSA acknowledged that there were twelve weeks of class meetings that constitute weeks of instructional time ("Weeks 2-13"). The second additional week of academic engagement ("Week 14") occurs after the twelve weeks of classes end, during which the instructors interact with the SCP students regarding any unfinished assignments and any other matters necessary for the SCP students to complete the course and students continue to submit assignments in Week 14.[34]

During Week 14, students who may have received an "Incomplete" for a variety of reasons including lockdowns at their facility, medical incidences, technological malfunctions, limitations in services at the facility, and even natural disasters, will discuss with their instructors the steps which the students will take to complete the course.[35]  Once those steps are identified, the instructor and the students with Incomplete grades continue to interact for at least one (1) day during the following week ("Week 15") and beyond to facilitate the SCP students' completion of the course, including submission of assignments.[36]

---

[32] FPRD pp. 10-11.

[33] Respondent's Exhibit 5 – Mary Deloe Declaration at R5, pp.2-3, ¶9; Respondent's Exhibit 6 - James Hayes Declaration at R6, p. 3, ¶9. Please note, Week 1, as used here, is also referred to as "Pre-Week 1" by Ms. Deloe and Dr. Hayes.

[34] Respondent's Exhibit 5 – Mary Deloe Declaration at R5, p. 3, ¶10-11; Respondent's Exhibit 6 - James Hayes Declaration at R6, p.3, ¶10-12.

[35] Respondent's Exhibit 5 – Mary Deloe Declaration at R5, p. 3, ¶10-12.

[36] *Id.*; Respondent's Exhibit 6 – James Hayes Declaration at R6, p.3, ¶10-12; Respondent's Exhibit 2 – Todd Marshall Declaration at R2, pp. 3-4, ¶12-13.

EDU000928

The importance of Week 15 to the SCP is in line with the objectives of the SCP Program as stated by the Department: (1) "Examine how providing Pell Grants to incarcerated students influences their participation in educational opportunities and academic outcomes" and (2) "Examine any challenges or obstacles to an institution's administration of Title IV HEA programs to incarcerated students."[37]  For the semesters subject to review in the FPRD (Summer 2019 – Spring 2021), during Week 15, approximately 31-75% of SCP sections were still submitting assignments, interacting with their instructor about academic matters, and otherwise having active academic engagement with access to course materials and other Ashland resources to complete their courses.[38]

Had FSA correctly applied the definitions of "week of instructional time" and "academic engagement" as specified in the regulations as opposed to applying FSA's own definition of what those terms mean, FSA would have concluded that Ashland's programs consisted of a minimum of fifteen (15) weeks each semester and thirty (30) weeks in the eligible program's academic year as required for Formula 1 calculations.  FSA disregarded the regulatory definition of "academic engagement" and erroneously concluded that Ashland's distance learning method of delivering its eligible programs to SCP students did not consist of fifteen (15) weeks of academic engagement necessary to satisfy the requirement of a fifteen (15) week semester as a part of a thirty (30)-week academic program. As such, Ashland properly applied Formula 1 to calculate Pell awards to SCP students and the liabilities assessed in Findings 1 and 2 of the FPRD should be reversed.

---

[37] *See* https://experimentalsites.ed.gov/exp/pdf/SecondChancePell061720Slides.pdf (last visited 01/18/2023).
[38] Respondent's Exhibit 2 – Todd Marshall Declaration at R2, p. 4, ¶17, Attachment A - Incomplete SCP Sections 2019-2021 at R2, p. 6; Respondent's Exhibit 5 – Mary Deloe Declaration at R5, p. 3, ¶11; Respondent's Exhibit 6 - James Hayes Declaration at R6, p.3, ¶10-12.

EDU000929

## CONCLUSION

When 34 C.F.R. §690.63(a)(1) (2021) is appropriately applied, neither of FSA's erroneous conclusions is supportable as required by 34 C.F.R. §668.118(b) (2021).  Ashland was entitled to use Formula 1 and made proper Pell awards to SCP students, despite FSA's erroneous conclusion that only Formula 2 applied. Given the liabilities assessed in Finding 2 are dependent upon FSA's flawed analysis in Finding 1, Ashland seeks reversal of both Findings 1 and 2 and a determination that the liabilities which FSA imposed on Ashland must be withdrawn.

Respectfully submitted,

_____
Jim Newberry
Kalynn G. Walls
Susan L. Deniker
Steptoe & Johnson PLLC
*Counsel for Respondent Ashland*

Dated: January 21, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of January 2023, a true and correct copy of the foregoing Brief in Support of Respondent's Request for Review was filed through the Office of Hearings & Appeals Electronic Filing System (OES) and served by electronic mail on:

Raziya Brumfield, Esq.
Office of General Counsel
U.S. Department of Education
400 Maryland Avenue, S.W., Room 6E214
Washington, D.C. 20202
 Phone: (202) 453-6531
 E-Mail: raziya.brumfield@ed.gov

EDU000930

Donna Mangold, Esq.
Acting Deputy Assistant General Counsel
Office of General Counsel
US Department of Education
400 Maryland Avenue, S.W.
Washington, D.C. 20202
E-Mail: Donna.Mangold@ed.gov

_____
Jim Newberry
Kalynn G. Walls
Susan L. Deniker
Steptoe & Johnson PLLC
*Counsel for Respondent Ashland*

EDU000931