GOVERNMENT
EXHIBIT

Y

**UNITED STATES DEPARTMENT OF EDUCATION**
**OFFICE OF HEARINGS AND APPEALS**

| | | |
|---|---|---|
| *In the Matter of* | ) | **Docket No. 22-58-SP** |
| | ) | |
| **Ashland University,** | ) | **Federal Student Aid** |
| | ) | **Proceeding** |
| **Respondent.** | ) | |
| | ) | **PRCN: 2021-4-05-30426** |

**BRIEF OF FEDERAL STUDENT AID**

The U.S. Department of Education's ("Department") Office of Federal Student Aid ("FSA"), by its undersigned counsel, hereby submits its Brief in the above-captioned appeal:

**I.      INTRODUCTION**

On September 16, 2022, the U.S. Department of Education ("Department"), through the Office of Federal Student Aid (FSA), Chicago/Denver School Participation Division issued a Final Program Review Determination ("FPRD"), assessing liabilities against Ashland University ("Ashland" or "Respondent") under Title IV of the Higher Education Act ("HEA") of 1965, as amended, 20 U.S.C. §§ 1070 *et seq.* ("Title IV"), and its implementing regulations. The FPRD stemmed from a program review conducted by FSA at Ashland from September 13, 2021 through September 24, 2021. Following Ashland's program review, on January 3, 2022, FSA issued a Program Review Report ("PRR") with ten findings of noncompliance. Ashland provided a response to the PRR that was dated March 2, 2022. Once the FPRD was issued, on September 16, 2022, four of the findings were resolved, and the FPRD assessed total liabilities of $6,133,058.19 against Ashland.

Pursuant to 34 C.F.R. § 668.113 (2022), Ashland timely appealed the FPRD with respect to Finding 1 in the amount of $6,131,790.46 and Finding 2 which did not entail any liabilities.

EDU001119

Finding 1 established liabilities for improper Federal Pell Grant awards administered to Ashland during its participation in the Second Chance Pell – Pell for Incarcerated Students Experiment under the Department's Experimental Sites Initiative.  Ashland's improper distribution of Federal Pell Grant awards, as assessed in Finding 1, was based on the Department's finding that Ashland's Second Chance Pell program was comprised of two 12-week semesters within a 24-week Academic Calendar.  Because Respondent's program was less than 30 weeks in length, students were not entitled to receive their entire Pell award limit and such awards required reduction.  This appeal proceeding is governed by 34 C.F.R. Part 668, Subpart H, under which Ashland has the burden of proving that it complied with all program requirements.  34 C.F.R. § 668.116(d).  As set forth herein, Ashland has failed to meet this burden, and the liabilities should be affirmed.

## II.    FACTUAL BACKGROUND

Section 401(b)(6) of the HEA provides that no Federal Pell Grant shall be awarded to any individual who is incarcerated in any Federal or State penal institution.  20 U.S.C. § 1070(a)(b)(6).  During 2015, in accordance with the Secretary's waiver authority under section 487A(b) of the HEA, the Department instituted the Second Chance Pell ("SCP") – Pell for Incarcerated Students Experiment under the Department's Experimental Sites Initiative ("ESI" or "Experiment"), which provides a limited waiver of the statutory provision that a student who is incarcerated may not receive a Federal Pell Grant.  *See* 80 FR 45964 (Aug. 3, 2015).  Under the SCP Experiment, participating institutions may provide Federal Pell Grant funding to students who are incarcerated.  To participate in the program, institutions must successfully complete two application phases, which include submission of a letter of interest and a questionnaire to the Department.  Thereafter, the Department invites successful applicants to participate in the SCP Experiment.

EDU001120

In 2015, Ashland submitted its initial phase 1 letter of application to participate in the Department's SCP Experiment.  ED-10 (Ashland's Phase 1 Application).  Thereafter, on January 21, 2016, the Department provided notice to Ashland that it had successfully passed the first phase of review, and Respondent was provided a phase 2 questionnaire for completion.  ED-11 (Phase 1 Approval).

On March 18, 2016, Ashland submitted its response to the questionnaire.  ED-12 (Ashland's Questionnaire Response).  In its response, Respondent explained that even prior to the SCP Experiment "Ashland University ha[d] a long history of educating incarcerated students dating back to 1964", using alternative funding which included funds provided by the Ohio Department of Rehabilitation and Correction ("ODRC").  *Id.* at 1.  To participate in the SCP Experiment, Ashland proposed expanding on the program it already offered to incarcerated students, which included: (1) a certificate in Business Management and Office Management, (2) an Associate of Arts Degree, and (3) a Bachelor of Science degree.  *Id.* at 3.  In explaining the certificate in Business Management and Office Management, Ashland stated that incarcerated "Students currently take 1-4 classes per 12-week semester in this program.  The Certificate in Business Management and Office Management is comprised of 36 semester hours and students currently take 1-4 classes per 12-week semester."  *Id.* at 4.  Similarly, for the Associate of Arts degree, Ashland's proposal stated, "This is a two-year degree comprised of 60 semester hours and offered in three 12-week semesters per academic year."  *Id.*  Lastly, in addressing the Bachelor of Science degree, Ashland's proposal stated, "This four-year degree is comprised of 120 semester hours and is offered in 12 week semesters."  *Id.* at 5.  For all three programs, Ashland represented that in prior academic years the institution's academic program for incarcerated students encompassed 12-week semesters, and it planned to continue its established

3

EDU001121

practice of offering 12-week semesters for incarcerated students if granted acceptance into the SCP Experiment.

On June 28, 2016, the Department invited Ashland to participate in the SCP Experiment. ED-13 (Final Approval Letter).  The Department's letter explained that Ashland would receive a Program Participation Agreement (PPA) amendment outlining the exemptions and requirements for participating in the SCP Experiment.  The letter further stated that the PPA amendment must be signed by Ashland's chief executive officer (e.g., President, Chancellor), and then returned to FSA, where it would be countersigned by the Department's School Participation Team Division Director.  Prior to obtaining admittance into the SCP Experiment, Ashland was required to receive the Department's countersigned PPA amendment.

On August 9, 2016, Ashland's President signed the PPA amendment on behalf of the institution, and on August 16, 2016, the Department's representative signed on the Department's behalf.  ED-14 (PPA).  The PPA provides that "the Department has the right to terminate at any time the Institution's participation in the experiment", and similarly the institution "has the right to terminate participation in the experiment."  *Id.* at 4. On August 18, 2016, the Department notified Ashland that the institution could begin implementation of the SCP Experiment for the 2016-2017 award year.  ED-15 (SCP Experiment Welcome Letter).

From September 13, 2021 through September 24, 2021, FSA conducted a program review at Ashland for the 2019-2020 and 2020-2021 academic years.  *See* ED-3 (FPRD).  On January 3, 2022, the Department issued its PRR.  *See* ED-3 at 5.  Finding 1 concluded that because SCP students participate in two 12-week semesters within a 24-week Academic Calendar, Respondent could not use Formula 1 to calculate student awards.  As explained in the PRR, institutions may calculate Pell awards using Formula 1 only if the program "uses an

4

EDU001122

academic calendar that provides at least 30 weeks of instructional time". 34 C.F.R. § 690.63(a)(1)(ii). Alternatively, institutions must calculate Pell awards using Formula 2 if the institution's program "is less than 30 weeks of instructional time". 34 C.F.R. § 690.63(a)(2). Although Respondent's Academic Calendar was less than 30 weeks in length, Ashland incorrectly used Formula 1 to calculate student awards, thereby over-awarding student Pell funds.

During the program review, FSA program staff reviewed documentation including, Ashland's Academic Calendars, Correctional Education Instructor Best Practices Checklists, and Course Syllabus for the 2019-2020 and 2020-2021 school years. ED-4, 5, and 6. FSA also interviewed several staff members concerning the program. ED-1 at ¶¶ 13-19 (Declaration of Mark Kreutzner); ED-2 at ¶¶ 13-19 (Declaration of Leslie Orofino). The documentation supplied by Ashland as well as interviews of Ashland staff confirmed that Respondent's SCP program was comprised of two 12-week semesters within a 24-week Academic Calendar.

A.     **Ashland's 2019-2020 and 2020-2021 Academic Calendars**

During the program review, FSA staff obtained multiple documents outlining Ashland's Academic Calendar length for SCP students. First, the Department obtained the Academic Calendar for the 2019-2020 and 2020-2021 school years, which were published in the institution's course catalog. ED-4 (Academic Calendars). Ashland's Academic Calendars explicitly demonstrate that the SCP program was comprised of two 12-week semesters within a 24-week academic calendar year, while non-incarcerated students had an Academic Calendar comprised of two 16-week semesters within a 32-week academic calendar year. Specifically, Ashland's Academic Calendar for the 2019-2020 school year clearly states that all fall "12-week classes begin" for SCP students on September 16, 2019, and the "last day of classes" is 12 weeks

EDU001123

later on December 6, 2019; spring "12-week courses begin" for SCP students on February 10, 2020, and "courses end" 12 weeks later on May 1, 2020. Further outlining its 12-week curriculum, Ashland's Academic Calendar for the 2020-2021 school year states that all fall "12 w[ee]k classes begin" for SCP students on September 21, 2020, and "courses end" 12 weeks later on December 11, 2020; spring "12 w[ee]k courses begin" for SCP students on February 8, 2021, and "courses end" 12 weeks later on April 30, 2021. *See* ED-4.

> **B.** **Ashland's Correctional Education Instructor** Best Practices Checklists and Course Syllabus

During the program review, FSA staff also reviewed Ashland's Correctional Education Instructor Best Practices Checklists and Course Syllabus examples for students enrolled in the SCP Experiment, which all coincide with the 24-week length of the institution's Academic Calendars. ED-5 (Correctional Education Instructor Best Practices Checklists); ED-6 (Course Syllabus). The Correctional Education Instructor Best Practices Checklists identify the start and end dates of the applicable 12-week semester and is sectioned into 12 separate weeks; the start date of each week is also specified in each weekly section. ED-5. For example, for the fall 2020 semester, the Checklist states that for incarcerated SCP students "Week 1" begins on September 21, 2020 and "Week 12" begins on December 7, 2020. For the spring 2021 semester, the Checklist similarly demonstrates that incarcerated students were engaged in 12-week semesters. Additionally, Course Syllabus examples obtained during FSA's program review of courses provided within Ashland's SCP program explicitly demonstrate how courses are broken down in

EDU001124

12-week modules.  ED-6. For each week a detailed description is provided of the various assignments that SCP students must complete. [1]

### C.    Ashland Employee Interviews

During the September 2021 program review, multiple Ashland staff confirmed that while non-incarcerated students had academic programs that constituted 16 weeks of instruction per semester, incarcerated SCP students participated in two 12-week semesters within a 24 week Academic Calendar.  ED-1 at ¶¶ 13-19; ED-2 at ¶¶ 13-19.   One employee even stated that "12 week courses work better in prison, which is why they are shorter than the 16 week courses taken by non SCP students."  ED-1 at ¶ 16; ED-2 at ¶ 16.

Following the Ashland employee interviews, in a September 21, 2021 email exchange, Department personnel further asked Ashland's Director of Student Records and Correctional Education Advisor to explain why Ashland's correctional education curricula was designed to encompass 12-week semesters, and if incarcerated SCP students were permitted/eligible to take a 16-week course.  ED-7.  The next day, FSA received the following response:

> The creation of 12 week courses was done prior to me joining the University, therefore, I cannot speak to the reasoning behind utilizing a 12 week online term.
>
> Correctional Education students, by virtue of their incarceration, are not permitted to have contact with anyone other than their instructors. They may not communicate to their correctional education student on their tablet either at their own location or a different location. Therefore, Correctional Education courses are created in a closed setting on our LMS/tablets. **Correctional Education students may not take a 16 week course.**
>
> Ashland University offers 12 courses in programs outside of Correctional Education. A non-incarcerated student may take 12 week courses in other

---

[1]    The Department obtained a sample of Respondent's Correctional Education Instructor Best Practices Checklists and Course Syllabus for the 2019-2020 and 2020-2021 school years, which are provided as ED Exhibits 5-6.

EDU001125

programs- but not in the correctional education program. ED-8 (emphasis added); *see also* ED-1 at ¶ 20.

Following the issuance of the PRR, Ashland retained counsel that submitted a response on the institution's behalf dated March 2, 2022.  R-7 (Respondent's PRR Response).  The Department reviewed Ashland's response.  Finding that no error had occurred and rejecting Respondent's claims, the Department determined that the liabilities for Finding 1 were properly established.  Accordingly, on September 16, 2022, the Department issued the FPRD establishing liabilities for Finding 1 in the amount of $6,131,790.46.  ED-3. On appeal, despite Respondent's clearly published 24-week Academic Calendar, as well as multiple representations made to the Department that the SCP program was 24-weeks in length, both in its application to participate in the SCP Experiment and during the program review, Ashland now claims that its SCP program "consisted of a minimum of fifteen (15) weeks each semester and thirty (30) weeks in the eligible program's academic year".  Resp. Br. at 12.  According to Respondent, SCP students were engaged in academic engagement outside of the 12-week semester, during which time students engaged in activities which included optional interactions with instructors concerning questions on the course syllabus and technology issues.  *Id.* at 11.  Respondent further irrelevantly states that its SCP program is approved by the Ohio Department of Education and is taught in "compressed terms".  *Id.* at 6.  In doing so, Respondent attempts to completely ignore the factual record, provides incorrect interpretations of the Department's regulations, and reiterates arguments raised in its PRR response.  Respondent has considerably failed to meet its burden, and liabilities for Finding 1 should be affirmed.

## III.    CALCULATING FEDERAL PELL GRANT AWARDS

A week of instructional time is a consecutive seven-day period "in which at least one day of regularly scheduled instruction or examinations occurs or, after the last scheduled day of

EDU001126

classes for a term or payment period, at least one day of study for final examinations occurs." 34 C.F.R. § 668.3(b)(1)-(2)(2019). Instructional time does not include any vacation periods, homework, or periods of orientation or counseling. 34 C.F.R. § 668.3(b)(3)(2019).[2] The Department's implementing regulations at 34 C.F.R. § 690.63 provide several formulas for calculating a Federal Pell Grant for a Payment Period basis, depending on the number of weeks of instruction within an institution's academic calendar of the program that is being taken. Formulas 1 and 2 are at issue here.[3]

*Pell Formula 1*

Institutions may calculate Pell awards using Formula 1 if the program "uses an academic calendar that provides at least 30 weeks of instructional time". 34 C.F.R. § 690.63(a)(1)(ii). Formula 1 is calculated by dividing the student's annual award by two "at institutions using semesters or trimesters or three at institutions using quarters." 34 C.F.R. § 690.63(b)(1)-(3)(i).

---

[2] Effective July 1, 2021, 34 C.F.R. § 668.3(b)(2)-(3) was amended as follows:

 (2) A week of instructional time is any week in which—

(i) At least one day of regularly scheduled instruction or examinations occurs, or, after the last scheduled day of classes for a term or payment period, at least one day of study for final examinations occurs; or

(ii)(A) In a program offered using asynchronous coursework through distance education or correspondence courses, the institution makes available the instructional materials, other resources, and instructor support necessary for academic engagement and completion of course objectives; and
(B) In a program using asynchronous coursework through distance education, the institution expects enrolled students to perform educational activities demonstrating academic engagement during the week; and

(3) Instructional time does not include any scheduled breaks and activities not included in the definition of "academic engagement" in 34 C.F.R. § 600.2, or periods of orientation or counseling.

[3] Although 34 C.F.R. § 690.63 identifies five total formulas for calculating Pell, only two are at issue here. *See* 34 C.F.R. § 690.63; FSA Handbook 3-67 through 3-73 (2019-20); FSA Handbook 3-61 through 3-70 (2020-21).

EDU001127

Under Pell Formula 1, because the academic program is at least 30 weeks of instructional time, students receive 100% of their eligible Pell award.  For example, if a 2019-20 award year student is enrolled at the half-time status and is eligible to receive an annual Pell Grant limit of $3,098, under Formula 1 the student will receive the entire award - half of the award each semester. Thus, in semester one the student would receive $1,549, and in semester two the student would receive the remaining $1,549.

*Pell Formula 2*

If an institution provides a program using an academic calendar that is less than 30 weeks of instructional time, Formula 1 cannot be used, and the institution must use Formula 2.[4] Institutions must calculate Pell awards using Formula 2 if the institution's program "is less than 30 weeks of instructional time", 34 C.F.R. § 690.63(a)(2), and the student is enrolled in an eligible program that:

A.  Measures progress in credit hours;

B.  Is offered in semesters, trimesters, or quarters; and

C.  Requires the student to enroll in at least 12 credit hours in each term in the award year to qualify as a full-time student; and is not offered with overlapping terms.

34 C.F.R. § 690.63(a)(2)(i).  Additionally, the institution offering the program must "provide[] the program using an academic calendar that includes two semesters or trimesters in the fall through the following spring, or three quarters in the fall, winter, and spring", 34 C.F.R. § 690.63(a)(2)(ii)(A), and does not provide at least 30 weeks of instructional time in the terms specified in 34 C.F.R. § 690.63 (a)(2)(ii)(A).  *See* 34 C.F.R. § 690.63(a)(2).  In programs, such as

---

[4]     The FPRD explained that Ashland could have also used Pell Formula 3.  ED-3 at 10.  A student's Federal Pell Grant is calculated using Formula 3 if the institution's program (i) measures progress in credit hours; and (ii) is offered in academic terms other than those described in Formula 1 and Formula 2.   34 C.F.R. § 690.63(a)(3).   Because Ashland uses standard terms, Formula 2 is more applicable.  *See* ED-3 at 10, 13 fn 3; *see also* R-7 at 15 fn 61.

EDU001128

Ashland's, that use semesters or trimesters, Formula 2 is calculated by multiplying the student's annual award by the following fraction as applicable:

$$\frac{\text{The number of weeks of instructional time offered in the program in the fall and spring semesters or trimesters}}{\text{The number of weeks in the program's academic year}}$$

*See* 34 C.F.R. § 690.63(c).

Under Formula 2, because the program is less than 30 weeks of instructional time, students receive a prorated portion of their total Pell eligibility.  Thus, similar to the prior example, if a student is eligible to receive an annual Pell grant of $3,098 and the institution's program is 24 weeks of instructional time "in the fall and spring semesters", as is Ashland's, the student's award is calculated by multiplying the students annual award ($3,098) by 24/30.  The denominator is 30 because a minimum of 30 weeks of instructional time is required for programs offered in credit hours.  34 C.F.R. § 668.3(a)(1)(i).  Thus, instead of receiving the total $3,098, the student receives $2,478 per year or $1,239 per semester.

Because the Academic calendar for Ashland's SCP program was "less than 30 weeks of instructional time", Respondent erred in using Formula 1, and Formula 2 should have been utilized to calculate students' Pell awards.

## IV.     ARGUMENT

**A.     Ashland's Academic Program for SCP Students was Comprised of Two 12-week Semesters Within a 24-week Academic Calendar as Explicitly Represented in its Application to Participate in the SCP Experiment, and Specified in its Academic Calendar, Correctional Education Instructor Best Practices Checklist, Course Syllabus, and Confirmed by Institution Employees.**

An institution must have a clearly defined academic calendar, which identifies its weeks of instruction for Pell award calculations.  The Department has repeatedly clarified that if an

EDU001129

institution "published, in its catalog, on its website, or in any promotional materials, the length of its program in weeks, months, or years, the program length to be reported [to the Department and utilized for Pell calculations] must be the same as the program length that the institution has published."  FSA Handbook 2-22 (2019-20); FSA Handbook 2-26 (2020-21); *see also* 34 C.F.R. § 668.41(a)(2019) ("Normal time is the amount of time necessary for a student to complete all requirements for a degree or certificate according to the institution's catalog.").

*In the Matter of Butte Academy of Beauty Culture.*, the institution challenged the Department's determination that it improperly disbursed Federal Pell Grant funds by inflating the number of weeks of instruction for the institution's cosmetology program.  Docket No. 96-136-SP, U.S. Department of Education (May 23, 1997).  The Department determined that the institution improperly disbursed Pell Grant funds by calculating the institution's program course length as consisting of 30 weeks rather than the actual program length of 25 weeks.  *Id.* at 1.  The Department demonstrated that according to the institution's catalog and enrollment form, the institution's cosmetology program consisted of an academic year consisting of only 25 weeks. *Id.* at 2.  In affirming the institution's liabilities, the Chief Judge held "it is clear from the institution's course catalog and the student enrollment agreement that [the institution] did not offer its students a cosmetology program that consisted of at least 30-weeks of instruction for each academic year."  *Id.* at 3.  Similarly, Ashland's 2019-2020 and 2020-2021 Academic Calendars were published in its yearly catalogs and explicitly stated that Respondent's academic program for SCP students consisted of two 12-week semesters within a 24-week academic year. Additionally, Ashland's Correctional Education Instructor Best Practices Checklist and Course Syllabus described the program's length as 12 weeks per semester.  The 12-week length of Ashland's SCP program was further confirmed in interviews with several of Respondent's

12

EDU001130

employees and even represented to the Department in its initial application to the SCP Experiment.  Contrary to Ashland's assertions, Respondent's SCP program used an Academic Calendar that was 24 weeks in length, which necessitates the usage of Formula 2 in calculating SCP awards. !

> **B.      Ashland's Miscalculation of SCP Grants Exhausts its Students' Pell Lifetime Eligibility Used Percentage.**

Students receive a limited amount of Pell funds.  A student's maximum duration of Pell eligibility is six Scheduled Awards, as measured by the percentage of "Lifetime Eligibility Used" (LEU).  20 U.S.C. § 1070a(c)(5); *see also* DCL-GEN 13-14 ("The 12 semester duration limit in the new HEA provision is the equivalent of six years of Pell Grant funding.").  One Scheduled Award equals 100% LEU, and a student is ineligible to receive further Pell funds if they have reached or exceeded the 600% limit.  FSA Handbook 3-87 (2019-20); FSA Handbook 3-53 (2020-21).  In Ashland's case, because the institution has erroneously calculated Pell awards using Formula 1, students have obtained 100% of their LEU.  Under Ashland's misapplication of the Department's regulations, after six years SCP students will no longer be eligible to receive Pell awards.  However, when SCP student awards are calculated accurately, students will only receive 80% of their Pell award.  After six years, SCP students LEU is 480%, and they are therefore eligible for 120% of remaining Pell Grant funding.

Ashland's incorrect usage of Formula 1 has caused substantial harm to incarcerated students, which must be corrected.  Under Formula 2, Ashland was required to determine students' Pell awards by multiplying the students' annual award by the following:

$$\frac{\text{The number of weeks of instructional time offered in the program in the fall and spring semesters or trimesters}}{\text{The number of weeks in the program's academic year}}$$

13

EDU001131

Thus, because Ashland's program was 24 weeks "in the fall and spring semesters" and the minimum number of weeks in a program's academic year is 30, 34 C.F.R. § 668.3(a)(1)(i), SCP awards should have been calculated by multiplying students' annual award by 24/30 or 80%.[5]

### C. Ashland's Arguments Lack Merit and are not Defenses to the Assessed Liabilities.

Although Ashland goes through grave length to obfuscate the issues in dispute, the primary matter at hand is the length of the institution's SCP program. The Department's regulations provide specific Federal Pell Award formulas based on the length of the institution's academic calendar. 34 C.F.R. § 690.63. The evidence overwhelmingly confirms that Ashland's SCP program utilized an Academic Calendar that encompassed two 12-week semesters within a 24-week year. Accordingly, the FPRD liabilities for Finding 1 should be affirmed in full.

### 1. Ashland Explicitly Acknowledges that its SCP is Shorter than its Program for Non-incarcerated Students.

Ashland has explicitly acknowledged that SCP students are not engaged in the same academic program length as non-incarcerated students. In its response to the PRR, Ashland stated that it has "modified [its] course delivery format." R-7 at 16 fn 61. Respondent further stated that "Any question related to the number of weeks of academic engagement for SCP students will be moot in the future, as Ashland is transitioning the accelerated course delivery schedule for SCP students to mirror the course delivery format of the same program provided to non-SCP students." R-7 at 16 fn 61. Ashland further acknowledges that its SCP program uses a

---

[5] The applicable fraction in Ashland's case is 24/30 because it represents the actual number of weeks of instructional time within Ashland's fall and spring semesters (24) / the minimum required number of weeks in the institution's Academic Calendar (30) pursuant to 34 C.F.R. § 668.3(a)(1)(i). It is worth noting that alternatively because Ashland's Academic Calendar for traditional students is 32 weeks (two 16-week semesters), the Department's regulations also permit a 24/32 week proration for SCP students. However, for determining liabilities, the Department utilized the minimum 30-week requirement, which lowered the institution's total liabilities. *See* ED-1 at ¶ 10; ED-2 at ¶ 10.

EDU001132

"shortened time for content delivery". Resp. Br. at 8. Ashland's statements acknowledge that the course length for SCP students was shorter i.e. "accelerated" compared to its traditional students.

> **2. Ashland was Required to Meet all Title IV HEA Program Eligibility Requirements.**

In Ashland's selection to participate in the SCP Experiment, Respondent was provided an amended PPA. The PPA amendment requires that Ashland's program "meet all Title IV HEA program eligibility requirements", ED-5 at 2, and that the Experiment "will be evaluated using information provided to the Department by the Institution, as well as any other information available to the Department." *Id.* at 3. Ashland claims that its academic programs are approved by the Ohio Department of Education and because Ashland has not elected to have separate versions of its academic programs it "must use the same academic year definition for all FSA awards for students enrolled in a particular program". Resp. Br. at 9; R-7 at 10-11. Put plainly, the Ohio Department of Education's determination is immaterial to the matter at hand. Furthermore, the Department does not simply rely on the determinations made by other agencies and instead conducts program reviews to ensure compliance and effective administration of provisions within the HEA and its regulations. *See* 20 U.S.C. 1099c–1; FSA Handbook 2-204 (2019-20) ("For its part in program reviews, the Department is required to establish guidelines designed to ensure uniformity of practice in the conduct of program reviews.").

Ashland's claim that "FSA disregarded its own factual conclusion and, without explanation, failed to follow 34 C.F.R. 690.63(a)(1) (2021)" is nonsensical and completely lacks merit. Resp. Br. at 8. Formula 1, as expressly stated in 34 C.F.R. § 690.63(a)(1), is only utilized if the institution's academic calendar is "at least 30 weeks of instructional time". As

EDU001133

demonstrated herein, Ashland's Academic Calendar for its SCP program constituted only 24 weeks of instruction, requiring the usage of Formula 2.

### 3. SCP Students are Not Engaged in Academic Engagement Outside of the 12 Weeks of Instruction Per Semester.

Ashland claims that SCP students were engaged in academic engagement the week before "Week 1" or "Pre-week", the week after the last day of classes in "Week 12", and even after finals were submitted and grades were due.  Resp. Br. at 11.  Academic engagement includes "active participation by a student in an instructional activity related to the student's course of study."  34 C.F.R. § 600.2.  Academic engagement "must be meaningful in order to be used as the basis for complying with the Department's related requirements."  85 FR 54742-01.  Academic engagement further requires "active participation by a student in his or her learning, which … is a necessary requirement for academic engagement.  This concept of active participation—which cannot be demonstrated merely by documenting that a student has logged into an online system—is also vital to other regulatory requirements."  *See* 85 FR 54742-01.[6]  None of the conduct articulated by Ashland that takes place outside of the 12-week semester constitutes academic engagement.

First, Ashland students were not engaged in academic engagement prior to the start of "Week 1".  Ashland claims that during this time "instructors interact with the SCP students about the course syllabus, available resource materials, technology issues necessary to facilitate the delivery of course content, and any other academic matters necessary to initiate the course".  Resp. Br. p. 11; R-7 at 14.  Such assertions are not evidence of academic engagement.  However, as stated in Ashland's own Correctional Education Instructor Best Practices Checklist, the week

---

[6]     The Department's Final Rule on distance education in 34 C.F.R. § 600.2 became effective July 1, 2021, several years after Ashland was invited into the SCP program and almost two years after the review subject to this appeal.

EDU001134

prior to Week 1 is the institution's "Pre-week", during which "a welcome message is sent to all students." ED-5.  The Checklists' designation of a "Pre-week" demonstrates that it is prior to the first week of instruction.  Respondent's attempt to now recharacterize the "Pre-week" is without merit.  There is no evidence that students were required to take any actions or engage in active participation during this week.  Moreover, to the extent that any activity actually occurred on a student-by-student basis, such activity is optional academic counseling and advisement, which the Department has explicitly determined is not academic engagement.  *See* 34 C.F.R. § 600.2(iv).

Second, SCP students are also not engaged in academic engagement the week after "Week 12".  Ashland claims that during this time instructors "interact with the SCP students regarding any unfinished assignments and any other matters necessary for the SCP students to complete the course."  Resp. Br. p. 11; R-7 at 14.  Similar to the "Pre-week", there is no evidence that students are required to engage in any active participation during this week, and by Ashland's own published course catalog week 12 concludes the Academic Calendar.

Lastly, Ashland claims that SCP students are engaged in academic engagement after finals are submitted during which time "students who may have received an Incomplete for a variety of reasons including …technological malfunctions" submit missed assignments.  Rep. Br. p. 11.  As an initial matter, "technical support with instructional technology—does not constitute academic engagement."  *See* 85 FR 54742-01.  Ashland's assertions that instructors engaged in technological assistance in this week as well as the pre-week do not demonstrate academic engagement.  Further, Respondent does not make any assertions that every student enrolled in the SCP had "technological" malfunctions or had been granted incompletes.  By Respondent's own account during this week, finals have been completed, and the academic year is over.

EDU001135

Academic counseling and advisement that has occurred after the completion of the academic semester to a select number of students who had technological malfunctions and worked with instructors to resolve other matters that prevented them from completing the course does not constitute academic engagement.

Under Respondent's failed theory that its SCP program is "at-least thirty (30) weeks", Resp. Br. at 5, 6, the program has no logical stopping point and seemingly ends whenever each individual student decides to complete assignments. However, an institution's academic calendar does not change from student to student based on individual circumstances. *See In the Matter of Butte Academy of Beauty Culture*, *supra* at 1-3 (denying institution's claims that its program "was designed to include a degree of flexibility in the length of time a student may need to complete the program."). It is also worth noting that Ashland has never claimed that the pre-week or weeks after their traditional 16-week program similarly lengthen that program's Academic Calendar, as such claims would similarly lack merit. Respondent's convenient attempts to re-set its 12-week Academic Calendar, which was (1) identified in its original application to participate in the SCP Experiment, (2) plainly published in its course catalog, Correctional Education Instructor Best Practices Checklists and Course Syllabus, and (3) confirmed through numerous employee interviews by FSA staff during the program review, is violative of the Department's regulations and disadvantages students. The FPRD liabilities for Finding 1 should be affirmed in total.

## V.      CONCLUSION

**WHEREFORE,** in consideration of the foregoing, FSA respectfully requests that the Tribunal affirm the liabilities assessed in the FPRD for Finding 1, in the amount of

EDU001136

$6,131,790.46, plus any additional interest calculated at the time of decision, and that Ashland be ordered to pay that sum to the U.S. Department of Education in a manner as required by law.

Respectfully submitted,

*Razlya Brumfield*

Raziya Brumfield
OFFICE OF THE GENERAL COUNSEL
U.S. Department of Education
*Counsel for United States Department of Education*
*Federal Student Aid*

Dated:  March 6, 2023

19

EDU001137

**Office of Federal Student Aid**
**APPENDIX-LIST OF EXHIBITS (22-58-SP)**

| | |
|---|---|
| ED EXHIBIT 1 | Declaration of Mark Kreutzner, Senior Institutional Review Specialist |
| ED EXHIBIT 2 | Declaration of Leslie Orofino, Institutional Review Specialist |
| ED EXHIBIT 3 | September 16, 2022 FPRD |
| ED EXHIBIT 4 | Ashland's Academic Calendars for the 2019-2020 and 2020-2021 school years |
| ED EXHIBIT 5 | Ashland's Correctional Education Instructor Best Practices Checklists |
| ED EXHIBIT 6 | Course Syllabus of courses provided within Ashland's SCP program |
| ED EXHIBIT 7 | Mark Kreutzer's September 21, 2021 email to Kelly Liocano |
| ED EXHIBIT 8 | Cathy Britton's September 22, 2021  Response Email Mark Kreutzer |
| ED EXHIBIT 9 | Declaration of Michael Cagle, Acting Director, Policy Innovation and Dissemination Group |
| ED EXHIBIT 10 | Ashland's Phase 1 Application for SCP Experiment |
| ED EXHIBIT 11 | Department's January 21, 2016 Phase 1 Approval of Ashland's SCP Program |
| ED EXHIBIT 12 | Ashland's March 18, 2016 Response to Department's Questionnaire |
| ED EXHIBIT 13 | Department's June 28, 2016 Final Approval Letter of Ashland's SCP Program |
| ED EXHIBIT 14 | August 2016 PPA Amendment |
| ED EXHIBIT 15 | August 18, 2016 Welcome Letter |

EDU001138

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of March 2023, a true and correct copy of the foregoing Brief of Federal Student Aid was filed through OHA's electronic filing system and served by electronic mail on:

Jim Newbery, Esq.
Kalynn Wells, Esq.
Susan L. Deniker, Esq.
Steptoe & Johnson PLLC
700 Hurstbourne Parkway, Suite 115
Louisville, KY 40222
jimnewberry@steptoe-johnson.com;
kalynn.wells@steptoe-johnson.com
susan.deniker@steptoe-johnson.com

*Razlya Brumfield*
Raziya Brumfield

EDU001139