GOVERNMENT
EXHIBIT

**QQ**



**UNITED STATES DEPARTMENT OF EDUCATION**
OFFICE OF HEARINGS AND APPEALS
400 MARYLAND AVENUE, S.W.
WASHINGTON, D.C. 20202
TELEPHONE (202) 245-8300

In the Matter of

**Ashland University,**

Respondent.

**Docket No. 22-58-SP**

Federal Student Aid Proceeding

OPE-ID:  00301200

PRCN: 2021-4-05-30426

Appearances:  Kalynn G. Walls, Esq., Jim Newberry, Esq., and Susan Llewellyn Deniker, Esq.,
Steptoe & Johnson PLLC, for
Respondent Ashland University

Raziya Brumfield, Esq.
Office of the General Counsel, for
U.S. Department of Education, Federal Student Aid Office

Before:  Elizabeth Figueroa,  Chief Administrative Law Judge

## INITIAL DECISION

### I.  Introduction

#### A.  Summary of this Decision

This Decision upholds the findings and liabilities in the Final Program Review Determination (FPRD) that Respondent Ashland University (Ashland) has challenged in this matter.  Specifically, Findings 1 and 2 of the FPRD, for improper Pell packaging and return of Title IV funds, for which total liabilities in the amount of $6,131,790.46 have been assessed, are supported and, therefore, affirmed. 34 C.F.R. § 668.118(b).

#### B.  Procedural History of this Case

On October 26, 2022, Ashland, through its counsel, filed a Request for Review dated

October 24, 2022.  The request challenges Findings 1 and 2 of the FPRD issued by the Federal Student Aid Office (FSA) of the U.S. Department of Education (the Department) on September 16, 2022.

By Order Governing Proceeding issued on November 21, 2022, the Office of Hearings and Appeals (OHA) set deadlines by which the parties' briefs, including any reply brief, and any exhibits, were to be filed.

On January 21, 2023, Ashland filed a brief, in which it asserts that it is not responsible for those liabilities assessed in the FPRD based on Findings 1 and 2, together with Exhibits (Exh.) R-1 through R-9.  On March 6, 2023, FSA responded with a brief outlining the reasons that Findings 1 and 2 of the FPRD are supportable and should be upheld, together with Exhs. ED-1 through ED-15.  On March 20, 2023, Ashland filed a reply brief.

At Ashland's request, oral arguments were scheduled and, on May 11, 2023, the parties presented oral arguments.  Kalynn G. Walls, Esq., and  Jim Newberry, Esq., Steptoe and Johnson, PLLC, appeared for Ashland, accompanied by Carlos Campo, Ashland's President.  Raziya Brumfield, Esq., appeared for FSA, accompanied by Steve Finley, Esq., Office of the General Counsel for the U.S. Department of Education.

Following oral arguments, the parties' two requests to supplement the record were granted and they were allowed until June 9, 2023, by which to file supplemental exhibits.  On May 25, 2023, the parties filed Joint Exh. 1, which is the Program Review Report and the accompanying cover letter, appendices, and enclosures.  Additionally, on May 25, 2023, FSA filed FPRD Appendix A:  Student Sample to Program Review and FPRD Enclosure 3:  Documents for Student 1.

The issues having been fully briefed and argued, and the administrative record having closed on June 9, 2023, this matter is ripe for decision.

## II.      Jurisdiction

On September 16, 2022, FSA sent the FPRD to Ashland. By request for review dated October 24, 2022, Ashland, through counsel, requested review of the FPRD, pursuant to 20 U.S.C. § 1094(b) and 34 C.F.R. § 668.113.  Ashland's request for review was received by the Administrative Actions and Appeals Service Group, U.S. Department of Education (AAASG), on October 26, 2022, and was, therefore, timely filed within 45 days of Ashland's receipt of the FPRD, as required by 20 U.S.C. § 1094(b)(1) and 34 C.F.R. § 668.13(b). OHA has authority to hear this case. 20 U.S.C. § 1094(b); 34 C.F.R. §§  668.116(a) and 668.117; Secretary's Delegation of Authority dated July 2, 2009; and, 20 U.S.C. § 1234(a)(4). Jurisdiction is established.

## III.     Findings of Fact

Based on the evidence presented by the parties and the entire record, I make the following findings of fact:

EDU001398

1. Ashland is a private, nonprofit university, fully accredited by the Higher Learning Commission, and licensed as an institution of higher education by the Ohio Department of Higher Education.  Exhs. R-1 at 2 and 5.  All of Ashland's academic programs must be approved and reviewed by the Ohio Department of Higher Education.  Exh. R-3 at 2.

2. The Ohio Department of Higher Education authorized Ashland to offer programs of study that lead to the following degrees:  an Associate of Arts in Art, Criminal Justice, and General Studies; a Bachelor of Arts; a Bachelor of Fine Arts; a Bachelor of Music; a Bachelor of Science; a Bachelor of Science in Business Administration; a Bachelor of Science in Nursing; and, a Bachelor of Social Work.  Exh. R-1, Attachment A.

3. As of November 26, 2019, Ashland offered academic programs leading to the following degrees:  a Bachelor of Arts in Applied Communication; a Bachelor of Science in Interdisciplinary Studies; a Bachelor of Arts in Business Administration; an Associate of Arts in General Studies, and, an Associate of Arts in General Studies with a concentration in Business.  Exh. R-3 at 3, para. 12.

4. Ashland has operated a corrections education program since 1964.  Exh. R-1 at 2. Ashland serves more than 3,000 incarcerated students in 13 states and the District of Columbia.  Exh. R-3 at 2, para. 15.

5. Sometime well before 2015,  Ashland entered into a Program Participation Agreement with the Department to participate in Federal student aid programs. Sometime before 1992, Ashland's participation in Federal student aid programs included disbursing Pell Grant awards to incarcerated students.  However, in 1992, Pell Grant funding became unavailable to incarcerated students.  Exh. ED-12 at 1.

6. In 2015, the Department instituted the Second Chance Pell – Pell for Incarcerated Students Experiment  (SCP or SCP Experiment) under the Department of Education's Experimental Sites Initiative (ESI), which provides a limited waiver of the statutory prohibition on incarcerated students receiving  Pell Grants. Exh. ED-1 at 2, para. 5; Exh. ED- 9 at 1, para. 6; Exh. ED-14.

7. There were two phases to the SCP Experiment application process.  Exh. ED-9 at 2, para. 7.  In phase 1, institutions were required to submit letters of application listing the academic programs that the institutions were considering for inclusion in the SCP Experiment.  *Id*.  In phase 2, the institution was required to submit information on the academic programs the institution intended to offer to SCP students.  *Id*. at 2, para. 8.

8. In its phase 1 application, Ashland provided a "Listing of the academic programs for consideration."  Exh. ED-10 at 2.  Ashland stated that if the Department approved its participation in the SCP Experiment, Ashland would provide Associate Degrees in General Studies to students currently in its "educational program along with any new student that could qualify (*sic*)." *Id*.  Ashland went on to state that it operated certificate programs in Basic Business, Business Management, Office Skills, Retail Sales, Office

3

EDU001399

Management, Retail Management, and Retail Administration. *Id.*

9.  On January 21, 2016, FSA invited Ashland to participate in phase 2 of the application process, in which invitation FSA explained that phase 2 of the selection process would entail FSA's review of responses provided by applicants, including information submitted on academic programs that institutions intended to offer.  Exh. ED-11 at 1.

10. On March 18, 2016, upon applying to participate in the SCP, as part of phase 2 of the application process, Ashland explained that it had the "longest operating correctional post-secondary educational program."  Exh. ED-12 at 2.  Under the "Program Information" section of its application, Ashland stated that it would expand on the program it already offered to incarcerated students and proposed offering three levels of programming for incarcerated students under the SCP Experiment:  a certificate in Business Management and Office Management, an Associate of Arts Degree, and a Bachelor of Science Degree. Exh. ED- 9 at 2, para. 11; Exh. ED-12 at 3.  Ashland stated that the programs it already offered to incarcerated students encompassed 12-week semesters and that the three programs it proposed to offer to SCP students would "build upon each other and create a pathway for students to advance to the next level of post-secondary programs."  Exh. ED-12 at 3.  For each of those levels of programming, Ashland stated that classes would be offered in 12-week semesters.  Exh. ED-9 at 2 and 3, para. 1; Exh. ED-12 at 3, 4 and 5.

11. On June 28, 2016, the Department invited Ashland to participate in the SCP Experiment based on, among other things, information submitted by Ashland in the application process. Exh. ED-9 at 3, para. 12; Exh. ED-13.

12. In August 2016, Ashland and the Department executed a Program Participation Agreement Amendment, which set out the exemptions and requirements for participating in the SCP Experiment, including the requirement "that the program be credit-bearing and lead to a certificate or degree awarded by the Institution."  Exh. ED-9 at 3, para. 13; Exh. ED-14 at 3.

13. On August 18, 2016, the Department notified Ashland that it could begin implementation of the SCP Experiment for the 2016-2017 award year.  Exh. ED- 9 at 3, para. 14;  Exh. ED-15.

14. Since 2016, over 1,500 incarcerated SCP students have earned undergraduate degrees from Ashland.  Several SCP students have later earned graduate degrees.  Exh. R-3 at 4, para. 15.  As of February 2022, Ashland had approximately 2,200 SCP students pursuing degrees in five areas of study.  Exh. R-2, para. 16.

15. The award year for Ashland's traditional students consists of two  16-week semesters, with an academic calendar that provides at least 30 weeks of instructional time. Exh. R-2 at 2, para. 9; Exh. ED-4.

16. Ashland's SCP students' award years for 2019-2020 and 2020-2021 constituted two 12-

EDU001400

week semesters within a 24 -week academic year.  Exh. ED-1 at 5, paras. 12-16;  Exh. ED-2 at 5, para. 14.

17. The course delivery for SCP students is asynchronous, distance education, with 12 weeks of scheduled class instruction.  Due to their incarceration, SCP students have an alternative modality of instruction than non-SCP students in the same academic program and courses.  Exh. R-3 at 4, para. 18; Exh. R-5 at 2, para. 8.

18. Ashland does not set aside or distinguish modality of instruction to be the creation of a separate academic program.  Exh. R-3 at 3, para. 12.

19. SCP courses are required to and do have the same quality, assessments, learning outcomes, and requisites as their corresponding traditional courses.  Exh. R-2 at 2, para. 9; Exh. R-3 at 1, para. 16;  Exh. R-4, para. 10.  Additionally, course content, student learning objectives, amount of class time, resulting transcript entries, and the degrees earned by students are the same for both SCP and non-SCP students.  Exh. R-3 at 4-5, para. 19.

20. Additionally, Ashland's SCP students are required to receive the same number of credit hours and instruction time in their accelerated format as traditional students, equaling 1,500 minutes of out-of-classroom work by the student, or 150 to 180 minutes of independent or direct work per week for 15 weeks. Exh. R-2 at 2, paras. 9 and 11.

21. Courses offered to SCP students contain 12 modules, one module each week for 12 weeks.  Exh. ED-5.  The syllabi for English 100, English 102, Theatre Aesthetics, Art and Ideas, Latin American Lit in Translation, Lifetime Wellness all contain 12 modules, one module each week for 12 weeks. Exh. ED-6.

22. SCP students receive access to their devices two weeks before the start of their 12-week course of instruction.  Exh. R-6 at 3, para. 8.

23. SCP students receive access to course materials one week before course instruction begins.  Exh. R-6 at 3, para. 9.  During that pre-week,  a "send out welcome is sent to all students."  Exh. ED-5.

24.  Prior to the start of class instruction, instructors are encouraged to begin exchanges with students to prompt them to review syllabus, course materials, and resources.  Exh. R-5 at 2, para. 9.

25. SCP instructors must submit grades the week after the twelfth week of class instruction. However, SCP students may continue to submit assignments and instructors may continue to interact with SCP students to evaluate any unfinished assignments during the week grades are due.  Exh. R-5 at 3, para. 10.

26. SCP students who are assigned an "Incomplete" at the conclusion of their 12-week course retain access to their instructors as well as to course and resource materials to complete

EDU001401

their course work.  Exh. R-6 at 3, para. 12.

27. From September 13, 2021 through September 24, 2021, FSA's Chicago/Denver School Participation Division conducted a program review at Ashland.  Exh. ED-1 at 2, para. 6; Exh. ED-2 at 2, para. 6.  The focus of the review was to determine Ashland's compliance with Section 487(A(b) of the HEA.  Exh. ED-1 at 2, para. 6; Exh. ED-3.

28. The Department's program review consisted of examination of institutional records from the 2019-2020 and 2020-2021 award years, including academic calendars, Correctional Education Best Practices Checklists, and course syllabi of courses provided within the SCP Experiment during the 2019-2020 and 2020-2021 academic years, and interviews of several Ashland staff members.  Exh. ED-1 at 5, paras.12-19; Exh. ED-2;  Exhs. ED-5 and 6.

29. During the program review, Ashland staff informed the review team that each term/semester is defined as the total number of weeks of instructional time from the first day of class through the last day of class/exams.  Exh. ED-3 at 8.

30. On September 21, 2021, FSA asked Ashland to explain why its correction education curricula are designed as 12-week courses within a 16-week term, whether SCP students are permitted to take a 16-week course, and also whether non-incarcerated students can take a 12-week course.  Exh. ED-7.

31. Ashland provided the following responses to FSA's September 21, 2021 inquiry: Twelve-week, rather than the 16-week courses provided to traditional students, are provided to incarcerated students because 12-week courses work better in prison because they are shorter.  Exh. ED-1 at 6, para. 16; Exh. ED-2 at 5, para. 16.  Ashland's correctional education students may not take a 16-week course at Ashland.  Exh. ED-1 at 7, para. 20; Exh. ED-2 at 7, para. 20; Exh. ED-8.  A non-incarcerated student may take 12- week courses in programs other than the correctional education program.   Exh. ED-8.

32. On January 3, 2022,  FSA issued a Program Review Report (PRR), based on the program review it conducted from September 13, 2021 through September 24, 2021.  Joint Exh. 1; FPRD, OES Docket No. 2 at 4.  The focus of the PRR was to determine Ashland's compliance with certain regulations pertaining to its administration of the Federal Student Aid programs under Title IV of the Higher Education Act of 1965 (HEA), as amended, 20 U.S.C. § 1070 et seq. Joint Exh. 1 at 4.  In the PRR, FSA made 10 findings, two of which are the subject of findings in the FPRD that followed and that are the subject of this appeal.  In Finding 1 of the PRR, titled "Improper Pell Packaging,"  FSA concluded that Ashland's SCP students "have the same academic program content as other Ashland students but have a different structure to complete the academic program" that provided less than 30 weeks of instruction because SCP students' semesters are 12-week semesters within a 24-week Academic Calendar.  FSA concluded that Ashland had incorrectly calculated Pell Grant funds to SCP students based on its use of 30 weeks of instruction in its calculations.  Joint Exh. 1 at 6-7.   FSA instructed Ashland to complete

EDU001402

a full file review and to review and revise its Pell Grant packaging policies and procedures. FSA also stated that Ashland would be liable for any Pell Grant over awards as a result of this finding and that payment instructions would be provided in the Final Program Review Determination.  *Id*. at 7.  In Finding 2 of the PRR, FSA found that because Ashland incorrectly calculated the amount of the Pell Grant award for Student 1, who withdrew during a payment period of period of enrollment and was therefore only eligible for three-quarters of the Pell award amount, Ashland also incorrectly calculated the amount of Pell Grant award to be returned to the Department.  *Id*. at 8.  FSA stated that Ashland would be liable for any required Pell Grant return as a result of this over award and that payment instructions would follow in the FPRD.  *Id.*

33. On March 2, 2022, Ashland, through counsel, provided FSA with responses to the PRR. Exh. R-7.  Ashland's responses included general information about Ashland, specific information about the SCP, information not previously provided during the program review, and a regulatory analysis.  *Id*.  In its response, Ashland stated, among other things, that it does not agree with the review team's Finding 1 because it believes it employed the correct formula at the time of packaging.  *Id*. at 16.  Ashland also explained that, in an effort to be responsive to the actions required in the PRR, it had nonetheless prepared revised policies and procedures governing calculations in the event the Department rejects its position that it employed the correct formula.  *Id*.

## IV.    The Final Program Review Determination

On September 16, 2022, the Department, through FSA's Chicago/Denver School Participation Division,  issued the FPRD to Ashland, assessing Ashland a total amount of $6,133,058.19 in liabilities based on 10 findings of non-compliance, two of which are the subject of this appeal, Findings 1 and 2. Exh. ED-3 at 8-23. In Finding 1, FSA found that Ashland used an incorrect formula for Pell Grant award packaging during Award Years 2019-2020 and 2020-2021 for SCP students who were enrolled in academic programs that provided less than 30 weeks of instruction and therefore over awarded Pell Grant funds to SCP students.  *Id*. at 8; FPRD Appendix A, filed on May 25, 2023.  FSA calculated Ashland's liabilities for Finding 1 to be $6,131,790.46, inclusive of principal and cost of funds. Exh. ED-3 at 13 and 23.  In Finding 2, FSA found that Ashland incorrectly calculated the amount of a Pell Grant earned by one student (Student 1) who withdrew during a payment period or period of enrollment because it had miscalculated the Pell Grant award by using Formula 1 rather than Formula 2 or 3 when packaging the grant award.  *Id*. at 13; FPRD Enclosure 3, filed on May 25, 2023.  FSA  did not assess Ashland any  liability for Finding 2. Exh. ED-3 at  21 and 23.

## V.    The Parties' Arguments

Ashland argues that FSA's determination is not supportable because it is based on erroneous factual and legal conclusions and misapplication of a regulatory standard that did not exist during the review periods at issue.  Specifically, Ashland asserts that FSA erroneously concluded that Ashland's Second Chance Pell Program was not a part of or the same as its traditional program, but separate and apart from its traditional program and less than the 30 weeks in length as is required  for use of Formula 1 when calculating Pell Grant awards.  To the contrary,

7

EDU001403

Ashland asserts, SCP students are enrolled in the same academic program as traditional Ashland students,  which program provides more than 30 weeks of instruction with the minimum semester of 15 weeks, and FSA required Ashland to apply the same financial aid formula for all students in the same program.  Ashland further asserts, in the alternative, that its Second Chance Pell Program was more than 30 weeks in length, no different than its traditional program, and, therefore, it properly calculated  Pell Grant awards for the Second Chance Pell Program using Formula 1.  In support of its alternative assertion that SCP courses were 15 weeks or more, Ashland contends that the regulatory standard in 34 C.F.R. § 690.63(1)(ii) that FSA has applied in  requiring use of Formula 1 did not exist during the review periods at issue, but was put in place in 2021, and that FSA has applied the regulation's 2021 standard  improperly, *ex post facto*, yielding an erroneous conclusion that SCP courses were shorter than 15 weeks.  Finally, Ashland argues that even if the inapplicable standard is applied, SCP students received 15 weeks of instruction such that its use of Formula 1 was proper.  Additionally, with respect to Finding 2, Ashland asserts that, for all the same reason its use of Formula 1 was correct, its calculation for return of funds upon Student 1's withdrawal correctly employed Formula 1.

The Department counters that it correctly found that the liabilities it assessed in Finding 1 are supported because Ashland's Second Chance Pell Program was less than 30 weeks in length and, as a result, Pell Grant Awards could not be calculated using Formula 1, as Ashland did. Rather, 34 C.F.R. § 690.63(1)(ii) requires that Formula 1 be used only if the program uses an academic calendar that provides at least 30 weeks of instructional time.  FSA asserts that because Ashland's Second Chance Pell Program did not provide at least 30 weeks of instructional time, Ashland should have used Formula 2, under which Pell Grant awards to Second Chance Program students would have been significantly smaller.  FSA calculates Ashland's misuse of Formula 1 to have resulted in $6,131,790.46  in over awards of Pell Grants as a result of its incorrect use of Formula 1.

## VI.    Issues Presented

Based on the challenges to the FPRD that Ashland has advanced, and the arguments made by the parties, the issues presented are as follows:

1.  With respect to Findings 1 and 2, are the liabilities assessed in the FPRD for Ashland's miscalculation of Pell Grant awards for Award Years 2019-2020 and 2020-2021 for 32 Second Chance Pell Program students and for one student who withdrew during a payment period or period of enrollment supportable in fact and law?

2.  With respect to Finding 1, did FSA incorrectly apply a version of 34 C.F.R. § 690.63(1)(ii) not in effect at the time of the award years under review when determining that Ashland's Second Chance Pell Program's academic programs were less than 30 weeks in length and, consequently, improperly determine that Ashland incorrectly used Formula 1?

3.  With respect to Finding 1, were the 32 students who received Pell Grant awards for Award Years 2019-2020 and 2020-2021 under the Second Chance Pell Program ineligible for the full grant amounts awarded to them because their academic programs were less than 30 weeks in length and, consequently, Ashland incorrectly used Formula 1 when calculating

EDU001404

their Pell Grant awards?

4.  With respect to Finding 1, has Ashland met its burden of proving that it complied with all program requirements and therefore should not be liable for $6,131,790.46 in Pell Grant awards for which the Department seeks return based on its finding that Ashland incorrectly used Formula 1 when calculating Pell Grant awards?

5.  With respect to Finding 2, has Ashland met its burden of proving  that it complied with all program requirements and correctly calculated the amount of a Pell Grant earned by one student who withdrew during a payment period or period of enrollment?

In its brief, FSA asserts that improper packaging of Pell Grant awards harmed SCP students because availability of Pell Grant awards to students is diminished by over awards.  As Ashland points out, any harm to students was not asserted or established in the Program Review process and not noticed in the FPRD.  Additionally, as Ashland also points out, the relief sought by FSA here does not cure the alleged harm to students.  For these reasons, the issue of harm to SCP students raised by FSA has not been included as an issue or addressed in  the Findings of Facts or elsewhere in this decision.

In reviewing the issues raised in this matter, no previous decisions issued by the Secretary that address the issues concerning calculation of Pell Grant awards raised herein were located.

## VII.    Discussion and Conclusions of Law

### Burden of Proof

In Subpart H appeals of final program review determinations, the institution requesting review of the final program review determination bears the burden of proving that expenditures questioned or disallowed were proper and that the institution complied with program requirements. 34 C.F.R. §§ 668.116(d)(1) and (2).

Ashland has the burden of proving that its packaging of Pell Grant Program awards was proper and in compliance with program requirements and that it should not be liable for the amount of Pell Grant over awards for which recovery FSA seeks in the FPRD.  *Id*.

### General requirements of the Pell Grant Program

The Federal Pell Grant Program is a grant program authorized by Title IV-A-1 of the HEA under which grants are awarded to help financially needy, low-income students meet the cost of their postsecondary education.  20 U.S.C. § 10701(a)(1); 34 C.F.R. §§ 668.2 and  690.1.  Federal Pell Grants are awarded only to eligible students who are attending eligible institutions of higher education. 20 U.S.C. § 1070a.  Generally, Pell Grants are administered and distributed by the institution which the student is attending. 20 U.S.C. § 1070a(a).

EDU001405

Eligibility for a Pell Grant Program award is based on three components:  (1) eligibility of the institution, (2)  eligibility of the educational program, and (3) eligibility of the student. 34 C.F.R. §§ 600.1, 668.8, and 690.61-690.63. Each of these eligibility requirements must be satisfied before determining the amount of a Pell Grant award.  *Id*.

An institution that wishes to establish its eligibility to participate in any HEA program must submit an application to the Secretary for a determination that it qualifies as an eligible institution. 34 C.F.R. § 600.20.  If the Secretary determines that an applicant institution satisfies all the statutory and regulatory eligibility requirements, the Secretary signs the institution's program participation agreement for purposes of allowing the institution to participate in Title IV, HEA programs.  34 C.F.R. § 600.10; 34 C.F.R. Part 668.  A participating institution is an eligible institution that meets the standards for participation in Title IV, HEA programs in Subpart B and has a current program participation agreement with the Secretary.  34 C.F.R. § 668.2.  By entering into a program participation agreement, the institution agrees, among other things, that it will comply with all applicable statutory and regulatory requirements for Title IV of the HEA, as well as any agreements entered into under the authority of statutes applicable to Title IV of the HEA. 34 C.F.R. § 668.14(b).

With respect to eligibility of an educational program, an educational program is a legally authorized postsecondary program of organized instruction or study that leads to an academic, professional, or vocational degree, or certificate, or other recognized educational credential or is a comprehensive transitional or postsecondary program, as described in 34 C.F.R. Part 668, Subpart O.  34 C.F.R. § 600.2.  An educational program qualifies as an eligible program for purposes of the Federal Pell Grant Program only if it is provided by a participating institution and satisfies other regulatory requirements.  34 C.F.R. § 668.8(a).  Included in the requirements that a participating institution must meet are that each course within the educational program is acceptable for full credit toward that institution's associate degree, bachelor's degree, professional degree, or equivalent degree as determined by the Secretary.  34 C.F.R. § 668.8(k).

With respect to eligibility of the student, an institution may pay a Federal Pell Grant to an eligible student only after it determines that the student qualifies as an eligible student under 34 C.F. R. Part 668, Subpart C and is enrolled in an eligible program as an undergraduate student.  34 C.F.R. §§ 690.75(a)(1) and (2).  To qualify as an eligible student, among other things, a student must be enrolled in an eligible program at an eligible institution and must not have earned a bachelor's, graduate, or professional degree. 34 C.F.R. §§ 668.31 and 668.32. Additionally, the student  must display exceptional financial need. 20 U.S.C. § 1070a; 34 C.F.R. §§ 668.32(c)(2) and 690.6.

Under the statute and regulations governing Pell Grant awards, a student who is incarcerated in a Federal or State penal institution is ineligible to receive a Federal Pell Grant.  20 U.S.C. § 1070a(b)(6); 34 C.F.R. § 668.32(c)(2)(ii).  However, in 2015, in accordance with the Secretary's waiver authority under § 487A(b) of the HEA,  the Department instituted the SCP, which provides a limited waiver of the statutory provision that renders students who are incarcerated ineligible for Federal Pell Grants.  80 Fed. Reg. 45964-66 (Aug. 3, 2015).

It is undisputed that Ashland meets the general requirements of the Pell Grant Program.

EDU001406

Ashland is an eligible institution within the meaning of governing Pell Grant regulations. It executed a Program Participation Agreement with the Department.

It also is undisputed that the programs that SCP students enrolled in were determined to be eligible programs for purposes of the Federal Pell Grant Program.

The dispute between the parties does not involve institution or educational program eligibility for Pell Grants.  Nor does the dispute involve SCP student eligibility for Pell Grants. Rather, the dispute involves how Pell Grant awards were calculated and the amounts of Pell Grant awards for SCP students for Award Years 2019-2020 and 2020-2021.

**Calculation of Pell Grant Awards**

For a student to receive a Pell Grant for an award year, the student must submit a valid Student Aid Report (SAR) to his or her school.  34 C.F.R. § 690.61.  A SAR is a report provided to an applicant by the Secretary showing his or her free application for Federal student aid (FAFSA) information, which is used to determine an applicant's eligibility for Title IV, HEA programs. 34 C.F.R. § 668.2.

Once a student displays exceptional financial need through submission of the FAFSA, the amount of Pell Grant award is calculated. 34 C.F.R. § 690.61.  The amount of a student's Pell Grant for an academic year is based upon the payment and disbursement schedules published by the Secretary for each award year.  34 C.F.R. § 690.62.

Pell Grant awards are calculated based on whether the program uses an academic calendar that provides at least 30 weeks of instructional time in two semesters or less than 30 weeks of instructional time in two semesters.  34 C.F.R. § 690.63.  Based on that enrollment status, the student's annual award is determined based on either a payment schedule for full-time students or a disbursement schedule for three-quarter-time, half-time, or less-than-half-time students.  34 C.F.R. § 690.63(b).

Payment schedules for annual awards are based on the formulas set out in 34 C.F.R. § 690.63, which  provides several formulas for calculating Federal Pell Grants, two of which formulas are at issue in this case and referred to as Formula 1 and Formula 2.  34 C.F.R. §§ 690.63(a)(1) and (a)(2).  Each of the formulas is based on the number of weeks of instructional time within an institution's academic calendar of the program in which the student is enrolled. *Id.*

Only Formulas 1 and 2 are at issue in this case.[1]  Formula 1 applies only to  programs that use an academic calendar that provides at least 30 weeks of instructional time in two semesters. 34 C.F.R. § 690.63(a)(1).  Formula 2 applies to programs that provide less than 30 weeks of instructional time when the student is enrolled in a program that measures progress in credit hours,

---

[1] In the FPRD, FSA stated that Ashland also could have used Formula 3 but that it determined that Formula 2 was more appropriate because Formula 3 applies to institutions that do not use standard terms and Ashland uses standard terms.  Exh. ED-3 at 10 and 13.

11

EDU001407

is offered in semesters, trimesters or quarters, and requires the student to enroll in at least 12 credit hours in each term in the award year to qualify as a full-time student.  34 C.F.R. § 690.63(a)(2).

A week is defined as a consecutive seven-day period.  34 C.F.R. § 668.3(b). A week of instructional time is defined as a consecutive seven-day period "in which at least one day of regularly scheduled instruction or examination occurs or, after the last scheduled day of classes for a term or payment period, at least one day of study for final examination occurs."  34 C.F.R. §§ 668.3(b)(1) and (2)(2019).  Instructional time does not include vacation periods, homework, or periods of orientation or counseling.  34 C.F.R. § 668.3(b)(3)(2019).

Calculations are then made by determining the student's enrollment status for the term and then, based on that enrollment status, determining the student's award from the Payment Schedule for full-time students or the Disbursement Schedule for three-quarter time, half-time, or less-than-half time students.  34 C.F.R. §§ 690.63 (b) and (c).  This calculation  is done by dividing the number of weeks of instructional time offered in the program's fall and spring semesters by 30 weeks, the minimal number of weeks allowed for a program's academic year.  34 C.F.R. § 668.3(a)(1)(i).

### Calculation of Pell Grant Awards for Ashland's SCP Students

FSA found that Ashland incorrectly used Pell Grant Formula 1 in award packaging during Award Years 2019-2020 and 2020-2021 for SCP students who were enrolled in academic programs that provided less than 30 weeks of instruction in an academic year, but for whom Ashland had nonetheless used Formula 1 in calculating awards. Based on this finding, FSA concluded that Ashland  over awarded Pell Grant funds to SCP students because it should have employed either Pell Formula 2 or 3, not Formula 1, as required under 34 C.F.R. §§ 690.63(c) and (d).  Exh. ED-3 at 8; FPRD Appendix A, filed on May 25, 2023.  FSA calculated Ashland's liabilities for these over awards to be $6,131,790.46. Exh. ED-3 at 13 and 23.

Ashland contends that it correctly used Formula 1 in calculating Pell Grant awards for SCP students and, therefore, the liability assessed by FSA should be eliminated in its entirety. Ashland primarily argues that it correctly used Formula 1 because courses provided to SCP students are not part of a stand-alone educational program. Rather, courses provided to SCP students are part of Ashland's already existing five educational programs authorized by the Ohio Department of Higher Education, which programs use an academic calendar with at least 30 weeks of instructional time in two semesters. Ashland  also points to  FSA's requirement that it  treat SCP students the same as students at its traditional campus and that the programs provided to SCP students are the same as those offered to students at Ashland's traditional campus, albeit in compressed versions.  Ashland argues, in the alternative, that it correctly used Formula 1 to calculate Pell Grant awards for SCP students because SCP students received 15 weeks of instruction when pre-class and post-class activities are taken into account.

FSA counters that it correctly found that the liabilities it assessed Ashland for misapplying Formula 1 are supported because Ashland's Second Chance Pell Program was less than 30 weeks in length and, as a result, Pell Grant Awards could not be calculated using Formula 1, as Ashland did.  Rather, FSA argues,  34 C.F.R. § 690.63(1)(ii) requires that Formula 1 be used only if the

EDU001408

program uses an academic calendar that provides at least 30 weeks of instructional time.  FSA asserts that because Ashland's Second Chance Program did not provide at least 30 weeks of instructional time, Ashland should have used Formula 2, under which Pell Grant awards to Second Chance Program students would have been significantly smaller.  FSA calculates Ashland's misuse of Formula 1 to have resulted in $6,131,790.46  in over awards of Pell Grants as a result of its incorrect use of Formula 1.

In its arguments, Ashland asks that the use of the term "program" by Ashland staff when describing the SCP Experiment to FSA during the PRR be ignored; that the use of SCP syllabi and class schedules be disregarded; and, that the best practices list for SCP instructors  be disregarded because they are not admissions of fact that can be considered as evidence that the SCP was a separate  educational program, as FSA argues.  Excluding Ashland staff's statements during the PRR that characterized SCP as a program is appropriate and I will not consider any portions of staff's statements that characterized SCP as a program.  *See In re Boricua College*, Dkt. No. 19-52-SP, U.S. Dep't of Educ. (Decision of the Secretary) (Aug. 23, 2021) (An inartful statement made by an institution's staff without the benefit of legal counsel does not bind or prejudice the institution.  The statement is not an admission of fact, but a tentative agreement with FSA's interpretation of what constituted an "additional location.")

But disregarding materials such as course syllabi, class schedules, and best practices lists used by SCP instructors for the purpose of determining whether Pell Grant awards were properly packaged using Formula 1, as Ashland requests, would be inappropriate.  Those materials were considered by FSA during the PRR and the resulting FPRD and, at least in part, formed the basis for the findings in both the PRR and FPRD.  They are relevant for at least the purpose of explaining the basis for those findings.  Both parties have argued the material's relevance (and irrelevance) and have been provided opportunity to counter the materials with arguments and evidence.  Therefore, those materials will not be disregarded in considering the issues raised in this case but will be weighed in considering the evidence.

Concisely put, the parties' dispute over the amounts of Pell Grant awards concerns which formula Ashland should use in calculating SCP students' Pell Grant awards.  The parties agree that only Formulas 1 and 2 are at issue in this case.  Formula 1 is to be used to calculate Pell awards  if the program's academic calendar is "at least 30 weeks of instructional time."  34 C.F.R. §§ 690.63(a)(i) and 690.63(b).  Under Formula 1, students receive 100% of their eligible Pell Grant award. 34 C.F.R. § 690.63(a).  Formula 2 must be used if the program's academic year is less than 30 weeks of instructional time.  34 C.F.R. § 690.63(a)(2).  Under Formula 2, students receive a prorated portion of their total Pell eligibility award amount because the program has less than 30 weeks of instructional time. 34 C.F.R. § 690.63(b).

Ashland used Formula 1 when calculating grants for SCP students.  FSA asserts that only Formula 2 applies.  It is the difference between calculations under Formulas 1 and 2 that gives rise to the liability at issue in this case.  Ashland does not dispute the requirements or consequences of either Formula 1 or 2 but makes a multi-fold argument as to why it correctly used Formula 1 rather than Formula 2 to calculate Pell Grant awards for its SCP students.

First and foremost,  Ashland argues that FSA's regulations dictate which formula applies is driven by the number of weeks in the academic year of the programs that have been duly

13

authorized by the Ohio Department of Higher Education under which a course falls, not the courses themselves because they are not the educational program.  The starting point of Ashland's argument is that the educational programs it offers to SCP students are the same programs offered to students at its traditional campus, albeit in different modalities.  Ashland adds to this argument its assertion that FSA required it to treat traditional and SCP students the same and, therefore, courses cover the same content, albeit in a different modality and more compressed  or accelerated format for SCP students. Ashland further argues that FSA has conflated individual class schedules with program length requirements. In sum, Ashland contends that because SCP's 12-week courses covered the same content and were a part of educational programs in Ashland's traditional campus 16-week long semesters, not the separate program FSA contends, they must be treated, for Pell Grant purposes, just as if they were part of its traditional program with an academic calendar of 16-week semesters.

FSA counters that the specific language of Department regulations concerning the numbers of weeks of instructional time in an academic year controls how Pell Grants must be calculated and that  educational courses Ashland offered to SCP students were only 12 weeks in length and, therefore, only Formula 2 can apply.  Specifically, as explained in the FPRD, FSA used the number of weeks of instructional time to determine the length of a term/semester and excluded periods of orientation, counseling, homework, vacation, or other activity not related to class preparation or examination, citing to Volume 3 of the 2019-2020 and 2020-2021 Federal Student Aid Handbook and 34 C.F.R. § 668.3(b).  FSA concluded that because the number of weeks of instructional time for SCP's standard term was less than 30 weeks, Ashland was required to use either Pell Formula 2 or 3.

In support of its use of Formula 1, Ashland explains that under 34 C.F.R. § 690.63(a)(1) it was required to undertake a two-step analysis in calculating Pell Grant awards.  First, it was required to determine if the student applicant was enrolled in an eligible program.  Second, it was required to determine whether there were at least 30 weeks of instructional time or less than 30 weeks of instructional time in the eligible program in which the student was enrolled.   Ashland argues that it correctly determined that SCP students were enrolled in an eligible program and that it correctly determined the eligible program contained 30 weeks of instructional time because SCP courses are a part of Ashland's traditional program that operates on a 30-week calendar year. Alternatively, Ashland argues that SCP's academic year contained 30 weeks of instructional time. Based on that two-step analysis, Ashland concluded that it should use Formula 1, as set out in 34 C.F.R. § 690.63(b), to calculate Pell Grant awards for SCP students.

Ashland argues that 34 C.F.R. § 668.3 defines academic year by the program of study and that SCP student enrollments must be considered 15-week courses because they are part of the same academic programs offered through its traditional program that result in the degree programs approved by the Ohio Department of Higher Education. Ashland goes on to argue that FSA has conflated program of study and course enrollment, yielding a determination by the Department that disregards its own regulations that require Pell Grants to be  awarded to educational programs that have been determined eligible for participation in the Pell Grant program.

Ashland's argument that the degree programs authorized by the Ohio Department of Higher Education define the academic program for Pell Grant calculation purposes is not

14

EDU001410

persuasive.  Ashland correctly points out that record evidence shows that SCP course offerings are a part of Ashland's traditional academic programs in the sense that studies of traditional and SCP students fall within the same associate or bachelor's degree programs that have been approved by the Ohio Department of Higher Education.  However, the first step in the analysis under § 690.63(a)(1) requires the institution to determine if the student was enrolled in an "eligible program."  An "eligible program" for Pell Grant purposes is not synonymous with academic programs the Ohio Department of Higher Education has authorized.

For Pell Grant purposes, to qualify as an eligible program, an institution must not only provide authorized degree programs, but also must provide instructional time in weeks as defined by 34 C.F.R. § 668.8(b), as well as meet other requirements.  Under 34 C.F.R. § 668.8(b)(2), the Secretary defines week as a consecutive seven-day period.  Under 34 C.F.R. § 668.8(b)(3)(i), the Secretary considers that an institution provides one week of instructional time in an academic program during any week the institution provides at least one day of regularly scheduled instruction or examinations, or after the last scheduled day of classes for a term or a payment period, at least one day of study for final examinations.  Instructional time does not include any vacation periods, homework, or periods of orientation or counseling. 34 C.F.R. § 668.8(b)(3)(ii).

Ashland further argues that FSA required Ashland to use Formula 1 for SCP students since they were all enrolled in educational programs legally authorized by the Ohio Department of Education and in which all other students' Pell awards were calculated using Formula 1.  In support of its argument, Ashland cites to language in the FSA Handbook, which reads, in pertinent part, as follows:

> Every eligible program must have a defined academic year.
>
> A school may treat two versions of the same academic program (day and night, for example,) as separate programs and define different academic years for each version. Although a school may have different academic years for different programs, it must use the same academic year definition for **all** FSA awards for students enrolled in a particular program, and for all other FSA program purposes.

Exh. R-4 at 8-9 (emphasis in original).

Here, too, Ashland conflates "academic program" with "eligible program."  Record evidence establishes that the SCP Experiment was determined to be an eligible program for Title IV, HEA program purposes. Record evidence also establishes that this eligible program had a defined academic calendar year that consisted of two 12-week semesters within a 24-week academic calendar and that the 24-week academic year was established at the onset of Ashland's application for participation in the SCP Experiment.

In further support of its argument that the SCP Experiment was not a program unto itself but part of Ashland's traditional 30-week academic program, Ashland accurately states that FSA's review team, in the PRR, concluded that SCP students have the same academic program content as other Ashland students but a different structure to complete the academic program. However, the review team's conclusion must be read in the context of other conclusions in the PRR.

15

Following this conclusion in the PRR, FSA goes on to conclude that SCP students were provided less than 30 weeks of instruction because SCP students' semesters were 12-week semesters within a 24-week Academic Calendar. Joint Exh. 1 at 6-7.

The reasons Ashland has provided for using Formula 1 in calculating Pell Grant awards for SCP students do not square with Ashland's application for and participation in the SCP Experiment.  Rather, Ashland's SCP application and participation history establish that Ashland intended from the start to offer and did, in fact, provide 12-week semesters to SCP students.  Under these circumstances, the Pell Grant award regulatory scheme does not allow for use of Formula 1. To allow Ashland's use of Formula 1 for 12-week semesters would require ignoring the regulatory definitions of "academic year," and "instructional time," disregarding the Program Participation Agreement and the application that precipitated that agreement, and reading into the regulatory definitions and Pell Grant award formulas terms and allowances for activities that are not included in but inconsistent with the regulations.

**Length of Second Chance Program's Semesters**

Alternatively, Ashland contends that SCP's academic year contained 30 weeks of instructional time.  Ashland argues that even if its use of Formula 1 was not appropriate because the 30-week academic calendar year of its traditional program was not applicable to SCP students, Ashland is still entitled to use Formula 1 to compute Pell awards for SCP students because the programs in which SCP students participate meet the required 30-week academic year, with two 15-week semesters.  In support of its argument that SCP's academic year had 30 weeks and therefore fit within the requirements of Formula 1, Ashland asserts that course activities that occur before course instruction begins and after course instruction ends serve to extend the 12-week SCP courses to 15 weeks. Relatedly, Ashland argues that FSA mistakenly relies on a regulatory standard under 34 C.F.R. § 690.63 and related definition for "academic engagement" under 34 C.F.R. § 600.2 (2021) that did not exist during the award years at issue. Additionally, Ashland characterizes SCP course delivery as accelerated or compressed and suggests that the traditional campus's longer semester of 15 or 16 weeks is covered in SCP compressed semesters.

FSA counters that the activities Ashland relies on to demonstrate SCP courses' 12 weeks of instructional time should be extended do not meet the definition of "instructional week" provided in 34 C.F.R. §§ 668.3(b)(1)-(2)(2019) and required by 34 C.F.R. §§ 690.63(a) and (b), and, therefore, those activities do not serve to extend the 12-week semesters.

To show its SCP semesters run 15 weeks, Ashland points to  course-related activities offered before and after the 12-weeks of course instruction provided in each course.  Namely, Ashland identifies the two weeks before the start of the 12-week course of instruction in which students receive their devices; the pre-week before course instruction begins during which students receive course materials and a welcome from their instructors; and, the week after the twelfth week of class instruction where students may continue to submit assignments and instructors may interact with students to evaluate assignments.

16

EDU001412

The starting point for determining whether the activities identified by Ashland fall within the definition of instructional time and thereby can be counted as additional weeks of an academic year are the regulatory definitions of "week" and "a week of instructional time."  For purposes of determining the number of weeks in an academic year for a program of study:

(1)    A week is a consecutive seven-day period;

(2)    A week of instructional time is any week in which at least one day of regularly scheduled instruction or examinations occurs or, after the last scheduled day of classes for a term or payment period, at least one day of study for final examinations occurs; and

(3)    Instructional time does not include any vacation periods, homework, or periods of orientation or counseling.

34 C.F.R. § 668.3(b) (2019).

Neither the pre-course nor the post-course activities identified by Ashland in support of its contention that the SCP 12-week course is really a 15-week course suffice to render it a 15-week course fall within the definition of instructional time.  Rather, the pre-course and post-course activities identified by Ashland are closer to the orientation or counseling activities excluded under the definition of instructional time.  34 C.F.R. § 668.3(b)(3)(2019).

Ashland is correct that the definition of "week of instructional time" in  34 C.F.R. § 668.3(b) was amended in 2021 to include a standard of "academic engagement," as was  the definition of "academic engagement" set out in 34 C.F.R. § 600.2 added in July 2021, and that neither became effective until after the two school award years at issue here (2019-2020 and 2020-2021). [2]

Effective July 1, 2021, the definition of "week of instructional time" was amended to include a provision on distance education:

In a program offered using asynchronous coursework through distance education or correspondence courses, the institution makes available the instructional materials, other resources, and instructor support necessary for academic engagement and completion of course objectives; and

In a program using asynchronous coursework through distance education, the institution expects enrolled students to perform educational activities demonstrating academic engagement during the week; and

Instructional time does not include any scheduled breaks and activities not included in the definition of "academic engagement in 34 C.F.R. 600.2, or periods of orientation or counseling.

---

[2] In its brief, FSA acknowledges that this amendment became effective July 1, 2021.  Brief of Federal Student Aid at 17, FN 6.

17

EDU001413

Docket No.:  22-58-SP

34 C.F.R.  §§ 668.3(ii)(A) and B(3); 85 Fed. Reg. 54814 (Sept. 2, 2020).

The definition of "academic engagement," referred to in the amendment to 34 C.F.R. § 668.3(b) set out immediately above, was added to 34 C.F.R. § 600.2 and also became effective on July 1, 2021. 85 Fed. Reg. 54808 (Sept. 2, 2020).  The definition of "academic engagement" set out in 34 C.F.R. § 600.2 (2021) reads as follows:

> Academic engagement: Active participation by a student in an instructional activity related to the student's course of study that—
> (1) Is defined by the institution in accordance with any applicable requirements of its State or accrediting agency;
>
> (2) Includes, but is not limited to—
> (i) Attending a synchronous class, lecture, recitation, or field or laboratory activity, physically or online, where there is an opportunity for interaction between the instructor and students;
> (ii) Submitting an academic assignment;
> (iii) Taking an assessment or an exam;
> (iv) Participating in an interactive tutorial, webinar, or other interactive computer-assisted instruction;
> (v) Participating in a study group, group project, or an online discussion that is assigned by the institution; or
> (vi) Interacting with an instructor about academic matters; and
>
> (3) Does not include, for example—
> (i) Living in institutional housing;
> (ii) Participating in the institution's meal plan;
> (iii) Logging into an online class or tutorial without any further participation; or
> (iv) Participating in academic counseling or advisement.

Upon amending the regulations to include this definition, the Department noted that it was doing so in recognition that student academic engagement can take on different forms, including interactive courses and computer instruction. 85 Fed. Reg. 54742-54743 (Sept. 2, 2020). The Department also noted that the definition was added to keep pace with outdated technology and teaching methods and to focus on competency and skills, not face time, while providing for safeguards to ensure regular interaction.  *Id*.

Ashland correctly argues that the "academic engagement" standard set out in 34 C.F.R. § 668.3(b) and definition set out in 34 C.F.R. § 600.2 should not be applied because both regulations clearly state they are effective July 1, 2021, and the award years at issue here preceded July 1, 2021.

Additionally, Ashland suggests that SCP 12-week courses should be considered 15-week courses because they cover the same content and include the same amount of instructional time as

18

EDU001414

their counterpart traditional courses, albeit in an accelerated or compressed delivery mode. Evidence submitted by Ashland, including affidavits from school administrators and syllabi, demonstrates that at least some SCP courses covered the same content as the content in traditional courses, albeit on an accelerated, 12-week timeline, and that the 12-week modules' instructional time may have been equivalent to the traditional courses' instructional time, albeit on at an accelerated pace.  Although Ashland submitted evidence to show what the Ohio Department of Higher Education considers as an accelerated program delivery mode, Exh. R-3 at 4, para. 4, Ashland has not provided authority that allows for extension of an academic year for accelerated or compressed courses for Title IV, HEA funding purposes.

Department regulations do not provide for calculating weeks of instructional time for purposes of an academic calendar based on course content or accelerated or compressed delivery time.  Rather, the regulations clearly state that Pell Grant awards are calculated based on whether the program uses an academic calendar that provides at least 30 weeks of instructional time in two semesters or less than 30 weeks of instructional time in two semesters.  34 C.F.R. § 690.63. Department regulations are also clear that an academic year for a program of study must include a minimum of 30 weeks of instructional time for a program offered in credit hours and, for an undergraduate program, an amount of instructional time whereby a full-time student is expected to complete at least 24 semester hours for a program measured in credit hours.  34 C.F.R. § 668.3.

Accordingly, I must conclude that the evidence supports FSA's finding that Ashland provided two semesters,  12-weeks in length, to SCP students and, therefore, Formula 2, not Formula 1, was the appropriate formula for calculation of Pell Grant awards.

## Calculation of Pell Grant for Student 1

In Finding 2, FSA found that Ashland miscalculated the amount of Pell Grant to be returned for Student 1, who withdrew before completing the course in which he was enrolled.  Finding 2  is also based on FSA's determination in Finding 1 that Ashland improperly used Formula 1 in Pell Grant award packaging.  Because Ashland incorrectly awarded Student 1 a Pell Grant amount based on Formula 1, rather than Formula 2 or 3, Ashland also incorrectly calculated the amount of funds to be returned upon Student 1's withdrawal because it used the over award Pell amount improperly calculated in the first instance.    Exh. ED-3 at 13.  FSA assessed no liability with respect to Finding 2.  Exh. ED-3 at 21 and 23.

When a recipient of a Pell Grant withdraws from an institution during a payment period or period of enrollment in which the recipient began attendance, the institution must calculate the amount of the Pell Grant that the student earned as of the student's withdrawal date in accordance with the calculation formula provided in 34 C.F.R. § 668.22(e).  34 C.F.R. § 668.22(a)(1).  The unearned amount of the Pell Grant award to be returned to the Department is calculated by subtracting the amount of the award earned by the student calculated under 34 C.F.R. § 668.22(e) from the amount  that was disbursed to the student as of the date of the institution's determination that the student withdrew. 34 C.F.R. § 668.22(e)(4).

EDU001415

In opposition to Finding 2, Ashland does not dispute that Student 1 received a Pell Grant or that Student 1 withdrew during the enrollment period but argues only that Student 1's Pell Grant amount was properly calculated employing Formula 1, for the same reasons advanced in its arguments concerning Pell Grant packaging on Finding 1.

For the same reasons that I rejected Ashland's arguments with respect to Finding 1, Ashland's argument with respect to Finding 2 are not persuasive and are rejected. Accordingly, Finding 2 is supported and affirmed.

## VIII.   Conclusion and Order

Ashland has not satisfied its burden of proving that it complied with program requirements for Title IV funds issued for Award Years 2019-2020 and 2020-2021.  34 C.F.R. § 668.116(d). Findings 1 and 2 of the FPRD, for improper Pell packaging and return of Title IV funds for Award Years 2019-2020 and 2020-2021, for which the liabilities total the amount of $6,131,790.46 are supported and, therefore, **AFFIRMED**. 34 C.F.R. § 668.118(b).

Accordingly, it is hereby **ORDERED** that Ashland University shall pay to the United States Department of Education, in a manner as required by law, Title IV, HEA program funds for Award Years 2019-2020 and 2020-2021, in the total amount of $6,131,790.46, as established in the Final Program Review Determination dated September 16, 2022.

This Initial Decision automatically becomes the Secretary's final decision 30 days after it is issued and received by both parties unless, within that 30-day period, either party appeals the decision to the Secretary. 34 C.F.R. § 668.121 (b). Information on how to appeal this decision to the Secretary is contained on the next page of this decision.

Dated: July 10, 2023

*Elizabeth Figueroa*
Elizabeth Figueroa
Chief Administrative Law Judge

EDU001416

## NOTICE OF DECISION AND APPEAL RIGHTS-
## SUBPART H PROCEEDING

This is the initial decision of the hearing official pursuant to 34 C.F.R. § 668.118. The regulation does not authorize motions for reconsideration. The following language summarizes a party's right to appeal this decision as set forth in 34 C.F.R. § 668.119.

An appeal to the Secretary shall be in writing and explain why this decision should be overturned or modified. A party appealing the decision may submit proposed findings of fact or conclusions of law to the Secretary. If a party submits proposed findings of fact, the findings must be supported by admissible evidence that is already in the record, matters that may be given official notice, or stipulations of the parties. Neither party may introduce new evidence on appeal. An appeal must be filed within 30 days from receipt of this notice and decision. If an appeal is not timely filed, by operation of regulation, the decision will automatically become the final decision of the Department.

An appeal to the Secretary shall be filed in the Office of Hearings and Appeals (OHA). The appeal shall clearly indicate the case name and docket number. The appealing party shall provide a copy of the appeal to the opposing party, simultaneously with its filing of the appeal. The opposing party will then have 30 days to file its response to the appeal to the Secretary and shall provide a copy of its response to the party who appealed the decision, simultaneously with its filing of the response.

A registered e-filer may file the appeal via OES, the OHA's electronic filing system. Otherwise, appeals must be timely filed with OHA by U.S. Mail, hand delivery, or other delivery service. Appeals filed by mail, hand delivery, or other delivery service shall be in writing and include the original submission and one unbound copy addressed to:

EDU001417

Docket No.:  22-58-SP

Hand Delivery or Overnight Mail*          U.S. Postal Service*

Secretary of Education c/o Docket Clerk  Secretary of Education c/o Docket Clerk
Office of Hearings and Appeals            Office of Hearings and Appeals
U.S. Department of Education              U.S. Department of Education
550 12th Street, S.W., 10th Floor         400 Maryland Avenue, S.W.
Washington, D.C. 20024                    Washington D.C. 20202

These instructions are not intended to alter or interpret the applicable regulations or provide legal advice. The parties shall follow the regulatory requirements for appealing to the Secretary at 34 C.F.R. § 668.119. Questions about the information in this notice may be directed to the OHA Docket Clerk at 202-245-8300.

EDU001418

Docket No.:  22-58-SP

SERVICE LIST

Service completed by Office of Hearings and Appeals Electronic Filing System (OES) automatic email notice** sent to the email of record for the following registered e-filers:

Kalynn Walls, Esq.
Jim Newbery, Esq.
Steptoe & Johnson PLLC
700 Hurstbourne Parkway, Suite 115
Louisville, KY  40222

Susan Llewellyn Deniker, Esq.
Steptoe & Johnson PLLC
400 White Oak Boulevard
Bridgeport, WV  26330

Raziya Brumfield, Esq.
Office of the General Counsel
U.S. Department of Education
400 Maryland Avenue, S.W., Room 6E214
Washington, D.C. 20202

**Service and receipt thereof will be the date indicated in the confirmation of receipt email for E-filing consistent with 34 C.F.R. § 668.122. Hard copies will NOT follow.

EDU001419

Docket No.:  22-58-SP

EDU001420