**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ASHLAND UNIVERSITY, | ) | CASE NO. 1:23-cv-01850 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| SEC'Y OF THE DEPT. OF EDUC., | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |
| | ) | |
| | ) | |

### I. Procedural History

On September 23, 2023, Plaintiff Ashland University ("Plaintiff" or "AU"), a licensed and accredited institution, filed a Verified Complaint against Defendant Miguel Cardona, acting in his Official Capacity as the Secretary of the United States Department of Education. (R. 1, ¶¶ 4-6). Defendant filed an Answer to the original Complaint on November 27, 2023. (R. 10). During a case management conference, the Court overruled Plaintiff's request that the case be assigned to the standard track and that discovery be permitted. (R. 14 & 16). The Court ordered the case be assigned to the administrative track and that the administrative record be produced. *Id*. Thereafter, Plaintiff filed a Motion to Amend the Verified Complaint on February 20, 2024. (R. 17). Defendant then filed a Brief in Opposition arguing the Amended Complaint would not survive a partial motion for dismissal of the new claims. (R. 19). Plaintiff filed a Reply brief. (R. 20). On May 17, 2024, the Court gave the Defendant leave to file a surreply as Plaintiff raised

some new arguments in its reply. Defendant filed a surreply on June 7, 2024. (R. 23). For the reasons set forth below, Plaintiff's Motion to Amend the Verified Complaint (R. 17) is DENIED.

## II. Factual Allegations

Plaintiff's Motion and proposed Amended Complaint allege that the case is brought against Miguel Cardona, in his official capacity as the Secretary of the United States Department of Education ("USDE") seeking to overturn a penalty levied against Plaintiff in excess of $6 million dollars.  (R. 17, PageID#: 1612, ¶¶1-2).

Prior to 1992, "AU participated in Federal student aid programs including disbursing Pell Grant awards to incarcerated students. However, in 1992, Pell Grant funding became unavailable to incarcerated students." (R. 17-2, PageID# 1617, ¶50).

In 2015, the USDE "instituted the Second Chance Pell—Pell for Incarcerated Students Experiment ('SCP' or 'SCP Experiment') under the Secretary's Experimental Sites Initiative (ESI), which provides a limited waiver of the statutory prohibition on incarcerated students receiving Pell Grants" *Id*. at ¶51. On June 28, 2016, the USDE "invited AU to participate in the SCP Experiment based on, among other things, information submitted by AU in the application process." *Id.* at ¶¶ 56–57. In August of 2016, it is alleged that Defendant and AU "executed a Program Participation Agreement ('PPA') Amendment," outlining the requirements of the program. *Id*. at ¶57. Thereafter, USDE notified AU that it could begin implementation of the SCP Experiment for the 2016-2017 academic year. *Id.* at ¶58.

As of February 2022, AU represents that 2,200 incarcerated students were receiving funding for their education through the SCP Experiment. (R. 17-2, PageID# 1618,  ¶60). Plaintiff represents that students participating in the SCP Experiment were enrolled in five different academic programs that AU offers— all meeting the requirements set forth in 34 C.F.R. § 668.8,

the provisions governing Student Financial Assistance. *Id.* at ¶¶61-62. Plaintiff further alleges that all five programs were in compliance with 34 C.F.R. § 690.63(a)(1) that requires at least thirty (30) weeks of instructional time, but acknowledges that "a section or version of each course is taught in a compressed term" but believes it complies with Guidelines and Procedures for Academic Program Review. (R. 17-2, PageID# 1618-1619, ¶¶62-70).

In September of 2021, the USDE's Office of Federal Student Aid ("FSA") conducted a review to determine AU's compliance with regulations set forth under Title IV of the Higher Education Act of 1965 ("HEA"). (R. 17-2, PageID# 1620, ¶77). FSA made ten findings of which Plaintiffs dispute the first two. *Id*. at ¶79.

Plaintiff's proposed Amended Complaint alleges:

In Finding 1 of the [Program Review Report] PRR, titled "Improper Pell Packaging," FSA concluded that AU's SCP students "have the same academic program content as other AU students but have a different structure to complete the academic program" that provided less than 30 weeks of instruction because SCP students' semesters are 12-week semesters within a 24-week Academic Calendar. FSA concluded that AU had incorrectly calculated Pell Grant funds to SCP students based on its use of 30 weeks of instruction in its calculations. Finding 2 of the PRR, titled "Return of Title IV (R2T4) Calculation Errors," did not include any monetary liabilities, but nevertheless asserted a finding of noncompliance based upon the same theory employed by FSA in Finding 1.

(R. 17-2, PageID# 1621, ¶80). In accordance with these findings, Defendant determined that AU "over awarded Pell Grant funds to SCP students" finding that AU's liabilities amounted to $6,131,790.46, inclusive of principal and cost of funds. *Id*. at ¶82.

Plaintiff appealed the FSA findings, and an Administrative Law Judge in her decision ("Initial Decision") upheld the FSA findings and ordered Plaintiff to pay $6,131,790.46. (R. 17-2, PageID# 1621-1623, ¶¶82-93).

Plaintiff's initial Complaint alleged in Count One that the Defendant violated the

Administrative Procedure Act, 5 U.S.C. § 706(2); Count Two requested that the Court declare and adjudge that the Defendant's actions giving rise to this case were arbitrary, capricious, and an abuse of discretion; and Count Three seeks to permanently enjoin Defendant from collecting the $6,131,790.46 assessment.  (R. 1, PageID# 14-16).

The proposed Amended Complaint raises the same three counts as the original Complaint, but also adds a selective enforcement claim in Count Four and a breach of contract claim in Count Five  (R. 17-2, PageID# 1632-34, ¶¶ 152-160).

### III. Motion to Amend Standard

Rule 15 provides that a party may amend its pleadings once as a matter of course within 21 days of serving the pleading or, if a responsive pleading is required, 21 days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

The liberal amendment policy embodied in Rule 15(a)(2), however, "is not without limits." *DeCrane v. Eckart*, No. 1:16CV2647, 2018 WL 916520 at *1 (N.D. Ohio Feb. 16, 2018) (Boyko, J.). A "court need not grant a motion to amend when the reason for amendment is improper, 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737-38 (6th Cir. 2022) (citations omitted)), *cert. denied*, 143 S. Ct. 527, 214 L. Ed. 2d 302 (2022).  An amendment is futile where the proposed changes "could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (*quoting Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d

4

417, 420 (6th Cir. 2000)).

When ruling upon a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all the factual allegations contained in the complaint and construe the complaint in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *accord Streater v. Cox*, 336 F. App'x 470, 474 (6th Cir. 2009). Nonetheless, a court need not accept a conclusion of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed. 2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (*citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955, L.Ed.2d 929.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955, 167 L.Ed. 2d 929. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955, 167 L.Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

## IV. Analysis

### A. Count Five: Breach of Contract

Defendant's opposition brief asserts that Plaintiff's claim for breach of contract in the proposed Amended Complaint would be futile, as it could not withstand a motion to dismiss. Specifically, Defendant argues that the alleged "contract" to which Plaintiff refers is a regulatory program participation agreement ("PPA"), which is not a binding contract with a government agency. In addition, even assuming the PPA could be construed as a contract, Defendant argues this Court does not have jurisdiction over breach of contract claims against the government in excess of $10,000. (R. 19, PageID# 1643).

#### 1. Lack of Jurisdiction

Defendants assert that "[i]t is well-settled that any claim in Federal District Court for breach of contract in excess of $10,000 against the United States is barred by the Tucker Act, 28 U.S.C. § 1491." (R. 19, PageID# 1647, *citing LaMarca v. United States*, 34 F. Supp. 3d 796, 806 (N.D. Ohio 2014) (dismissing breach of contract claim based on a PPA for unpaid Pell grant funds because the district court lacks authority to consider Tucker Act claims pursuant to its supplemental jurisdiction where monetary relief in excess of $10,000 is sought)). The *LaMarca* court noted such jurisdiction over such claims lay in the Court of Federal Claims. *Id*. (*citing Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, 480 F.3d 1116, 1121 (Fed. Cir. 2007) ("The Tucker Act both waives sovereign immunity for, and grants the Court of Federal Claims exclusive jurisdiction over, actions for money damages of more than $10,000.")

Plaintiff, however, asserts that the limitations imposed by the Tucker Act are not conclusive on the issue of jurisdiction, because "AU has requested relief including injunctive relief and

specific relief to reverse the penalty imposed by the Defendant." (R. 20, PageID# 1679). Plaintiff

continues, "The limitations of the Tucker Act applies to actions against the United States for only

monetary damages as the 'primary objective', not actions for injunctive or non-monetary relief."

(*Id.*, citing *Veda, Inc. v. U.S. Dep't of the Air Force*, 111 F.3d 37, 39 (6th Cir. 1997)).

Nevertheless, in the very next sentence, while characterizing its primary objective as injunctive

relief, Plaintiff acknowledges that it is seeking a "retraction of the fine imposed by Defendant."

(R. 20, PageID# 1679).

"A party cannot circumvent the Tucker Act's jurisdiction by suing solely for declaratory or

injunctive relief in a case where such relief is tantamount to a judgment for money damages."

*Sosa v. Sec'y, Dep't of Def.*, 47 Fed. App'x 350, 351 (6th Cir. 2002); *A.E. Finley & Associates,

Inc. v. United States*, 898 F.2d 1165, 1168 (6th Cir. 1990) (*citing Tennessee ex rel. Leech v.

Dole*, 749 F.2d 331, 336 (6th Cir. 1984)). To determine whether the primary relief sought in a

case is monetary as characterized by the Tucker Act, the Sixth Circuit has previously applied the

"primary objective test." *Veda, Inc.*, 111 F.3d at 39. This test requires the Court to determine

whether the "prime objective" of the claim is to obtain money from the federal government and,

if so, the relief sought is characterized as monetary under the Tucker Act. *Veda, Inc.*, 111 F.3d at

39.

Reading the proposed Amended Complaint as a whole, it is plainly Plaintiff's position that

Plaintiff entered into a contract (the PPA) with the Defendant, and, in Plaintiff's view, it

performed its end of the bargain by providing services to students in conformance with the PPA

and any applicable statute and/or regulations. Defendant determined that it overpaid Plaintiff by

$6,131,790.46. (R. 17-2, PageID# 1621, ¶82). Plaintiff is seeking to retain this alleged

overpayment, while characterizing its action as seeking to obtain a "retraction" of what it

characterizes as a fine rather than an overpayment. Had Plaintiff not been paid for the services rendered and brought a breach of contract claim against Defendant for an underpayment akin to $6,000,000 in monetary damages, this suit would undoubtedly belong in the Court of Claims. The Court sees no reason why Plaintiff's attempt to retain these funds through a breach of contract claim, even if couched as a claim for injunctive relief, should yield a different result. It is clear that Plaintiff's "prime objective" is to obtain, or in this case keep, money from the federal government. As such, the requested relief is tantamount to a judgment for money damages.

Given that the monetary relief far exceeds the $10,000 threshold, the Court finds it does not have subject matter jurisdiction over the breach of contract claim. Therefore, Plaintiff's attempt to add such a claim to this action through its Amended Complaint would be futile. Furthermore, Plaintiff has not requested that this matter be transferred to the Federal Court of Claims.

**2. Lack of a Contract**

Defendants assert that Plaintiff's Amended Complaint fails to state a claim because the PPA, and its 2016 Amendment, are not contracts. (R. 19, PageID# 1643-1647). Plaintiff counters that it has pled that the Amended PPA constitutes a valid contract, that AU participated in an application process to provide educational programs to educate AU students, and that the Amended PPA was executed by "duly authorized" representatives. (R. 20, PageID# 1678). Further, Plaintiff cites *San Juan City Coll. v. United States*, 391 F.3d 1357 (Fed. Cir. 2004) wherein the Court of Appeals for the Federal Circuit overturned a grant of summary judgment finding "[t]here is no reason to believe that, because federal grant programs may be 'in the nature of a contract,' special and different rules govern the determination of damages for a breach of a formal written contract that involves a federal grant of funds to educational institutions."

8

In the interests of judicial economy, the Court declines to determine whether Plaintiff has sufficiently alleged an actionable breach of contract claim under the law. Because the Court has already determined that Plaintiff is seeking monetary relief and/or money damages, the Court does not have jurisdiction to hear this claim.

**B. Count Four: Selective Enforcement**

In Count Four of its proposed Amended Complaint, Plaintiff claims that Defendant engaged in "unfair and selective treatment of AU related to its education of incarcerated individuals…" allegedly resulting in a selective enforcement claim. (R. 17-2, Page ID# 1631, ¶144).

**1. Failure to Meet the *Straser* Elements**

"[F]ederal equal-protection rights" actions based on "[s]elective-enforcement claims require the claimant to show that (1) he belonged to a particular race, religion, or other identifiable group; (2) the official did not enforce the rule against similarly situated people outside the group; (3) the prosecution stemmed from a discriminatory purpose; and (4) the prosecution had a disparate effect." *Straser v. City of Athens, Tennessee*, 951 F.3d 424, 426 (6th Cir. 2020) (*citing Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000)). Plaintiff does not dispute the elements set forth in *Strasser*, but rather asserts that it has "adequately alleged the elements set forth in *Straser*." (R. 20, PageID# 1675). Furthermore, "[a] claim of selective application of a facially lawful state regulation requires a showing that ... the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1137, n. 7 (6th Cir. 1995) (*quoting FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir. 1992)).

In tits opposition brief Defendant asserts that Plaintiff fails to meet the very first element,

notably that AU itself—rather than some of its students—belonged to a particular race, religion, or other identifiable group. (R. 19, PageID# 1642). Plaintiff responds by alleging that "AU has pled that Defendant's selective enforcement was based upon an arbitrary classification related to AU's education of incarcerated individuals, Defendant treated AU disparately based upon the status of AU's students as incarcerated individuals, and Defendant acted in bad faith." (R. 20, PageID# 1676). Plaintiff cites no authority for the proposition that it does not have to belong to a particular race, religion, or other identifiable group before pursuing selective enforcement claim. Instead, it attempts to step into the shoes of some its students, namely those who are incarcerated, in order to satisfy the first element. Again, Plaintiff provides no legal support for such a proposition.[1] Its reliance on *Gem Financial Service, Inc. v City of New York*, 2015 WL 1475853 (E.D.N.Y. Mar. 31, 201) is inapposite. Therein, it was alleged that pawn brokers who opted against participating in an online reporting system that automatically posts all transactions were subject to threats, intimidation and illegal disruptive actions due to their refusal to use the online system. *Id*.

Furthermore, *all* institutions that participated in the SCP Experiment would also have been engaged in the education of incarcerated individuals. Thus, Plaintiff has not pointed to any portion of the Amended Complaint that suggests any rule was not enforced against similarly situated institutions *outside* the group, as all participants in the SCP educated incarcerated students. Rather, Plaintiff's Amended Complaint, in an admittedly vague and conclusory

---

[1] Notably, Plaintiff does not allege that it is engaged solely in the education of incarcerated students. Instead, incarcerated students account for less than half of all its students. (R. 17-2, PageID# 1613-1615, ¶¶11, 26-27). Thus, Plaintiff is not similarly situated to an educational institution that educates primarily African-American students or one that is closely affiliated to a specific religion that could plausibly allege to belong to a particular race, religion, or other identifiable group .

10

manner, appears to allege that AU was treated differently than other SCP Experiment participants who educated incarcerated individuals—members from the *same* group. (R. 17-2, PageID# 1630, ¶¶136-137) ("Upon information and belief, institutions, other than AU, that have provided instruction in a manner similar to AU have not been advised by the Secretary that students are in a separate and distinct educational program based upon their incarceration status.")

Finally, the *Straser* elements also require that the government's enforcement of a rule against the plaintiff "stemmed from a discriminatory purpose." Again, Plaintiff has rather vaguely alleged that other institutions that educate incarcerated students "in a manner similar to AU" have not been told that their programs were not in compliance. (R. 17-2, PageID# 1630, ¶137). This allegation inherently undercuts any allegation that a rule was enforced against Plaintiff due to a discriminatory purpose, as it amounts to an acknowledgment that other institutions were not discriminated against for educating inmates. Therefore, Plaintiff's subsequent allegation—that "[t]he differential treatment of AU by the Secretary was based upon impermissible factors, including but not limited to, disparate treatment of AU based upon the status of AU's students as incarcerated individuals"—is a conclusory allegation that contradicts its earlier allegations that other SCP-participating institutions had not been singled out despite their education of incarcerated individuals.

In sum, Plaintiff has not sufficiently alleged a plausible selective enforcement claim.

## 2. Class of One Theory

Plaintiff, in its reply in support of its motion to amend, raises the argument that "even if the Court were to determine that AU has not pled sufficiently to meet the four prongs set forth in *Straser*, AU has alleged facts sufficient for a claim of selective enforcement under a 'class of

one' framework…." (R. 20, PageID# 1676-77).

Recently, the Sixth Circuit Court of Appeals has stated that to prevail on a "class-of-one" claim," a plaintiff must show that it was (1) "intentionally treated … differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *Green Genie, Inc. v. City of Detroit, Michigan*, 63 F.4th 521, 527 (6th Cir. 2023) (*citing Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (*per curiam*)). In order to satisfy the first element, a plaintiff is required to show that "others who were treated differently were 'similarly situated in all relevant respects.'" *Johnson v. Morales*, 946 F.3d 911, 939 (6th Cir. 2020) (*citing EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 865 (6th Cir. 2012)). In order to satisfy the second element, a class-of-one plaintiff "may demonstrate that a government action lacks a rational basis in one of two ways: either by negativ[ing] every conceivable basis which might support the government action *or* by demonstrating that the challenged government action was motivated by animus or ill-will." *Johnson*, 946 F.3d at 939 (emphasis added) (*citing Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005)).

For the sake of argument only, the Court will proceed as though, but without concluding that: (1) the Amended Complaint sufficiently alleges that Plaintiff was treated differently than other institutions participating in the SCP who educated incarcerated individuals; and (2) these other institutions that were treated differently were similarly situated in all relevant respects.

Plaintiff, nevertheless, must still plausibly allege facts capable of satisfying the second element. In its reply in support of its motion, Plaintiff asserted that it "has alleged there has been no rational basis for its treatment and that the [Defendant] has selectively enforce[d] this irrational basis against AU." (R. 20, PageID# 1677). Plaintiff 's assertion, however, does not

actually identify any portion of the Amended Complaint that supports its threadbare conclusion that there was no rational basis for its treatment. As set forth above, a pleading must raise the right to relief beyond a speculative level and provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. Moreover, this Court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. Reading the Amended Complaint as a whole,  Plaintiff alleged that 34 C.F.R. § 690.63(a)(1) requires 30 weeks of instruction time, that its offering to SCP students was taught in "compressed terms," and that FSA determined that AU provided less than 30 weeks of instruction because SCP students' semesters are 12-week semesters within a 24-week Academic Calendar. (R. 17-2, PageID# 1619-1621, ¶¶69-70, 80). Thus, the Amended Complaint—rather than alleging facts capable of negating every conceivable basis which might support Defendant's action—alleges facts that provides a rational basis for Defendant's decision.[2]

Plaintiff could still conceivably maintain a class-of-one claim by sufficiently alleging that the challenged government action was motivated by animus or ill-will towards Plaintiff itself. Plaintiff's reply, however, fails to identify any portion of the Amended Complaint that alleges facts sufficient to infer a finding that Defendant acted with such animus or ill-will. Further, this Court's own review of the Amended Complaint has not unearthed any factual allegations—versus legal conclusions—suggestive of ill-will or animus towards Plaintiff.[3]

---

[2] The Court takes no position on whether Defendant's determination was correct, only that the Amended Complaint identifies a facially lawful regulation capable of providing a rational basis for Defendant's enforcement action.

[3] The Court notes that the Sixth Circuit has recently affirmed a district court's dismissal for failure to state a claim with respect to a class-of-one action where Plaintiff: (1) failed to sufficiently allege direct or circumstantial evidence of intentional discrimination, (2) failed to identify a sufficiently similar comparator; and (3) the alleged discriminatory act clearly passed rational basis review. *See Fouts v. Warren City Council*, 97 F.4th 459, 470–71 (6th Cir. 2024).

## V. Conclusion

For the foregoing reasons, Plaintiff's Motion to Amend (R. 17) is hereby DENIED as futile.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District  Judge

Date: December 11, 2024