IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DISTRICT
AT CLEVELAND

**ASHLAND UNIVERSITY,**

 *Plaintiff,*

*v.*

           **Case No. 1:23-cv-1850**
           **Judge David A. Ruiz**

**MIGUEL CARDONA,** *in His Official Capacity
as the Secretary of the United States Department
of Education***,**

 *Defendant.*

## <u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

  Comes now the Plaintiff, Ashland University ("AU"), by counsel, pursuant to the Court's Order dated December 12, 2024, and moves this Court for Summary Judgment against the Defendant, Miguel Cardona, the Secretary of the United States Department of Education ("Department"). In support of this Motion, AU relies upon the "Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment" attached hereto.

  Respectfully submitted this 10th day of February, 2025.

       **ASHLAND UNIVERSITY,**
       **By Counsel,**

       */s/ John Kevin West*
       John Kevin West (OH Bar #0091520)
       41 South High Street, Suite 2200
       Columbus, OH 43215
       Telephone: (614) 458-9889
       Facsimile: (614) 221-0952
       kevin.west@steptoe-johnson.com

24836643

**STEPTOE & JOHNSON PLLC**
*Of Counsel*

James H. Newberry, Jr.
Kalynn G. Walls
700 North Hurstbourne Parkway, Suite 115
Louisville, KY 40222
Telephone: (502) 423-2000
Facsimile: (502) 423-2001
kalynn.walls@steptoe-johnson.com
jim.newberry@steptoe-johnson.com

Jeffrey K. Phillips
100 West Main Street, Suite 400
Lexington, KY 40507
Telephone: (859) 219-8210
Facsimile: (859) 219-8201
jeff.phillips@steptoe-johnson.com

24836643

# Table of Contents

I.  **Introduction** ...................................................................................................................1

II.  **Background** ....................................................................................................................3

III.  **Standard for Summary Judgment** ...........................................................................6

IV.  **Argument** ......................................................................................................................7

1.  The Department's regulations entitle AU to payment under Formula 1 ............................**7**

2.  The Department abused its power, acted contrary to law and beyond the scope of its authority when the agency arbitrarily and capriciously deemed the "SCP Experiment" an Eligible Program of AU ...................................................................................................**8**

i.  Neither the congressional authorization to conduct experiments, nor the Department's publications and agreements concerning SCP ESI, can be construed to create an "SCP Program" or permit the Secretary to either create an *Eligible Program* for AU or consider SCP ESI as an *Eligible Program*. ...................................................................**8**

ii.  The Department exceeded its authority under 20 U.S.C. § 1099c-1 by disregarding the limitations under 20 U.S.C. § 3403(b) and failing to give deference to AU, the Ohio Department of Higher Education, and the Higher Learning Commission..........**12**

3.  The Department acted contrary to law by disregarding its Pell Grant award calculation regulations, guidance, and the agency's "educational program" and "Eligible Program" definitions. ....................................................................................................................**14**

i.  The Department's position that Pell Grant award calculations must be based upon courses rather than the *Eligible Program* in which the student is enrolled cannot be reconciled with the language of 34 CFR 690.63.................................**14**

ii.  The Department's decision to calculate Pell Grant awards at the course level cannot be reconciled with its other regulations or guidance. ..............................**16**

4.  The Department acted arbitrarily and capriciously in assessing liabilities against AU given the agency's established position on determining student financial aid at the educational program level, not the course level. ..........................................................**17**

V.  **Conclusion** ...................................................................................................................**19**

VI.  **Certificate of Compliance** .......................................................................................**19**

**Table of Authorities**

**Cases**

*Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.,* 462 U.S. 87 (1983).....................6

*City of Cleveland v. Ohio,* 508 F.3d 827 (6th Cir. 2007).................................................6

*Dickinson v. Zurko,* 527 U.S. 150 (1999).....................................................................17

*FCC v. Fox TV Stations, Inc.,* 556 U.S. 502 (2009) .................................................15, 18

*FreshWater Accountability Project v. United States Army Corps of Engineers,*
  629 F. Supp. 3d 761 (S.D. Ohio 2022) ....................................................................6

*Grand Canyon Univ. v. Cardona,* 121 F.4th 717 (9th Cir.2024)......................................6

*Kisor v. Wilkie,* 139 S. Ct. 2400 (2019).....................................................................13

*Loper Bright Enterprises v. Raimondo,* 144 S. Ct. 2244 (2024) ....................................6

*Motor Vehicle Mfrs. Assn. of U.S. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29 (1983) ..........17

*Noroozi v. Napolitano,* 905 F. Supp. 2d 535 (S.D. N.Y. 2012)........................................6

*Simaga v. United States Citizenship & Immigr. Servs.,* S.D. Ohio No. 2:21-cv-5098,
  2023 U.S. Dist. LEXIS 142089 (Aug. 14, 2023)........................................................6

*State of Tennessee v. Cardona,* E.D. KY No. 2:24-072-DCR (January 9, 2025).........................6

*United States v. Nixon*, 418 U.S. 683 (1974)...............................................................15


**Statutes**

5 U.S.C. §§ 551, 553-59, 701-06 .............................................................................6

5 U.S.C. § 706(2)(A)..........................................................................................12, 18

20 U.S.C. § 1070 et seq.........................................................................................5

20 U.S.C. § 1070a(b)(6)........................................................................................11

20 U.S.C. § 1094a(b)...........................................................................................10

20 U.S.C. § 1094a(b)(3)(B)....................................................................................11

20 U.S.C. § 1099a..............................................................................................13

20 U.S.C. §§ 1099a-1099c-2....................................................................................13

20 U.S.C. § 1099b(m)...........................................................................................13

20 U.S.C. § 1099c..............................................................................................13

20 U.S.C. § 1099c-1.........................................................................................12, 13

20 U.S.C. § 1099c-1(e).........................................................................................13

20 U.S.C. § 3403(b).........................................................................................12, 13


**Other Authorities**

80 Fed. Reg. 45,964 (Aug. 3, 2015)...........................................................................11

80 Fed. Reg. 45,964, 45,966 (Aug. 3, 2015)..................................................................11

80 Fed. Reg. 45,964, 45,964-45,966 (Aug. 3, 2015) ..........................................................10

*In the Matter of Ashland University*, United States Department of Education Office of Hearings
  *and Appeals*, Docket No. 22-58-SP, U.S. Dept. of Educ..................................................5

*In the Matter of South Florida Community College, United States Department of Education Office
  of Hearings and Appeals,* Docket No. 07-38-SP, U.S. Dept. of Educ. (Mar. 20, 2008) .......17, 18

*In the Matter of Parks College, United States Department of Education Office of Hearings and
  Appeals,* Docket No. 95-92-SP, U.S. Dept. of Educ. (Nov. 7, 1995) ..................................17, 18

24836643

**Regulations**

34 CFR 600.2 .................................................................................................8, 9, 14, 15
34 CFR 600.4 ....................................................................................................................14
34 CFR 668 ........................................................................................................................5
34 CFR 668.2(b) ........................................................................................................14, 16
34 CFR 668.8 ...................................................................................................2, 9, 10, 14
34 CFR 668.8(a) .................................................................................................................9
34 CFR 668.8(a)(1) ..........................................................................................................14
34 CFR 668.8(a), (h) .........................................................................................................8
34 CFR 668.8(c)(1) ..........................................................................................................14
34 CFR 668.8(h)(1) ..........................................................................................................14
34 CFR 668.32(c)(2)(ii) ...................................................................................................11
34 CFR 690.2(b) ..............................................................................................................14
34 CFR 690.63 .................................................................................................................14
34 CFR 690.63(a) .....................................................................................................1, 2, 3
34 CFR 690.63(a)(1) ......................................................................................................2, 7
34 CFR 690.63(a)(1)(i) .................................................................................................7, 14
34 CFR 690.63(a)(1)(ii) .....................................................................................................7
34 CFR 690.63(a)(2) ..........................................................................................................2

**Rules**

Fed. R. Civ. P. 56 ...............................................................................................................6

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DISTRICT
AT CLEVELAND**

**ASHLAND UNIVERSITY,**

    *Plaintiff,*

*v.*

                                     **Case No. 1:23-cv-1850**

                                     **Judge David A. Ruiz**

**MIGUEL CARDONA,** *in His Official Capacity
as the Secretary of the United States Department
of Education*,

    *Defendant.*

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

    Plaintiff, Ashland University ("Ashland" or "AU"), by counsel, pursuant to the Court's Order dated December 12, 2024, moves this Court for Summary Judgment against the Defendant, Miguel Cardona, the Secretary of the United States Department of Education ("Department" or "Secretary").

## I.    INTRODUCTION

    This case presents an example of an egregious abuse of power by an administrative agency. That abuse begs for judicial intervention to prohibit further efforts by the Department to mistreat AU and to restore AU to its position before the Department initiated its unacceptable misconduct.

    This matter involves the interpretation of regulations governing the manner in which the Department reimburses institutions of higher education ("IHEs") for educational programs provided to certain incarcerated students who are eligible for Pell Grants ("AU Students"). Under 34 CFR 690.63(a), the Department and IHEs must calculate the amount of Pell Grants using one

1

of four formulas identified in that regulation.[1]  As described below, the Department failed to follow the analysis required by 34 CFR 690.63(a) in determining AU's reimbursement, and that failure led the Department to a fundamentally flawed, arbitrary, capricious, and unlawful conclusion. In fact, the Department's flagrant disregard for its own regulations can only be described as an abuse of power.

To determine the applicable formula, both 34 CFR 690.63(a)(1) and (2) require a two-step analysis. First, those regulations require that an AU Student be enrolled in an ***Eligible Program***, a term defined by 34 CFR 668.8 ("***Eligible Program***"). Second, the regulations require an assessment as to whether the Eligible Program in which an AU Student is enrolled provides for thirty (30) weeks or more of instructional time each year. If the ***Eligible Program*** provides thirty (30) weeks or more of instructional time, then 34 CFR 690.63(a)(1) ("Formula 1") applies this Court must reverse the Department's decision.

Thus, this case presents two critical issues for review: (a) the identity of the ***Eligible Program*** in which the AU Students were enrolled and (b) whether that ***Eligible Program*** provides for more or less than 30 weeks of annual instructional time.

For the reasons specified below, a plain reading of the regulations indicates that (a) all AU Students were enrolled in one of five ***Eligible Programs*** and (b) all five of the ***Eligible Programs*** provided for at least thirty (30) weeks of annual instructional time. Consequently, Formula 1 applies and requires the Court to grant AU's Motion for Summary Judgment, deny the Department's claim for reimbursement from AU and reverse the Department's decision to the contrary.

---

[1] Although 34 CFR 690.63(a) contains four formulas, neither the Department nor AU has asserted that either Formula 3 or Formula 4 applies to this case. Thus, for purposes of this judicial review, the only issue is whether Formula 1 applies, as AU contends, or Formula 2 applies, as the Department contends.

24836643

Moreover, the Department acted arbitrarily and capriciously by (a) ignoring its regulations to conclude that a non-academic, experimental initiative for incarcerated students was an ***Eligible Program***, (b) usurping the authority of the State of Ohio to authorize educational programs at IHEs, and (c) applying its analysis of AU's situation at the course level rather than at the program level as required by 34 CFR 690.63(a).

Since the applicable regulations authorize AU to use Formula 1, and since the Department acted arbitrarily, capriciously, and unlawfully in its efforts to recover funds which AU appropriately received, this Court must reverse the Department's decision. Furthermore, this Court should award AU attorneys' fees and other expenses associated with AU's attempts to overcome the Department's unlawful conduct.

## II.    BACKGROUND

The Department's Initial Decision contains Findings of Fact which provide useful context for this Court's decision. AU restates Findings of Fact 1-16 without internal citations for the sake of brevity and clarity.[2]

> "Ashland is a private, nonprofit university, fully accredited by the Higher Learning Commission, and licensed as an institution of higher education by the Ohio Department of Higher Education. All of Ashland's academic programs must be approved and reviewed by the Ohio Department of Higher Education. The Ohio Department of Higher Education authorized Ashland to offer programs of study that lead to the following degrees: an Associate of Arts in Art, Criminal Justice, and General Studies; a Bachelor of Arts; a Bachelor of Fine Arts; a Bachelor of Music; a Bachelor of Science; a Bachelor of Science in Business Administration; a Bachelor of Science in Nursing; and, a Bachelor of Social Work. As of November 26, 2019, Ashland offered academic programs leading to the following degrees: a Bachelor of Arts in Applied Communication; a Bachelor of Science in Interdisciplinary Studies; a Bachelor of Arts in Business Administration; an Associate of Arts in General Studies; and, an Associate of Arts in General Studies with a concentration in Business.

---

[2] Ex. QQ- Chief ALJ July 10, 2023, Initial Decision, EFC No. 15-43, Page ID #1527-1529, pp. 1-16. (*internal citations omitted*).

24836643

Ashland has operated a corrections education program since 1964. Ashland serves more than 3,000 incarcerated students in thirteen states and the District of Columbia. Sometime well before 2015, Ashland entered into a Program Participation Agreement with the Department to participate in Federal student aid programs. Sometime before 1992, Ashland's participation in Federal student aid programs included disbursing Pell Grant awards to incarcerated students. However, in 1992, Pell Grant funding became unavailable to incarcerated students.

In 2015, the Department instituted the Second Chance Pell –Pell for Incarcerated Students Experiment (SCP or SCP Experiment) under the Department of Education's Experimental Sites Initiative (ESI), which provides a limited waiver of the statutory prohibition on incarcerated students receiving Pell Grants. There were two phases to the SCP Experiment application process. In phase 1, The Department required institutions to submit letters of application listing the academic programs that the institutions were considering for inclusion in the SCP Experiment. In phase 2, the Department required AU to submit information on the academic programs the institution intended to offer to SCP students. In its phase 1 application, Ashland provided a "Listing of the academic programs for consideration." Ashland stated that if the Department approved its participation in the SCP Experiment, Ashland would provide Associate Degrees in General Studies to students currently in its "educational program along with any new student that could quality (sic)." Ashland went on to state that it operated certificate programs in Basic Business, Business Management, Office Skills, Retail Sales, Office Management, Retail Management, and Retail Administration. On January 21, 2016, FSA invited Ashland to participate in phase 2 of the application process, in which invitation FSA explained that phase 2 of the selection process would entail FSA's review of responses provided by applicants, including information submitted on academic programs that institutions intended to offer.

On March 18, 2016, upon applying to participate in the SCP, as part of phase 2 of the application process, Ashland explained that it had the "longest operating correctional post-secondary educational program." Under the "Program Information" section of its application, Ashland stated that it would expand on the program it already offered to incarcerated students and proposed offering three levels of programming for incarcerated students under the SCP Experiment: a certificate in Business Management and Office Management, an Associate of Arts Degree, and a Bachelor of Science Degree. Ashland stated that the programs it already offered to incarcerated students encompassed 12-week semesters and that the three programs it proposed to offer to SCP students would "build upon each other and create a pathway for students to advance to the next level of post-secondary programs." For each of those levels of programming, Ashland stated that classes would be offered in 12-week semesters.

On June 28, 2016, the Department invited Ashland to participate in the SCP Experiment based on, among other things, information submitted by Ashland in the application process. In August 2016, Ashland and the Department executed a Program Participation Agreement Amendment, which set out the exemptions and requirements for participating in the SCP Experiment, including the requirement "that the program be credit-bearing and lead to a certificate or degree awarded by the Institution." On

4

August 18, 2016, the Department notified Ashland that it could begin implementation
of the SCP Experiment for the 2016-2017 award year.

Since 2016, over 1,500 incarcerated SCP students have earned undergraduate
degrees from Ashland. Several SCP students have later earned graduate degrees. As
of February 2022, Ashland had approximately 2,200 SCP students pursuing degrees
in five areas of study."[3]

Between September 13 and September 24, 2021, the Department's Office of Federal

Student Aid ("FSA") Chicago/Denver School Participation Division conducted a focused program

review concerning AU's administration of the SCP ESI Federal Student Aid program, authorized

by Section 487A(b) of Title IV of the Higher Education Act of 1965 ("HEA"), as amended, 20

U.S.C. § 1070 et seq.[4]  FSA issued a Program Review Report ("PRR") on January 3, 2022,

asserting that AU's SCP students were enrolled in academic programs with "less than 30 weeks of

instructional time" and that AU had utilized "Formula 1" improperly to calculate Pell Grant awards

to SCP students.[5] AU responded to the PRR on March 11, 2022, and the Department issued a Final

Program Review Determination ("FPRD") on September 16, 2022, demanding reimbursement of

Pell Grant awards and additional cost of funds liability, in the amount of $6,131,790.46.[6] Pursuant

to 34 CFR 668, Subpart H, AU filed an appeal of the FPRD, *In the Matter of Ashland University*,

*United States Department of Education Office of Hearings and Appeals*, Docket No. 22-58-SP.[7]

Ultimately, the Secretary's Chief Administrative Law Judge ruled in favor of the Department on

July 10, 2023.[8]  The ruling, while otherwise riddled with cites to the record, concluded without

any such citation or authority that "[r]ecord evidence establishes that the SCP Experiment was

---

[3] Ex. QQ- Chief ALJ July 10, 2023, Initial Decision, EFC No. 15-43, Page ID #1527-1529, pp. 1-16 (*internal citations omitted*).
[4] Verified Compl., EFC No. 4-2, para. 77, Page ID #66.
[5] Ex. MM – Joint Exhibit 1, EFC No. 15-39, Page ID #1483.
[6] Verified Compl., EFC No. 4-2, paras. 81-82, Page ID #67.
[7] Ex. C-Ashland Appeal Letter and FPRD, EFC No. 15-3, Page ID #133-168.
[8] Ex. QQ- Chief ALJ July 10, 2023, Initial Decision, EFC No. 15-43, Page ID #1539.

5

determined to be an eligible program for Title IV, HEA program purposes."[9] The Department issued a Notice of Finality on September 20, 2023, effective August 9, 2023, and AU initiated this litigation on September 22, 2023.[10]

## III.    STANDARD FOR SUMMARY JUDGMENT

"[S]ummary judgment is the appropriate 'mechanism' for adjudicating claims arising under the [Administrative Procedure Act].'"[11] Whether "the Department correctly construed the HEA" is a legal question to be reviewed *de novo.*[12]   While a motion for summary judgment pursuant to Fed. R. Civ. P. 56 typically requires the court to determine whether there are any genuine issues of material fact, when a case is brought under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, 553-59, 701-06, alleging a final agency action was arbitrary, capricious, or contrary to law according to the APA, the "usual rules governing summary judgment do not apply" as the court is limited to the administrative record.[13] "Summary judgment is often appropriate when 'a party seeks review of agency action under the APA [because] the entire case on review is a question of law.'"[14]   "[U]nder the 'arbitrary and capricious' standard, '[the court's] only task is to determine whether the [Department] has considered the relevant factors and articulated a rational connection between the facts found and the choice made.'"[15]

---

[9] *Id.*
[10] Verified Compl., EFC No. 4-2, para. 102, Page ID #70.
[11] *State of Tennessee v. Cardona,* E.D. KY No. 2:24-072-DCR (January 9, 2025) (citing *FreshWater Accountability Project v. United States Army Corps of Engineers,* 629 F. Supp. 3d 761, 770 (S.D. Ohio 2022)).
[12] *Grand Canyon Univ. v. Cardona,* 121 F.4th 717, 724 (9th Cir.2024) (citing *Loper Bright Enterprises v. Raimondo,* 144 S. Ct. 2244, 2261, 2273(2024)).
[13] *City of Cleveland v. Ohio,* 508 F.3d 827, 838 (6th Cir. 2007).
[14] *Simaga v. United States Citizenship & Immigr. Servs.,* S.D. Ohio No. 2:21-cv-5098, 2023 U.S. Dist. LEXIS 142089, at *7 (Aug. 14, 2023) (citing *Noroozi v. Napolitano,* 905 F. Supp. 2d 535, 541 (S.D. N.Y. 2012) (*internal quotation marks and citation omitted*)).
[15] *Grand Canyon Univ. v. Cardona,* 121 F.4th 717, 724 (9th Cir.2024) (citing *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.,* 462 U.S. 87, 105, (1983)").

## IV.    ARGUMENT

### 1.    The Department's regulations entitle AU to payment under Formula 1.

The two-step analysis required by 34 CFR 690.63(a)(1) justifies AU's use of Formula 1 to determine the amount of the Pell Grants to which the AU Students were entitled. As noted on page 11 of the Department's Initial Decision, it was "undisputed that the programs that [AU Students] enrolled in were determined to be Eligible Programs for purposes of the Federal Pell Grant Program." As a result, AU satisfied the first step of the two-step analysis as required by 34 CFR 690.63(a)(1)(i).

Similarly, AU satisfied the second step of the two-step analysis, as required by 34 CFR 690.63(a)(1)(ii), since the Ohio Department of Higher Education ("ODHE") approved all of AU's *Eligible Programs* as providing at least 30 weeks of instructional time in two semesters. As noted in the Department's Initial Decision, "[a]ll of Ashland's academic programs must be approved and reviewed by the Ohio Department of Education."[16] Thus, all AU Students were enrolled in one of five *Eligible Programs* approved by ODHE. The record of the administrative appeal provides uncontroverted evidence that ODHE requires all academic programs at IHEs in Ohio to have at least 30-week academic years.[17] Since all AU Students were enrolled in *Eligible Programs* approved by ODHE and since all ODHE-approved programs must have a minimum of 30-week academic years, then all AU Students were enrolled in *Eligible Programs* with at least 30-week academic years. Consequently, AU satisfied the requirements of both 34 CFR 690.63(a)(1)(i) and (ii), and AU is entitled to payment under Formula 1.

---

[16] Ex. QQ- Chief ALJ July 10, 2023, Initial Decision, EFC No. 15-43, Page ID #1527, p. 1.
[17] *See* Ex. W – Ashland Brief in Support of Appeal, EFC No. 15-23, Page ID #1051.

2.  **The Department abused its power, acted contrary to law and beyond the scope of its authority when the agency arbitrarily and capriciously deemed the "SCP Experiment" an Eligible Program of AU.**

    i.  <u>Neither the congressional authorization to conduct experiments, nor the Department's publications and agreements concerning SCP ESI, can be construed to create an "SCP Program" or permit the Secretary to either create an **Eligible Program** for AU or consider SCP ESI as an **Eligible Program**</u>.

The Department's wrong-headed decision turns upon its conclusion that the "SCP Experiment" constituted an "***Eligible Program***" for Title IV purposes.[18]

> "The review team concluded that the Ashland students considered "Pell for Students Who Are Incarcerated" experiment ("Second Chance Pell") under the Experimental Site Initiative (ESI) have the same academic program content as other Ashland students but have a different structure to complete the academic program." – Program Review Report, pg. 6.[19]

Courses are not educational programs. While an institution may offer courses through various modalities or structures within an educational program, the courses are not *the* educational program. Likewise, a federal Pell Grant program, or the ability to receive funds under a Pell Grant program, does not create or constitute an educational program. The Department has made sure of that. In addition to imposing other state and accreditation requirements to establish a program, the Department clearly defined both "educational program" and a Pell "Eligible Program" in 34 CFR 600.2 and 34 CFR 668.8(a), (h), respectively. Despite the tremendous state, federal, and regional accreditation requirements the Department has implemented in order for institutions to create and states to authorize educational programs, in AU's case, the Department has inexplicably invented a fictitious "program" without authority and in contravention of its own regulations. This invention served as the basis to disgorge from AU the appropriately calculated Pell Grant funds awarded to its incarcerated students.

---

[18] Ex. QQ- Chief ALJ July 10, 2023, Initial Decision, EFC No. 15-43, Page ID #1539.
[19] Ex. MM – Joint Exhibit 1, EFC No. 15-39, Page ID #1483.

24836643

AU has never had a separate, Title IV eligible, educational program exclusively for incarcerated students or a so-called "SCP Program." AU students in the "Pell for Students Who Are Incarcerated" experiment ("SCP") under the Experimental Site Initiative ("ESI") are, and have always been, enrolled in one of the same eligible educational programs as AU's non-incarcerated students with "the same academic program content." The Department would like to lump all of AU's SCP students together to buttress this arbitrary and capricious decision, but the truth is, AU's SCP students enroll in one of five separate and distinct educational programs leading to different degree awards. The Department has never suggested, let alone offered any evidence, that there is a degree in "SCP Program" at AU. AU treats its SCP students with dignity, receiving the same treatment as their non-incarcerated counterparts at AU enrolled in the same Title IV eligible educational programs with them. Thus, based on the Department's own regulations, that conclusion is fundamentally flawed, contrary to law, and the Department can only reach it if the Department arbitrarily and capriciously interprets its regulations in a manner that defies the clear meaning of the words which the Department chose to use when it drafted those regulations.

The Department – not AU – defined ***Eligible Program*** in 34 CFR 668.8. While that regulation provides a detailed set of requirements for an academic program to be an ***Eligible Program*** for Title IV purposes, the general definition of ***Eligible Program*** states, "An eligible program is an educational program that . . . [i]s provided by a participating institution. . .." 34 CFR 668.8(a). The Department – not AU – defined "educational program" in 34 CFR 600.2 which states, "A legally authorized postsecondary program of organized instruction or study that . . . [l]eads to an academic, professional, or vocational degree, or certificate, or other recognized educational credential . . .." In short, an ***Eligible Program*** must lead to a degree, a certificate, or some other form of educational credential.

9

By the Department's own definition of the SCP Experiment, the SCP Experiment has never been, is not, and cannot be a program of organized instruction or study that leads to any form of educational credential. As the Department's Initial Decision states, the SCP Experiment is only a part of the Department's "Experimental Sites Initiative (ESI) which provides a limited waiver of the statutory prohibition on incarcerated students receiving Pell Grants."[20]  The SCP Experiment meets **_NONE_** of the 34 CFR 668.8 requirements for an ***Eligible Program***.

Furthermore, the Department's conclusion is contrary to its administrative decision holding that it was "undisputed that the programs that SCP students enrolled in were determined to be eligible programs for purposes of the Federal Pell Grant Program."[21]

More importantly, though, the notion that the SCP Experiment is an ***Eligible Program*** is entirely at odds with the agency's statutory authorization to conduct experiments  under 20 U.S.C. 1094a(b) and the Department's SCP ESI Invitation Notice,[22] Welcome Letter,[23] and its Amended Program Participation Agreement ("Amended PPA") with AU.[24]  What the Department's decision fails to grasp is that the SCP ESI is simply an experiment allowing incarcerated students to receive Pell Grant funds. In light of the Department's repeated and completely unjustified efforts to characterize the SCP ESI as an ***Eligible Program*** for purposes of awarding Pell Grants, the SCP ESI alone is not and cannot be an eligible "educational" program under the regulations which the Department established. On these grounds alone, this Court should grant summary judgment in favor of AU.

---

[20] Ex. QQ- Chief ALJ July 10, 2023, Initial Decision, EFC No. 15-43, Page ID #1527.
[21] *Id.* at Page ID #1535.
[22] 80 FR 45,964, at 45,964-45,966 (Aug. 3, 2015).
[23] Ex. Z – Education Exhibits ED-1-ED-15, EFC No. 15-26, Page ID #1428-1431.
[24] Ex. Z – Education Exhibits ED-1-ED-15, EFC No. 15-26, Page ID #1422-1427.

24836643

The Secretary's authority to conduct experiments pursuant to 20 U.S.C. § 1094a(b)(3)(B), is limited to "the authority to grant waivers from certain [T]itle IV HEA statutory or regulatory requirements to allow a limited number of institutions to participate in experiments to test alternative methods for administering the [T]itle IV HEA programs."[25]  The Department created the experiment and invited institutions to apply to participate, noting that this experiment only waives the "statutory provision that a student who is incarcerated…may not receive a Pell Grant."[26] The experiment, as outlined by the Department, required that the "education and training programs offered by the postsecondary institution must meet all [T]itle IV HEA program eligibility requirements."[27]  In other words, the Department required AU to have Title IV eligible educational programs to offer to incarcerated students under the experiment.

The Department also acknowledged that AU would have incarcerated and non-incarcerated students enrolled in the same educational programs, understanding that the SCP Experiment was not the ***Eligible Program***.  In the agency's "Welcome Letter" to AU, the Department advised AU that if more than half "of an eligible program" was offered "at a correctional facility" AU might be required to work with its accrediting agency and the state licensing authority to add the facility as an additional location on AU's E-App.[28] Moreover, the Amended PPA drafted and executed by the Department, clearly states that the students will be enrolled "in the Institution's educational program."[29] The Amended PPA goes on to describe the "Program Eligibility" requirements that _AU's educational programs_ must meet, which states: "[t]he postsecondary educational programs offered to incarcerated students under this experiment must meet all Title IV HEA program

---

[25] [80 FR 45,964](#), at 45,964 (Aug. 3, 2015).
[26] *Id.* at 45,966. The prohibitions being waived are set forth in Section 401(b)(6) of the HEA (20 U.S.C. § 1070a(b)(6)) and 34 CFR 668.32(c)(2)(ii).
[27] *Id.*
[28] Ex. Z – Education Exhibits ED-1-ED-15, EFC No. 15-26, Page ID #1430.
[29] Ex. Z – Education Exhibits ED-1-ED-15, EFC No. 15-26, Page ID #1423.

24836643

eligibility requirements, including that the program be credit-bearing and lead to a certificate or degree awarded by the Institution."[30]

Despite the limited scope of the SCP ESI waiver, the educational program requirements AU had to meet to participate in the SCP experiment, all of which is reflected in AU's Amended PPA, the Department's decision rests upon the "SCP Experiment" being the ***Eligible Program*** for Title IV, HEA program purposes.[31]  However, if the SCP Experiment was, in and of itself, an ***Eligible Program***, there would be no need for applying institutions to confirm the offered educational programs met the Title IV HEA program eligibility requirements. It is nonsensical that an experiment under federal grant *funding program*, would be the educational, eligible, credit-bearing program that resulted in a degree. Given that the underlying logic behind the agency's decision fails, pursuant to 5 U.S.C. § 706(2)(A), the Court should reverse the Department's decision as contrary to law and grant summary judgment in favor of AU.

> ii.  <u>The Department exceeded its authority under 20 U.S.C. § 1099c-1 by disregarding the limitations under 20 U.S.C. § 3403(b) and failing to give deference to AU, the Ohio Department of Higher Education, and the Higher Learning Commission.</u>

The Department's efforts to substantiate its arbitrary and capricious decision by creating a Title IV eligible educational program called the "SCP Experiment" on behalf of AU through the program review process must fail as a matter of law. The Department can only certify eligibility to participate in Title IV programs, it cannot step into the shoes of the institution, state, and accreditor to unilaterally create an educational program without regard for the exclusive rights of those bodies.

Prior to entering into a Program Participation Agreement to administer Title IV aid, the Department certifies an institutions eligibility by reviewing its "legal authority to operate within a

---

[30] *Id.* at Page ID #1424.
[31] Ex. QQ- Chief ALJ July 10, 2023, Initial Decision, EFC No. 15-43, Page ID #1539.

24836643

State, the accreditation status, and the administrative capability and financial responsibility…" per 20 U.S.C. § 1099c. However, the "Program Integrity" responsibilities under 20 U.S.C. §§ 1099a-1099c-2, are divided between the states, the accreditors, and the Department. Only the states can license institutions and their educational programs per 20 U.S.C. § 1099a, and the Secretary's authority is limited to recognizing accreditors so that the Department can certify the institutions and their educational programs after they are accredited under 20 U.S.C. § 1099b(m). Outside of recognizing accreditors and determining the existence of state licensure, the Department cannot trample upon the authority of the states and accreditors.

While 20 U.S.C. § 1099c-1 allows the Department to conduct program reviews in order to "strengthen the administrative capability and financial responsibility" requirements set forth in 20 U.S.C. § 1099c, the statutory authorization does not grant the Department unchecked power over licensure and accreditation of educational programs on behalf of institutions.[32]  To prevent this abuse of power, 20 U.S.C. § 3403(b) explicitly restrains the Department, providing that the agency is not authorized "to exercise any direction, supervision, or control over the curriculum [or] program of instruction…of any educational institution, over any accrediting agency."   With respect to the agency's program review authorization, 20 U.S.C. § 1099c-1(e) notes that the only exception to the limitations imposed on the Department under 20 U.S.C. § 3403(b) are Secretarial determinations concerning clock hours. The Department has failed to give due deference to ODHE and AU's accreditor, the Higher Learning Commission ("HLC") with respect to the components of programmatic accreditation and state licensure which are outside of the realm of the Department's authority. Neither is the Department entitled to deference over ODHE and HLC as the "subject matter of the dispute…falls within the scope of another agency's authority."[33]

---

[32] 20 U.S.C. § 1099c-1.
[33] *Kisor v. Wilkie,* 139 S. Ct. 2400, 2417 (2019) (*emphasis added, internal citations omitted*).

24836643

3. **The Department acted contrary to law by disregarding its Pell Grant award calculation regulations, guidance, and the agency's "educational program" and "Eligible Program" definitions**.

   i. The Department's position that Pell Grant award calculations must be based upon courses rather than the ***Eligible Program*** in which the student is enrolled cannot be reconciled with the language of 34 CFR 690.63.

Setting aside the Department's misguided determination that AU had an "SCP Experiment" educational program, 34 CFR 690.63 prohibits the Department's calculation of Pell Grant awards on an individual course level rather than at the educational program level. The most natural reading of 34 CFR 690.63(a)(1)(i) is that Pell Grant awards must be calculated based upon the ***Eligible Program*** in which the student is enrolled. The Department's interpretation that it should determine Pell Grant awards on the basis of the individual courses that each individual student is taking within an Eligible Program is completely absent in its regulations.

34 CFR 690.2(b) incorporates the definition of ***Eligible Program*** set forth in 34 CFR 668.8 which states in relevant part that an ***Eligible Program*** is (1) "an educational program" that is provided by a "participating institution"[34]; (2) provided by "an institution of higher education" and "lead to [a]… bachelor's…degree"[35]; and (3) able to qualify "as an eligible program for purposes of the Federal Pell Grant Program only if the educational program is an undergraduate program."[36]

AU is a "participating institution," as defined in 34 CFR 668.2(b), which requires AU to meet the "eligible institution" definition under 34 CFR 600.2 and the "institution of higher education" definition under 34 CFR 600.4. In short, to be an "institution of higher education" a public or private nonprofit education institution must be legally authorized to provide an

---

[34] 34 CFR 668.8(a)(1).
[35] 34 CFR 668.8(c)(1).
[36] 34 CFR 668.8(h)(1).

24836643

educational program beyond secondary education by the state and must be accredited.[37] Thus, every **Eligible Program** can only exist as such if it is a legally authorized and accredited educational program of postsecondary instruction.

To calculate a Pell Grant award, institutions must verify the student is enrolled in an **Eligible Program** by first determining what the corresponding *educational* program is. An "educational program," defined in 34 CFR 600.2, is "[a] legally authorized postsecondary program of organized instruction or study that...," in AU's case, "leads to a[n] … academic degree."[38]  AU's students enroll in an "educational program" which requires satisfactory completion of requisite courses according to the standards set by AU and its accreditors, to earn the resulting degree. IHEs offer courses in various structures and modalities, but courses are not the educational program. As such, when calculating Pell Grant awards, AU properly calculated awards based upon the eligible, educational program that the SCP students were enrolled in.

If the Department believes that individual course delivery formats within an **Eligible Program** should require a different calculation for Pell Grant awards, the Department must promulgate regulations to that effect. The agency has not done so and instead, has issued a decision arbitrarily holding AU to a standard it has not set. In order to survive scrutiny under the APA, "[a]n agency may not… depart from a prior policy *sub silentio* or simply disregard rules that are still on the books."[39]  Because the Department has not regulated on this issue, the Court should find the decision arbitrary and capricious and contrary to law.

---

[37] 34 CFR 600.4.
[38] 34 CFR. 600.2.
[39] *FCC v. Fox TV Stations, Inc.,* 556 U.S. 502, 515 (2009) (citing *United States v. Nixon*, 418 U.S. 683, 696 (1974)).

15

24836643

ii.     The Department's decision to calculate Pell Grant awards at the course level cannot be reconciled with its other regulations or guidance.

Moreover, the Department's regulations require nearly every calculation and data point be reviewed at the educational program level, not the course level. For instance, after determining the educational program to calculate Pell Grant awards, institutions must determine the student's enrollment status. Under 34 CFR 668.2(b), a "full-time student" is "determined by the institution, under a standard applicable to all students enrolled in a particular educational program." (*emphasis added*). The requirement to treat all students within an educational program the same is consistent with FSA's guidance that even though schools may have two versions of the same educational program (*e.g.,* night and day), for Title IV purposes, schools must treat all student in the program in the same manner.[40]

FSA's guidance does not compel institutions to create separate versions or designate a separate academic year for the separate version even if students have differing academic years. Instead, FSA requires that even if the academic year is different, the institution "must use the same academic year definition for all FSA awards for students enrolled in a particular program, and for all other FSA program purposes."[41] Following this guidance, AU utilized the weeks of instruction within the academic year of the educational program all its students were enrolled in, regardless of incarceration status.

The Department has not adequately explained its decision to reinterpret its regulations and guidance relied upon by AU to its detriment. Failing to consider the relevant evidence before it as required under the APA, in response to AU's administrative appeals the Department issued a decision which neglected to address that all its regulations hinge upon the length of the eligible

---

[40] Ex. X – Ashland Exhibit List and Exhibits R-1-R-9, EFC No. 15-24, Page ID #1191-1193.
[41] Ex. QQ- Chief ALJ July 10, 2023, Initial Decision, EFC No. 15-43, Page ID #1539.

24836643

"educational program," not individual courses.[42] The Department's decision must be overturned as a "reasonable mind" could not "accept [this] particular evidentiary record as adequate to support [the agency's] conclusion."[43]

**4. The Department acted arbitrarily and capriciously in assessing liabilities against AU given the agency's established position on determining student financial aid at the educational program level, not the course level.**

The Department ignored its own longstanding agency decisions to determine student financial aid at the program level, not the course level. The issue of FSA seeking to invent a separate or distinct educational program based on a difference in course delivery for traditional and otherwise detained students enrolled in the same educational programs has been long settled.[44] AU brought this to the attention of the agency during oral arguments, however, the Department disregarded that precedent when making its decision.[45]

*In the Matter of South Florida Community College, United States Department of Education Office of Hearings and Appeals,* FSA alleged that the educational program offered by South Florida Community College ("SFCC") to residents at civil commitment center was not a Title IV **Eligible Program** because the students were not permitted access to computers and thus, unable to complete their courses required to finish the degree program.[46] SFCC successfully demonstrated that the while courses theoretically were going to be delivered by four different modalities but for the obstacles presented by virtue of the students confinement, the educational programs offered to

---

[42] *Motor Vehicle Mfrs. Assn. of U.S. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983).

[43] *Dickinson v. Zurko,* 527 U.S. 150, 162 (1999) (*simplified*)

[44] *See In the Matter of South Florida Community College, United States Department of Education Office of Hearings and Appeals,* Docket No. 07-38-SP, U.S. Dept. of Educ. (Mar. 20, 2008) and *In the Matter of Parks College, United States Department of Education Office of Hearings and Appeals,* Docket No. 95-92-SP, U.S. Dept. of Educ. (Nov. 7, 1995).

[45] Verified Compl., EFC No. 4-2, pp. 86-87, Page ID #68.

[46] *In the Matter of South Florida Community College, United States Department of Education Office of Hearings and Appeals,* Docket No. 07-38-SP, U.S. Dept. of Educ. (Mar. 20, 2008).

24836643

the center's residents were "identical to the programs it offered to all of its other students, and, therefore, those residents were eligible beneficiaries of the Title IV aid."[47]

The decision in *South Florida* relied upon a similar holding by the Department, *In the Matter of Parks College*, wherein the Department attempted to construe the existence of a separate program for students who enrolled intending to only complete six course and go on to enlist in the armed forces because they were designated as "6-BA" students.[48] Ultimately, the Secretary determined that the students and the classes were indistinguishable from those of the "regular" students. Ultimately, like in *Park College*, the decision by the Department in *South Florida* held that the institutions did not create a separate program from the "traditional" educational program, despite a difference in modality and delivery, overruling FSA's program review determinations that the ***Eligible Programs*** were not the same.[49]

As is the case here, AU has not treated the SCP students any differently than its "traditional" students. The students enroll in the same eligible educational programs, and pursuant to the Department's prior rulings and its regulations, AU properly calculated Pell Grant awards by affording the same treatment to all students in the same ***Eligible Program***. The Department has not acknowledged or justified its deviation from its prior policy position. AU relied upon the Department's precedent, and AU has a serious reliance interest that this Court must consider. The failure to acknowledge or justify this policy change is in and of itself an "arbitrary and capricious [act] to ignore such matters[.]" which cannot survive scrutiny under 5 U.S.C. § 706(2)(A).[50]

---

[47] *Id.*
[48] *In the Matter of Parks College,* Docket No. 95-92-SP, U.S. Dept. of Educ. (Nov. 7, 1995).
[49] *In the Matter of South Florida Community College, United States Department of Education Office of Hearings and Appeals,* Docket No. 07-38-SP, U.S. Dept. of Educ. (Mar. 20, 2008).
[50] *FCC v. Fox TV Stations, Inc.,* 556 U.S. 502, 515 (2009).

24836643

## V.     CONCLUSION

For the foregoing reasons, AU asks that the Court grant summary judgment in AU's favor, reverse the Department's decision determining the "SCP Experiment" to be an Eligible Program for Title IV purposes, as an arbitrary and capricious agency action, contrary to law, and in excess of the Department's authority, and prohibit the Department from seeking the return of properly awarded Pell Grants to AU Students based upon the eligible educational program in which they were enrolled.

## VI.     CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(f), counsel for Plaintiff states that this case has been assigned to the administrative track and that this memorandum complies with the page limitations set forth in LR 7.1(f).

Respectfully submitted this 10th day of February, 2025.

ASHLAND UNIVERSITY,
By Counsel,

*/s/ John Kevin West*
John Kevin West (OH Bar #0091520)
41 South High Street, Suite 2200
Columbus, OH 43215
Telephone: (614) 458-9889
Facsimile: (614) 221-0952
kevin.west@steptoe-johnson.com

**STEPTOE & JOHNSON PLLC**
*Of Counsel*

James H. Newberry, Jr.
Kalynn G. Walls
700 North Hurstbourne Parkway, Suite 115
Louisville, KY 40222
Telephone: (502) 423-2000
Facsimile: (502) 423-2001
kalynn.walls@steptoe-johnson.com
jim.newberry@steptoe-johnson.com

Jeffrey K. Phillips
100 West Main Street, Suite 400
Lexington, KY 40507
Telephone: (859) 219-8210
Facsimile: (859) 219-8201
jeff.phillips@steptoe-johnson.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of February, 2025, a true copy of the foregoing **"Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment"** was filed with the Clerk of the Court by using the Court's electronic filing system, which will send a notice of electronic filing to all counsel of record.

    /s/ John Kevin West
John Kevin West (OH Bar #0091520)
*Counsel for Plaintiff*
*Ashland University*

24836643